# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN PAUL ODHUNO, )<br><br>Plaintiff, )<br><br>v. )<br><br>REED'S COVE HEALTH AND REHABILITATION, )<br>LLC d/b/a AVITA; AXIOM HEALTHCARE )<br>SERVICES, LLC; AUDREY SUNDERRAJ; )<br>CAROL SCHIFFELBEIN; CHRISTAN ROSE; )<br>TERESA FORTNEY; TREVA BANUELOS; )<br>and TIM KECK, in his official capacity as Secretary )<br>of the Kansas Department for Aging and Disability )<br>Services, )<br><br>Defendants. ) | Case No. 15-1347-EFM-GEB |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR AN ORDER DENYING SUBSTITUTION OF UNITED STATES

The plaintiff, John Paul Odhuno, by and through his attorneys, Edward L. Keeley and Katy E. Tompkins of McDonald Tinker PA, has moved the Court for an order denying substitution of the United States as defendant with respect to Count V of the Third Amended Complaint in this case. (See Doc. 64) This memorandum is in support of plaintiff's motion and shows good cause for the motion's requested relief.

Count V is the plaintiff's state-law tort of outrage claim against individual defendants Christan Rose, Teresa Fortney, Treva Banuelos, Audrey Sunderraj, and Carol Schiffelbein, as well as unrelated (for purposes of this motion) claims against Reed's Cove Health and Rehabilitation, LLC ("Avita") and Axiom Healthcare Services, LLC ("Axiom"). (Doc. 64 at 23-24) This Court has subject matter jurisdiction in this action based on plaintiff's federal claims of violation of his statutory rights under Title VII and 42 U.S.C. § 1981 ("§ 1981").

He also claims violation of his constitutional rights under 42 U.S.C. § 1983 ("§ 1983") and/or <u>Bivens v. Six Unknown Fed. Narcotic Agents</u>, 403 U.S. 388 (1971) ("Bivens").  The Court has supplemental jurisdiction over plaintiff's tort of outrage claim in Count V pursuant to 42 U.S.C. § 1367.

Defendants Rose, Fortney, Banuelos, Sunderraj, and Schiffelbein filed an Answer to plaintiff's Third Amended Complaint on December 9, 2016.  (Doc. 74)  In their Answer, these defendants referred to themselves as the "Federal Defendants," and they are represented by the U.S. Attorney for the District of Kansas.  (Id.)  On the same day, the U.S. Attorney filed a "Notice of Substitution" pursuant to 28 U.S.C. § 2679(d) ("the Westfall Act") to substitute the United States for defendants Rose, Fortney, Banuelos, Sunderraj, and Schiffelbein for purposes of Count V (the tort of outrage claim) in the Third Amended Complaint.  (Doc. 75)

The legal validity of the United States Attorney's notice of substitution in this case is reviewable by this Court.  <u>Gutierrez de Martinez v. Lamagno</u>, 115 S. Ct. 2227, 2235-2237 (1995).  Just because the United States says substitution is proper does not automatically make it so.  <u>Id</u>.  In this case, plaintiff contends that substitution is not proper because plaintiff is not making a claim under the Federal Tort Claims Act (28 U.S.C. § 1346 and §§ 2671-2680) ("FTCA") in Count V or in any other cause of action alleged in the Third Amended Complaint.

The substitution of the United States for these defendants for purposes of Count V in this case would effectively dismiss Count V with prejudice (except as to defendants Avita and Axiom which are private corporations).  That is because the mandatory FTCA administrative remedies were not exhausted.  Again, plaintiff has never made or intended to make a FTCA claim in Count V.  Thus, the "notice of substitution" filed in this case is tantamount to a dispositive motion by defendants Rose, Fortney, Banuelos, Sunderraj, and Schiffelbein regarding the tort of outrage claim against them which was brought by plaintiff

pursuant to the Kansas common law and the Kansas Tort Claims Act (K.S.A. 75-6101, et seq., as amended) ("KTCA").

Plaintiff shows in this memorandum that the "notice of substitution" is unwarranted and that the Court should deny substitution.

## I.    PLAINTIFF'S CLAIMS AND THE PROCEDURAL HISTORY OF THIS CASE

Plaintiff filed his original Complaint on November 3, 2015, but did not serve any of the defendants with process.  (Doc. 1)  Plaintiff filed his First Amended Complaint on February 25, 2016.  (Doc. 3)  The named defendants (which included defendants Sunderraj and Schiffelbein but not Rose, Fortney, or Banuelos) in that pleading were served with process and filed Answers.  In short, plaintiff alleged that plaintiff (a CNA employed by defendant Avita) was falsely accused of sexually abusing a nursing home resident in July 2014 and that an investigation by Avita found no evidence of any sexual abuse by anyone. Plaintiff further alleged that employees of the Kansas Department for Aging and Disability Services (KDADS), however, forced Avita to terminate plaintiff (ignoring the fact that no sexual abuse ever occurred) which made plaintiff absolutely unemployable as a CNA or in any related elder care jobs.

In Count I of his First Amended Complaint, plaintiff asserted a Title VII cause of action (plaintiff is a black man with Kenyan ancestry) against defendant Avita.  (Doc. 3 at 15)  Count II alleged a § 1981 cause of action against defendants Avita and Axiom (Axiom allegedly provided management services to Avita).  (Doc. 3 at 17)  Count III asserted § 1983 claims based on alleged constitutional violations by two KDADS employees, defendants Sunderraj and Schiffelbein.  (Doc. 3 at 18)  Count IV alleged a § 1983 cause of action against the Secretary of KDADS (Tim Keck) in his official capacity in which plaintiff sought only equitable relief.   (Doc. 3 at 21)   Count V alleged the state-law tort of outrage against

defendants Sunderraj and Schiffelbein, as well as (on different grounds) against defendants Avita and Axiom.  (Doc. 3 at 23)

On March 22, 2016, defendants Keck, Sunderraj, and Schiffelbein filed a joint Answer to the First Amended Complaint.  (Doc. 16)  They were represented jointly by a Special Assistant Kansas Attorney General (who is Senior Litigation Counsel for KDADS).  (Id.)  Both Sunderraj and Schiffelbein admitted in their Answer that they were employed by KDADS and that they acted within the scope of that employment during all times relevant to this case.  (Id. at 2-3)  There was no assertion then by defendants Keck, Sunderraj, or Schiffelbein that Sunderraj and Schiffelbein were also acting under color of federal law.  (Id.)

On March 31, 2016, defendant Avita filed its Answer which stated affirmatively in part:

> In July 2014, Avita investigated a complaint of abuse involving one of its residents.  The resident was 87 years old and suffered from dementia and macular degeneration with psychosis and chronic delusions.  Through a reasonable and thorough investigation, Avita found no evidence to corroborate any of the resident's allegations.  Based on these findings, Avita found evidence that directly refuted some of the resident's allegations.  Based on these findings, Avita concluded that the alleged abuse had not occurred.  Of particular relevance to this lawsuit, Avita was unable to identify an alleged abuser as the resident could not identify that individual by name or provide enough of a description for Avita to be able to identify him.  The only identifying information provided to Avita was that the alleged abuser was a black male nurse and Avita employs many black male nurses.
>
> About one week later, pursuant to a separate complaint, the Kansas Department of Aging and Disability Services ("KDADS") commenced a compliance investigation (known as a "survey") of Avita that was focused on the same abuse allegations that Avita had just recently investigated.  Despite a dearth of evidence in support of any of the resident's allegations, and in the face of credible evidence directly refuting some of those allegations, KDADS not only determined that the alleged abuse had occurred, but KDADS also determined that Plaintiff was the employee responsible for it.  Avita tried to explain to KDADS why it believed the agency's findings were flawed, but KDADS would not budge from its position.
>
> Based on its determination, KDADS brought the full weight of its statutory and regulatory authority to bear.  KDADS found that Avita's continued employment of Plaintiff placed Avita's residents' health and safety

4

in "immediate jeopardy."  In addition to substantial monetary penalties, the "immediate jeopardy" finding triggered a countdown commanded by the federal regulations that govern the receipt of federal and state funding (*i.e.* Medicare and Medicaid) by skilled nursing facilities, like Avita.  In short, if Avita did not take steps to abate the "immediate jeopardy," within 23 days one of two events would occur: either KDADS would step in and take over management of the facility, at which time it would take steps on its own to abate the immediate jeopardy, or Avita would become ineligible to receive government reimbursements, which amount to approximately two-thirds of Avita's annual revenues.  *See* 42 C.F.R. § 488.410.  KDADS was crystal clear in its mandate.  The only way it would remove the "immediate jeopardy" finding was if Avita terminated Plaintiff's employment.  With the proverbial gun to its head, Avita made the tough decision to discharge Plaintiff.

(Doc. 19 at 1-2)

Defendant Avita denies violating Title VII or § 1981 with respect to plaintiff, but it clearly agrees with plaintiff that he was accused by KDADS employees (without any credible evidence) of sexually abusing an elderly resident and that KDADS caused or contributed to his employment termination.  (Doc. 19)

Written discovery commenced after the First Amended Complaint, and plaintiff's counsel learned that defendants Sunderraj and Schiffelbein were KDADS supervisors but they had not actually gone to Avita for the abuse investigation (which KDADS called a survey).  It was learned that defendants Rose, Fortney, and Banuelos were the KDADS employees who purportedly conducted the investigation at Avita.  For that reason, plaintiff requested and was allowed to file his Second Amended Complaint which added Rose, Fortney, and Banuelos as named defendants.  (Doc. 40)  That pleading was filed on July 1, 2016.  (Id.)  All of plaintiff's claims remained the same except that the new defendants were added to Count III (§ 1983 cause of action) and Count V (tort of outrage).  (Id. at 19, 24)

The Special Assistant Kansas Attorney General filed an entry of appearance for defendants Rose, Fortney, and Banuelos on July 22, 2016.  (Doc. 49)  On the same day, those defendants, as well as defendants Keck, Sunderraj, and Schiffelbein, filed an unopposed motion for a 30-day extension to file an Answer to plaintiff's Second Amended Complaint.  (Doc. 51)  One of the reasons given for the requested extension was that the KDADS

individual defendants might be considered federal employees (entitled to federal representation) because of an agreement between the State and HHS regarding Medicare funding of state-licensed nursing homes.  (Id. at 2)  That extension was granted.

On August 26, 2016, defendants Rose, Fortney, Banuelos, Sunderraj, and Schiffelbein filed a second motion for extension (this time for 60 days) in which to file an Answer.  (Doc. 61)  That motion indicated that they would likely receive federal representation.  On August 30, 2016, a hearing was held by Magistrate Judge Birzer.  (Doc. 62)  During that hearing, plaintiff's counsel indicated that if those defendants were taking the position that they were acting under color of federal law, then plaintiff wanted an opportunity to add a Bivens cause of action to his pleadings.  Judge Birzer granted plaintiff's request and set December 9 as the deadline for defendants' Answers to plaintiff's Third Amended Complaint.  (Doc. 62)

On September 9, 2016, plaintiff filed his Third Amended Complaint.  (Doc. 64)  The only change to plaintiff's prior pleadings was the addition of Count V which was a Bivens cause of action against defendants Rose, Fortney, Banuelos, Sunderraj, and Schiffelbein.  (Id. at 24-26)  Plaintiff prefaced his Bivens claim by stating that it was brought because these defendants "apparently do or will contend that they were acting, at least in part, under color of federal law during the relevant period of this lawsuit."  (Id.)  Plaintiff did not assert a FTCA cause of action in the Third Amended Complaint (or in any prior pleading).  (Id.)

Defendants Rose, Fortney, Banuelos, Sunderraj, and Schiffelbein have now filed an Answer (through the U.S. Attorney) to plaintiff's Third Amended Complaint in which these defendants admitted that they were KDADS employees during the relevant period.  (Doc. 74 at 2-3)  They also admitted that they were acting within the scope of their employment as KDADS employees.  (Id.)  In paragraph 88 of their Answer, they state that "to the extent they were individually involved in the case at all, [they] simply conducted an investigation and reported the findings under state and federal law."  (Id. at 9)  This assertion of acting in a dual function is reiterated in paragraph 108 of their Answer.  (Id. at 11)  These defendants

did <u>not</u> assert that they were acting solely in a capacity as federal employees or agents.  (Doc. 74)

Defendant Keck (Secretary of KDADS) has filed a separate Answer to plaintiff's Third Amended Complaint.  (Doc. 73)  Defendant Keck admitted in his Answer (on behalf of KDADS) that defendants Rose, Fortney, Banuelos, Sunderraj, and Schiffelbein were "during all times relevant" acting within the scope of their employment as KDADS employees.  (<u>Id</u>. at 2-3)  Defendant Keck further admitted that KDADS administers the licensing of nursing homes ("adult care homes"), the certification of nurses' aides (CNAs), and the CNA registry pursuant to Kansas law.  (<u>Id</u>. at 4-6)  In addition, defendant Keck admitted that KDADS has state statutory duties to investigate reports of elder abuse pursuant to K.S.A. 39-1401 <u>et seq</u>., as amended.  (<u>Id</u>. at 6)  Moreover, defendant Keck does <u>not</u> assert that defendants Rose, Fortney, Banuelos, Sunderraj, or Schiffelbein were acting under color of federal law or that they were federal employees or agents during the relevant period.  (Doc. 73)

## II.   THE DEFENDANTS IN QUESTION ARE NOT FEDERAL EMPLOYEES FOR FTCA PURPOSES

Under the FTCA, the United States is liable for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act of any <u>employee of the Government</u> while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1) (emphasis added).

For purposes of the FTCA, "employee of the government" is defined to include "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity, temporarily, or permanently in the service of the United States, whether with or without compensation."  28 U.S.C. § 2671

However, the definition of "federal agency" in the FTCA excludes "any contractor with the United States."  28 U.S.C. § 2671.  Thus, the FTCA definition of federal "employee" excludes independent contractors and employees of independent contractors. United States v. Orleans, 96 S. Ct. 1971, 1975-1978 (1976); Flynn v. United States, 631 F.2d 678, 681-682 (10th Cir. 1980).

Therefore, the issue in the case at bar is whether defendants Rose, Fortney, Banuelos, Sunderraj, and Schiffelbein were federal "employees" for purposes of the FTCA or whether they were the employees of any independent contractor (i.e., the State of Kansas)?  That is a different issue than the question of whether they were acting "under color of federal law" for purposes of plaintiff's Bivens claims in Count VI of his recent pleadings.

In several cases, the Tenth Circuit has distinguished "federal employee" from "independent contractor" for purposes of the FTCA.  In Bethel v. United States, 466 Fed. Appx. 771, 772 (10th Cir. 2012), a doctor employed by the State of Colorado was sued for alleged negligent medical treatment of the plaintiff during surgery at the VA Medical Center (VAMC) in Denver.  A contract existed between the University of Colorado School of Medicine (UCSM) and VAMC through which the two facilities shared doctors and staff to enable the VA hospital to function as a teaching facility.  Id. at 775.

Under that scenario, a bench trial in Bethel resulted in a judgment against the United States under the FTCA of almost $11 million in damages.  Id. at 776-777.  On appeal, however, the Tenth Circuit held that the doctor at issue was not a federal "employee" but rather an employee of an independent contractor (i.e., the State).  Id. at 778-781.  The key inquiry in Bethel was whether the federal government supervised "the day-to-day operations of the individual."  Id. at 778 (quoting Lurch v. United States, 719 F.2d 333, 337 (10th Cir. 1983)).  Because the doctor was not considered the VA's employee (even though he treated a VA patient at a VA facility), the large judgment against the United States under the FTCA was reversed.  Id. at 781.

The Tenth Circuit in <u>Bethel</u> considered the following factors in determining whether the state-employed doctor was a federal "employee" or the employee of an independent contractor for purposes of the FTCA:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses his own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract others.

<u>Id</u>. at 778 (quoting <u>Tososie v. United States</u>, 452 F.3d 1161, 1163-1164 (10th Cir. 2006)).

In the case at bar, the first factor (intent of the parties) is expressly shown by the "1864 contract" between the federal agency, Health and Human Services (HHS), and the State of Kansas. That agreement was signed on June 3, 1985. A copy of the contract is attached hereto as Exhibit 1. The agreement pertains to federal Medicare funding received by hospitals, skilled nursing facilities, and other providers of health services in Kansas. <u>Id</u>. at 1-3. The State of Kansas is required to have a "state survey agency" which certifies that such providers are in compliance with the federal Medicare law and related regulations. <u>Id</u>. at 3-5a.

Most important to our case, the "1864" contract between HHS and the State of Kansas expressly states the intent that the State (and its state survey agency) acts as an independent contractor in performing the functions set forth in the agreement:

> In the performance of the functions described in this Agreement, the State acts on behalf of the Secretary as a Federal contractor, carrying on for the Secretary, the administrative responsibilities imposed pursuant to law by applying and enforcing Federal standards. The Secretary, however, is the real party in interest in administering the program through this Agreement.

Exhibit 1 at 5a.

The "1864" contract between HHS and the State of Kansas was updated in 1993 or 1994. However, the language quoted above regarding the intent of the parties remained the same. That intent (that the State act as an independent contractor) has remained unchanged

to the current day.  Therefore, the first (and most important) factor in determining whether the KDADS employee defendants in this case were acting as federal "employees" for FTCA purposes is answered by the contract itself.  They were not; they were acting as employees of the State which is expressly deemed an independent contract or under the agreement. Exhibit 1.  Thus, the FTCA does not apply to them and the United States is not a proper defendant for purposes of Count V of plaintiff's pleadings.  Bethel, Tososie.

The other pertinent factors to be considered pursuant to Bethel/Tososie also establish that the KDADS employee defendants were not acting as federal "employees" for purposes of the FTCA.  The State (not the United States) paid the employees their salaries and the social security tax.  Id.  Moreover, the State (not the United States) supervised the day-to-day survey work of the KDADS employees.  Id.  Furthermore, the KDADS employees used equipment owned and provided by the State (not by the United States).  Id.  Therefore, the KDADS employee defendants clearly were not federal "employees" for FTCA purposes.  Id. See also Woodruff v. Covington, 389 F.3d 1117, 1126-1129 (10th Cir. 2004); Lilly v. Fieldstone, 876 F.2d 857, 858-860 (10th Cir. 1989).

The fact that the federal agency, HHS, may have monitored and inspected the KDADS employees' survey work does not make them federal "employees" for FTCA purposes.  Curry v. United States, 97 F.3d 412, 414-415 (10th Cir. 1996).  Nor is it enough that the KDADS employees were subject to detailed federal regulations.  Id. at 415.  An employee of an independent contractor is still outside the provisions of the FTCA.  Id.

In the case at bar, it is clear that defendants Rose, Fortney, Banuelos, Sunderraj, and Schiffelbein were acting at all relevant times as employees of an independent contractor (the State of Kansas).  Bethel, Tososie, Curry.  Those KDADS employee defendants were not acting as federal "employees" for purposes of the FTCA.  Id.  Therefore, the United States has no standing in this case to be substituted as defendant with respect to plaintiff's Count V (tort of outrage) cause of action.  Id.  That requested substitution should be denied.  Id.

### III.    ALERNATIVELY, THE DEFENDANTS IN QUESTION HAVE DUAL EMPLOYMENT

Even if the defendants in question could be considered federal "employees" with regard to their Medicare survey work relating to federal law, they were certainly also state "employees" with respect to their duties under Kansas law to investigate and take action to stop elder abuse at nursing homes.  That constitutes dual employment.  Thus, these defendants can be held liable (and the State can be held vicariously liable) under plaintiff's Count V claim (tort of outrage) for acts committed while they were acting within the scope of their authority as KDADS employees in enforcing Kansas statutes and regulations. Pursuant to the Kansas Tort Claims Act (KTCA), the State of Kansas and its employees may be held liable for intentional torts committed by those employees acting within the scope of their employment.  Moran v. State, 267 Kan. 583, 593 (1999).

In Bright v. Cargill, Inc., 251 Kan. 387, 405 (1992), the Kansas Supreme Court adopted the dual employment doctrine which is found in Restatement (Second) of Agency § 226 (1957):

> A person may be the servant of two masters, not joint employers, at one time as to one act, if the service of one does not involve abandonment of the service to the other.

251 Kan. at 405.

Federal courts in Kansas have also recognized that the dual employment doctrine is applicable to tort claims under Kansas law.  See Sage v. Bird City Dairy, LLC, 2015 WL 1959679 at 5 (D. Kan.); Housley v. Boeing Co., 2014 WL 3734187 at 3 (D. Kan.). Moreover, the United States Supreme Court has applied the dual employment doctrine to federal law.  N.L.R.B. v. Town & Country, Elec., Inc., 116 S. Ct. 450, 456 (1995).

All of the defendants in question, as well as KDADS (through defendant Keck), have asserted in their Answers that the KDADS employees were acting under color of both state and federal law.  Kansas statutes require KDADS to investigate reports of elder abuse at nursing homes licensed by KDADS (which included defendant Avita).  See K.S.A. 39-1401,

et seq., as amended.  KDADS is also required to take "corrective measures" if the allegations of abuse are substantiated.  K.S.A. 39-1404, as amended.  Thus, any common law tortious acts committed by defendants Rose, Fortney, Banuelos, Sunderraj, and Schiffelbein while they were performing their duties under state law are actionable under the KTCA, irrespective of the FTCA.  Moran.

Therefore, the doctrine of dual employment is an alternative basis for denying the requested substitution of the United States as defendant for purposes of Count V of plaintiff's pleadings.  The requested substitution is clearly unwarranted because only a cause of action under the KTCA (not the FTCA) is being asserted by plaintiff in Count V.  The proper defendants for the KTCA claim are defendants Rose, Fortney, Banuelos, Sunderraj, and Schiffelbein, and not the United States.  Moran, Bright.

IV.     **CONCLUSION**

For all of the reasons discussed herein, plaintiff respectfully requests that the Court issue an order denying the requested substitution of the United States as defendant with respect to Count V of plaintiff's Third Amended Complaint.

Respectfully submitted,

s/ Edward L. Keeley
Edward L. Keeley (#09771)
ekeeley@mcdonaldtinker.com
Katy E. Tompkins (#25581)
ktompkins@mcdonaldtinker.com
MCDONALD TINKER PA
300 West Douglas Avenue, Suite 500
Wichita, Kansas  67202
Phone:   (316) 263-5851
Fax:       (316) 263-4677
  *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of December, 2016, the foregoing was filed with the Clerk of the Court by using the CM/ECF System which will send a notice of electronic filing to the following:

Forrest T. Rhodes, Jr.
FOULSTON SIEFKIN LLP
1551 N Waterfront Pkwy, #100
Wichita, KS  67206
*Attorneys for Defendants*
  *Reeds Cove & Axiom*

Kimberly M.J. Lynch
Jessica F. Conrow
KANSAS DEPARTMENT FOR AGING
  AND DISABILITY SERVICES
503 S. Kansas Ave.
Topeka, KS  66603
*Attorneys for Defendants Keck, Sunderraj,*
  *Schiffelbein, Rose, Fortney and Banuelos*

Thomas E. Beall
T.G. Luedke
United States Attorney's Office
District of Kansas
Federal Building, Suite 290
444 SE Quincy Street
Topeka, KS 66683
*Attorneys for Defendants Sunderraj,*
  *Schiffelbein, Rose, Fortney and Banuelos*

s/ Edward L. Keeley
Edward L. Keeley