## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN PAUL ODHUNO,            ) | |
|                 ) | |
| **Plaintiff,**       ) | |
|                 ) | |
| **v.**               ) | |
|                 ) | |
| **REED'S COVE HEALTH AND REHABILITATION,** ) | **Case No. 15-1347-EFM-GEB** |
| **LLC d/b/a AVITA; AXIOM HEALTHCARE** ) | |
| **SERVICES, LLC; AUDREY SUNDERRAJ;** ) | |
| **CAROL SCHIFFELBEIN; CHRISTAN ROSE;** ) | |
| **TERESA FORTNEY; TREVA BANUELOS;** ) | |
| **and TIM KECK, in his official capacity as Secretary** ) | |
| **of the Kansas Department for Aging and Disability** ) | |
| **Services,** ) | |
|                 ) | |
| **Defendants.**    ) | |

## MEMORANDUM IN SUPPORT OF
## KDADS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Audrey Sunderraj, Carol (Schiffelbein) Jackson, Timothy Keck, Christan Rose, Teresa Fortney, and Treva Banuelos (KDADS Defendants), through their counsel Kimberly M.J. Lynch and Jessica Conrow, respectfully request the Court grant summary judgment in their favor and dismiss all claims against them pursuant to Fed. R. Civ. P. 56.

KDADS Defendants are entitled to summary judgment because there are no genuine disputes as to any material facts and KDADS Defendants are entitled to judgment as a matter of law for all claims made against them. KDADS Defendants acted within the scope of their official capacities and under color of state and federal law when conducting the complaint survey of Defendant Reed's Cove and Rehabilitation LLC d/b/a Avita (Avita). The KDADS survey findings were upheld by the Centers for Medicaid and Medicare Services (CMS) and the Health and Human

KDADS Defendants Memorandum in Support of
Motion for Summary Judgment
15-1347-EFM-GEB             Page 1 of 30

Services (HHS) Departmental Appeals Board, including the issuance and amount of the civil monetary penalties.

Plaintiff lacks standing to sue KDADS Defendants over the survey and resulting statement of deficiencies issued to Avita. All KDADS Defendants actions taken in relation to the complaint survey were regarding Avita, not the Plaintiff. KDADS Defendants took no direct action against the Plaintiff. As such, Plaintiff has not been harmed by the KDADS Defendants and lacks standing to bring this suit. Even if the Court finds Plaintiff has standing, KDADS Defendant Keck is entitled to Eleventh Amendment sovereign immunity and all the KDADS Defendants are entitled to qualified immunity for all claims brought under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Fed. Narcotic Agents*, 403 U.S. 388 (1971) (*Bivens*). In addition, because all federal claims are subject to dismissal, this Court should not exercise supplemental jurisdiction over the state law claim.

## I.    Statement of the Case

Plaintiff, John Paul Odhuno was employed at Avita adult care home when KDADS surveyors, Defendants Rose, Banuelos, and Fortney conducted a complaint survey and partial extended health resurvey of the facility. (Doc. 64: Plaintiff's Third Am. Compl., ¶ 16).  As a result of the survey, KDADS surveyors found Avita was not in substantial compliance with Medicare participation requirements for long-term care facilities relating to prevention of resident abuse, thorough investigation, and timely reporting abuse allegations. (Exhibit A: Department of Health and Human Services Departmental Appeals Board, Civil Remedies Division Decision, at KDADS MSJ 001).  KDADS surveyors further determined that Petitioner's noncompliance posed an immediate jeopardy to the health and safety of its residents. (*Id.*).

CMS agreed with the KDADS surveyors' determination and imposed a $5,650 civil monetary penalty (CMP) against Avita for 13 days of immediate jeopardy and a $300 per-day

KDADS Defendants Memorandum in Support of
Motion for Summary Judgment                                              Page 2 of 30
15-1347-EFM-GEB

CMP for 31 days of substantial noncompliance that was not immediate jeopardy, for a total CMP of $82,750. (*Id.*). Avita appealed the findings to the HHS Departmental Appeals Board, Civil Remedies Division. (*Id.*). The Department Appeals Board affirmed KDADS' and CMS' finding that Avita was not in substantial compliance with Medicare participation requirements, CMS' determination of immediate jeopardy to resident health and safety was not clearly erroneous, and the CMPs that CMS imposed were reasonable. (*Id.*).

During the survey process, Plaintiff was terminated by Avita. (Plaintiff's Third Am. Compl., ¶ 34). Plaintiff brings this lawsuit under 42 U.S.C. § 1983 and *Bivens* alleging KDADS Defendants violated his federal constitutional rights. In addition, Plaintiff brings a state law claim against KDADS Defendants Rose, Fortney, Banuelos, Sunderraj, and Jackson alleging they committed the tort of outrage. (Doc. 64, at ¶ 101-106).

## II.    Statement of Facts

### A. *KDADS Agreement with CMS to Provide Surveyors*

1.      Pursuant to 42 U.S.C.A. § 1395aa, the State of Kansas entered into an agreement (Agreement) with the Secretary of Health and Human Services (HHS Secretary) to determine whether a provider or supplier meets specific standards of participation in the federal Medicare and Medicaid programs. (Exhibit B: Agreement between the HHS Secretary and the State of Kansas, II(A)(1), II(G)), KDADS MSJ 018-077).

2.      The Agreement between the HHS Secretary and the State of Kansas provides that the State of Kansas, through a KDADS' surveyor, is required under Section 1864(a) of the Social Security Act (the Act) to survey providers or suppliers within the State of Kansas that are participating in Medicare and/or Medicaid services. (Exhibit B, II(A)(1)), KDADS MSJ 018-077).

KDADS Defendants Memorandum in Support of
Motion for Summary Judgment                                                          Page 3 of 30
15-1347-EFM-GEB

3.      The purpose of the survey is to certify "to the [HHS] Secretary compliance or non-compliance of providers and suppliers of services and resurveying such entities, at such times and manner as the [HHS] Secretary may direct." (Exhibit B, II(A)(1)(c)), KDADS MSJ 018-077).

4.      The Surveyors are required to make reports "in the form and containing such information as the [HHS] Secretary may require, and shall comply with such general instructions or regulations as the [HHS] Secretary may issue regarding the accuracy of such reports." (Exhibit B, II(J)), KDADS MSJ 018-077). To complete the surveys, they generally follow forms created by CMS or HHS.

5.       The contract defines the roll of the surveyors as federal contractors surveying on behalf of the HHS Secretary and "carrying on for the [HHS] Secretary, the administrative responsibilities imposed pursuant to law by applying and enforcing Federal standards." (Exhibit B, II(H)), KDADS MSJ 018-077).

6.      Surveyors are given a lengthy operations manual to review and follow when conducting surveys.  They have no control over their work as the survey is heavily regulated by federal regulations. [1]

https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/som107ap_pp_guidelines_ltcf.pdf
and https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/som107c05.pdf

7.      Plaintiff's allegations against Defendants Keck, Sunderraj and Jackson, stem directly from these KDADS Defendants acting as an administrator and supervisors of KDADS Defendants Rose, Banuelos, and Fortney, who at all times relevant to this action were KDADS employees acting as federal surveyors on behalf of CMS. (Doc. 1: Complaint, Counts IV, V, and

---

[1] The link contains the most recent version of the CMS Operations manual.

KDADS Defendants Memorandum in Support of
Motion for Summary Judgment                                    Page 4 of 30
15-1347-EFM-GEB

VII; Doc. 3: Pls. First Am. Compl. Counts III, and V; Doc. 40: Pls. Second Am. Compl., Counts III, and V; and Doc. 64: Pls. Third Am. Compl., Counts III, V, and VI).

8.    Plaintiff's allegations against Defendants Sunderraj and Jackson stem solely from their role as supervisors. (Doc. 64, ¶ 42).

9.    Plaintiff's allegations against Defendant Keck claim past and ongoing constitutional violations under 42 U.S.C. § 1983. (Doc. 64, ¶94)

10.    At all times relevant to the case, Defendant Christan Rose was a KDADS' employee in the position of Quality Improvement Coordinator. (Exhibit C: Defendant Rose's Answers and Objections to Plaintiff's First Set of Interrogatories, No. 3, KDADS MSJ 079-080).

11.    At all times relevant to the case, Defendant Rose was acting within the scope and authority of her employment. (Doc. 74: KDADS Defendants' Answer to Pls. Third Am. Compl., ¶ 7).

12.    At all times relevant to the case, Defendant Treva Banuelos was a KDADS' employee in the position of Health Facility Surveyor I. (Exhibit D: Defendant Banuelos' Answers and Objections to Plaintiff's First Set of Interrogatories, No. 3, KDADS MSJ 084-085).

13.    At all times relevant to the case, Defendant Banuelos was acting within the scope and authority of her employment. (Doc. 74, ¶ 9).

14.    At all times relevant to the case, Defendant Teresa Fortney was a KDADS' employee in the position of District Quality Improvement Coordinator. (Exhibit E: Defendant Fortney's Answers and Objections to Plaintiff's First Set of Interrogatories, No. 3, KDADS MSJ 090).

15.    At all times relevant to the case, Defendant Fortney was acting within the scope and authority of her employment. (Doc. 74, ¶ 8).

16.    At all times relevant to the case, Defendant Carol (Schiffelbein) Jackson was a KDADS' employee in the position of Health Facility Surveyor III. (Exhibit F: Defendant Jackson's Answers and Objections to Plaintiff's First Set of Interrogatories, No. 3, KDADS MSJ 095-096).

17.    At all times relevant to the case, Defendant Jackson was acting within the scope and authority of her employment. (Doc. 74, ¶ 5).

18.    At all times relevant to the case, Defendant Audrey Sunderraj was a KDADS' employee in the position of Director of Survey & Credentialing. (Exhibit G: Defendant Sunderraj's Answers and Objection to Plaintiff's First Set of Interrogatories, No. 3, KDADS MSJ 100-101).

19.    At all times relevant to the case, Defendant Sunderraj was acting within the scope and authority of her employment. (Doc. 74, ¶ 4).

20.    Defendant Timothy Keck became a KDADS' employee in the position of Interim Secretary on January 4, 2016.  Timothy Keck is now the Secretary of KDADS. (Exhibit H: Defendant Keck's Answers and Objection to Plaintiff's First Set of Interrogatories, No. 2, KDADS MSJ 106).

21.    Since beginning employment with KDADS, Defendant Keck has acted within the scope and authority of his employment. (Doc. 73: Defendant Keck's Answer to Pls.' Third Amended Compl., ¶ 6).

22.    Plaintiff's complaint states: "Keck is in charge of all employees, policies, rules, regulations, and departmental operations of KDADS.  By state law, he administers, promulgates, and enforces regulations regarding certified nurse aides (CNAs), the Kansas Nurse Aide Registry, the "unlicensed employee" registry, and the elder abuse Report Register. The KDADS Secretary also administers, promulgates, and enforces regulations relating to the investigations of elder abuse

at adult care homes and the dissemination of that information to current and potential employers of Kansas CNAs."

### B. Complaint Investigation Survey

23.     On July 31, 2014, KDADS initiated a complaint investigation at Avita based on a complaint made to the KDADS hotline that Avita had failed to investigate and report an allegation of abuse of a resident by a Certified Nurse Aide (CNA). The investigation was concluded on August 14, 2014.  (Exhibit A, at KDADS MSJ 002).

24.     On July 31, 2014, based on Avita's failure to investigate a resident complaint and ensure the residents were not subject to reasonably foreseeable harm, KDADS Defendants Rose and Banuelos determined there was an immediate jeopardy to Avita residents. (Exhibit I: HHS and CMS Statement of Deficiencies and Plan of Correction, KDADS MSJ 131-133).

25.     Avita suspended the alleged perpetrator, as well as all other black male nurses working the night shift, on August 1, 2014. (Exhibit J, KDADS MSJ 154).

26.     Plaintiff was terminated by Avita during the course of the survey process. (Doc. 64, ¶ 34).

27.     Avita provided all employees with retraining on the requirements of reporting allegations between August 1, 2014 and August 5, 2014. (Exhibit K: Avita Training on Resident Abuse/ANE, KDADS MSJ 154-162).

28.     Avita completed their comprehensive investigation of the resident at issue's complaint on August 5, 2014 (Exhibit I, KDADS MSJ 144).

29.     The immediate jeopardy was abated on August 5, 2014, when Avita (1) completed their comprehensive investigation of Resident 3's abuse complaint, (2) provided all employees

with retraining on the requirements of reporting allegations, and (3) suspended the alleged perpetrator. (Exhibit I, KDADS MSJ 112-153).

30.     KDADS Defendants Rose and Banuelos also found Avita was not in substantial compliance with Federal requirements for skilled nursing facilities during an abbreviated follow-up survey on August 14, 2014. (Exhibit L: KDADS Letter, dated 8/20/14, KDADS MSJ 163-164).

31.     The investigation found that Avita was not in compliance with 42 C.F.R. §483.13(b), 42 C.F.R. §483.13(c)(1)(i), 42 C.F.R. §483.15(b), 42 C.F.R. §483.20(d)(3) and 42 C.F.R. §483.10(k)(2). (Exhibit I; Exhibit H, No. 4, KDADS MSJ 112-153 and 107-108).

32.     The investigation found Avita failed to protect the resident at issue from abuse and mental anguish after an allegation of abuse on 7/23/14 was reported to an administrative staff member. (Exhibit I, KDADS MSJ 131).

33.     KDADS did not make a finding Plaintiff abused the resident at issue. (Exhibit H, No. 5; Exhibit I, KDADS MSJ 108 and 112-153).

### C.  Avita's Appeal of complaint Investigation Survey

34.     In a hearing before the Department of Health and Human Services Departmental Appeals Board, the July 31, 2014 determination of immediate jeopardy was upheld by the Administrative Law Judge.  (Exhibit A, KDADS MSJ 001-017).

35.     In a hearing before the Department of Health and Human Services Departmental Appeals Board, the August 14, 2014 determination of substantial non-compliance was upheld by the Administrative Law Judge. (Exhibit A, KDADS MSJ 001-017).

### D.  Plaintiff's Allegations against KDADS Defendants

36.     Plaintiff filed an EEOC complaint against Avita on November 3, 2104. (Doc. 64, ¶ 13).

KDADS Defendants Memorandum in Support of
Motion for Summary Judgment                                        Page 8 of 30
15-1347-EFM-GEB

37.     Plaintiff was issued a right to sue letter on August 5, 2015. (Doc. 64, ¶ 13).

38.     Plaintiff filed this present action on November 3, 2015. (Doc. 1).

39.     Plaintiff sued Defendants Jackson and Sunderraj in their individual capacities. (Doc. 1, at 2; Doc. 3 at 2; Doc. 40 at 2; Doc. 64 at 2).

40.     Plaintiff sued Defendant Keck solely in his official capacity as then-Interim Secretary of KDADS.  (Doc. 3 at 2; Doc. 40 at 2; Doc. 64 at 2).

41.     Plaintiff sued Defendants Banuelos, Fortney, and Rose in their individual capacities.  (Doc. 40 at 2; Doc. 64 at 2).

42.     Plaintiff seeks declaratory relief against Defendant Keck.  (Doc. 64, ¶ 100).

43.     Plaintiff seeks injunctive relief on three separate grounds as against Defendant Keck.  Specifically, Plaintiff requests this Court "(1) require that [Keck] institute polices, rules, and regulations which will put in place the constitutional standards mandated by the 14th Amendment during and after all KDADS investigations of abuse, (2) requiring the KDADS Secretary to remove and destroy all findings, files, ESI, and records regarding the Avita resident's allegations against plaintiff and KDADS' investigation of those allegations from all KDADS databases and hard-copy files, and (3) requiring that the KDADS Secretary place a statement on all KDADS databases indicating plaintiff has been totally exonerated from any alleged wrongdoing during his Avita employment, as well as for KDADS to cease disseminating false information regarding plaintiff to his potential employers and medical field educators."  (Doc. 64, ¶ 100).

44.     Plaintiff is asking the Court to find that, as applied to him, "Defendant Keck (in his official capacity) has deprived and will continue to deprive plaintiff Odhuno of his 14th Amendment rights to due process and equal protection."  (Doc. 64, ¶ 95).

45.     Plaintiff claims ongoing 42 U.S.C. § 1983 violations of his 8th and 14th Amendment constitutional right to due process and equal protection due to the policies and procedures promulgated by KDADS to investigate allegations of fraud in nursing home facilities.  (Doc. 64, ¶ 94).

46.     Plaintiff alleges his CNA certification has been effectively revoked when KDADS Defendants published a "false finding to Avita during their investigation which was a contributing factor in [Plaintiff's] suspension and tarnation by Avita." (Doc. 64, ¶88).  Plaintiff further argues this finding has been disclosed and "will continue to be disclosed to [Plaintiff's] potential employers through KDADS databases."  (Doc. 64, ¶ 88).

47.     Plaintiff alleges that KDADS Defendants made statements to Avita "indicating that Plaintiff was the perpetrator of sexual abuse" which led to his termination. (Doc. 64, at ¶ 89). Plaintiff claims that these "false and stigmatizing statements remain in KDADS databases and have been and will continue to be published to prospective employers and nursing schools which have and will continue to inquire regarding plaintiff." (Doc. 64, ¶ 89).  Plaintiff alleges that KDADS Defendants have made "false and stigmatizing statements" which "foreclose all opportunity for him to obtain future employment as a CNA…" (Doc. 64, at ¶ 87).

48.     Plaintiff believes he is on an abuse registry maintained by KDADS and has been deprived of a property interest in his CNA license.  (Doc. 64, ¶ 58).

49.     Plaintiff is listed on the KDADS Certified Nurse Aide Registry as a Certified Nurse Aide who is eligible for hire by adult care homes in Kansas. (Exhibit H: No. 7, KDADS MSJ 109).

50.     Plaintiff's certification to practice as a Certified Nurse Aide has never been disciplined and is listed as "Active" with no prohibition listed. (Exhibit M: Record from Certified Nurse Aid Registry, KDADS MSJ 165).

KDADS Defendants Memorandum in Support of
Motion for Summary Judgment                                        Page 10 of 30
15-1347-EFM-GEB

51.     The criminal background checks in KDADS' possession do not reveal the existence of any criminal history related to prohibited offenses pursuant to K.S.A. 39-970 and K.S.A. 65-5117, which would prohibit Plaintiff's license to practice as a Certified Nurse Aide. (Exhibit N: KDADS' Response to Plaintiff's First Request for Production of Documents, KDADS MSJ 179-187).

52.     Plaintiff alleges KDADS Defendants "intentionally discriminated against plaintiff based on his race, national origin, and/or gender in violation of plaintiff's 14th Amended right to equal protection of the laws" when KDADS Defendants failed to interview Plaintiff or give him an opportunity to respond to Resident 3's allegations. (Doc. 64, ¶ 90).

53.     Plaintiff alleges that KDADS Defendants discriminated against him by "concluding that he was a sexual abuser without credible evidence and by ignoring overwhelming exculpatory evidence." (Doc. 64, ¶ 90).  Plaintiff states that "[s]imilarly situated white, American-born males accused of sexual abuse have not been treated the same way by these defendants or other KDADS employees in abuse investigation before or since which they have conducted." (Doc. 64., ¶ 90).

## III.   Standard of Review

### A.   *Summary Judgment*

Summary judgment is proper only if no dispute of material fact exists and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (internal quotations omitted). In deciding this, the Court views the evidence in favor of the non-movant. *Id.* "Under this rule, the initial burden is on the moving party to show the court 'that there is an absence of evidence to support the nonmoving party's case.'" *Good v. Bd. of Cty. Comm'rs of Shawnee Cty.*, 209 F. Supp. 2d 1124, 1128–29 (D. Kan. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  This burden "may be met when that party identifies those

portions of the record which demonstrate the absence of a genuine issue of material fact." *Id.* at 1129. Once that requirement is met, the burden shifts to the non-moving party to "'make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Good*, 209 F. Supp. 2d at 1129 (quoting *Celotex Corp.*, 447 U.S. at 323). The non-moving party "may not rest upon the mere allegations or denials of his pleadings to avoid summary judgment." Good, 209 F. Supp. 2d at 1129. "[T]here must be sufficient evidence on which a jury could reasonably find for the nonmoving party." *Id.*

### B. *Summary Judgment – Qualified Immunity*

Because of the underlying purposes of qualified immunity, appellate courts review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions. *Gross v. Pirtle*, 245 F.3d 1151, 1155–56 (10th Cir. 2001). After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a "heavy two-part burden." *Id.* (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir.1995)).

The plaintiff must first establish "that the defendant's actions violated a constitutional or statutory right." *Id.* (quoting *Albright*, 51 F.3d at 1534). If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct. *Id.* In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. at 615, 119 S.Ct. 1692 (internal quotation marks omitted).

This two-step analysis "is designed to 'spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'

" *Wilson v. Layne*, 526 U.S. at 609, 119 S.Ct. 1692 (quoting *Siegert*, 500 U.S. at 232, 111 S.Ct. 1789). If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity. *Albright*, 51 F.3d at 1535. If the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove " 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.' " *Id.* (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir.1993)).

While courts review the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity. *Gross*, 245 F.3d at 1155–56.

### C.  Standing

In Kansas, standing is a component of subject matter jurisdiction, which any party, or the court on its own motion, may raise at any time. *Vorhees v. Baltazar*, 283 Kan. 389, 397, 153 P.3d 1227 (2007). "The burden is with the plaintiff to establish subject matter jurisdiction." *Columbian Fin. Corp. v. Stork*, 216 F. Supp. 3d 1267, 1271 (D. Kan. 2016).  Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial." *Id.*

KDADS Defendants Memorandum in Support of
Motion for Summary Judgment                                                      Page 13 of 30
15-1347-EFM-GEB

Further, the plaintiff also has the burden of showing standing and "alleging a plausible claim of injury to support standing." *Clark v. Lynch*, 213 F. Supp. 3d 1347, 1351 (D. Kan. 2016). "'Federal courts scrupulously guard the boundaries of their jurisdiction; they are duty-bound not to permit a standing determination to rest on speculation or conjecture.'" *Id.* (quoting *New Mexico Off–Highway Vehicle Alliance v. U.S. Forest Service*, 645 Fed. Appx. 795, 804 (10th Cir. 2016)). To demonstrate standing, under Article III there must be an injury in fact, causation, and redressability. *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1223 (10th Cir. 2008). Specifically:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court.

> Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 1223-24 (quoting *Lujan*, 504 U.S at, 561.

### D. *42 U.S.C. Section 1983*

"Pursuant to 42 U.S.C. § 1983, any person who 'under color of ... [law] ... subjects, or causes to be subjected, ... any [person] ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.'" *Good v. Bd. of Cty. Comm'rs of Shawnee Cty.*, 209 F. Supp. 2d 1124, 1127 (D. Kan. 2002). Further, "to state a claim for relief in a § 1983 action, a plaintiff must assert that he was (1) deprived of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed under color of state law." *Id.*

When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to demonstrate that the defendant violated his constitutional rights and that the rights were clearly established. *See Gross v. Pirtle*, 245 F.3d 1151, 1155-56 (10th Cir. 2001). If the plaintiff meets this burden, then the defendant must show that no genuine issues of material fact exist. *Id*. at 1156 (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)).

## IV.   Arguments and Authorities

### A.  *Plaintiff lacks standing to bring this suit as he fails to demonstrate a case or controversy as to any actions taken by KDADS Defendants or that any actions taken by KDADS Defendants caused him actual harm.*

Plaintiff's appeal "cannot proceed on the merits in the absence of an Article III case or controversy." *Habecker*, 518 F.3d at 1223.  A court lacks jurisdiction to consider even meritorious claims "[w]ithout a live, concrete, controversy." *Id*.  Meaning, even if a controversy exists at filing, it must remain live throughout the litigation. *Id.* at 1224.  To demonstrate standing, under Article III there must be an injury in fact, causation, and redressability.  *Id.* However, the injury must be "fairly traceable" to the actions of a defendant. *Id.* at 1225 (citing *Lujan*, 504 U.S. at 560).  More than "'speculative inferences are necessary to connect [a plaintiff's] injury to the challenged action'…" *Id.* at 1225 (quoting *Simon v. E. Ky. Welfare Rights org.*, 426 U.S. 26, 41-42).

The Tenth Circuit reviewed the issues of standing in *Habecker* where plaintiff, an elected town trustee, brought a civil suit under § 1983 against town defendants when election was recalled by voters and a nonprofit corporation promoting separation of church and state. *Habecker*, 518 F.3d at 1217. Plaintiff alleged the recall was initiated based on his refusal to recite the Pledge of Allegiance at board of trustees meetings. *Id.* The court found Plaintiff lacked standing to proceed with his case against town defendants as Plaintiff primarily relied on the loss

of his elected position as Trustee of the Board. *Id.* at 1224. While the court found Plaintiff suffered a concrete harm, it concluded Plaintiff's loss of his office was not caused by the alleged actions of the defendants. *Id.* The court noted that Plaintiff was required to show that his injury was "fairly traceable" to defendants' actions. *Id.* at 1225. The court found that votes cast by voters removed plaintiff from office, not he was not removed because of the alleged actions of town defendants. *Id.* These voters were not before the court and the court determined it could not make an "inferential leap regarding [their motivations]" to vote for or against plaintiff's recall. *Id.*

Here, Plaintiff alleges the following as sources of standing as to claims against KDADS Defendants: (1) the revocation or effective revocation of his Certified Nurse's Aide (CNA) certification without due process of law; (2) the loss in Plaintiff's good name and reputation without due process of law; and (3) the alleged intentional discrimination against Plaintiff. First, Plaintiff's allegation that KDADS Defendants revoked his CNA certification without due process is not accurate. Plaintiff's CNA certification remains listed as "Active" on the Kansas Nurse Aide Registry, with no discipline or prohibition listed. Further, Plaintiff alleges his CNA certification has been effectively revoked because KDADS Defendants published a "false finding to Avita during their investigation which was a contributing factor in [Plaintiff's] suspension and termination by Avita." (Doc. 64, ¶88). Plaintiff further argues this finding has been disclosed and "will continue to be disclosed to [Plaintiff's] potential employers through KDADS databases." (Doc. 64, ¶ 88).

However, each of these allegations is wholly untrue and are unsupported by the record in this case. There are no facts which demonstrate that KDADS Defendants definitively found that Plaintiff abused the resident at issue. Rather, during a complaint survey of Plaintiff's employer,

Avita, KDADS surveyors determined based on the evidence and witness statements, that Plaintiff was the alleged perpetrator in the complaint made to the KDADS complaint hotline.  At all times relevant to this action, only the term "alleged perpetrator" has been used in documents that are available to the public, without any citation to Plaintiff's name as is the standard in any complaint survey.  No names are used in the Statement of Deficiencies and corresponding Plans of Correction. The confidential complaint investigation which uses staff and patient names is not available to the public, including potential employers under the Kansas Open Records Act, K.S.A. 45-215, et. seq., or the Freedom of Information Act, 5 U.S.C. § 552.

Moreover, there has been no finding that Plaintiff has committed abuse, neglect, or exploitation under Kansas law within the Kansas Nurse Aide Registry.  In order to make such a finding, KDADS would have investigated the alleged actions of Plaintiff in a separate proceeding. If during the investigation, a determination was made that Plaintiff committed abuse, neglect, or exploitation of a vulnerable adult, KDADS would prosecute the action in an administrative proceeding to which Plaintiff would be entitled to due process. (*See* K.S.A. 39-3401 *et seq.*). No such case was ever investigated or filed under K.S.A. 39-3401 *et seq.* KDADS has taken no direct action against Plaintiff. These allegations are false, as a result, Plaintiff cannot demonstrate the KDADS Defendants have revoked or effectively revoked his CNA certification.

Second, for similar reasons, Plaintiff cannot demonstrate that KDADS Defendants deprived him of due process for the alleged loss of his good name and reputation as KDADS Defendants have not made false statements regarding Plaintiff. Plaintiff alleges that KDADS Defendants have made "false and stigmatizing statements" which "foreclose all opportunity for him to obtain future employment as a CNA…" (Doc. 64, at ¶87). State Defendants have made no

statements which impact Plaintiff's good name and reputation.  Plaintiff further alleges that

KDADS Defendants made statements to Avita "indicating that Plaintiff was the perpetrator of

sexual abuse" which led to his termination. (Doc. 64, at ¶ 89). Again, KDADS Defendants did

not determine whether Plaintiff was the perpetrator of sexual abuse and made no such statements

to Avita.  Plaintiff alleges again that these statements were published in KDADS databases.

(Doc. 64, at ¶ 89). However, no such statements have been published in any KDADS database.

There has been no due process violation as there has been no false or defamatory

statements made. When Avita appealed the deficiencies and civil monetary penalties which

stemmed from the survey, the Department for Health and Human Services Appeal Board found

Avita failed to protect residents from "reasonably foreseeable risks of abuse." (Exhibit A, at

KDADS 0059). The survey and subsequent appeal focused on the Avita's actions and failure to

act. The survey was conducted for the purposes of determining whether Avita abided by federal

law and not in determining whether Plaintiff committed the alleged abuse.  Further, while the

term, "alleged perpetrator," is listed in the statement of deficiencies, the cited deficiency lies

with Avita for their failure to protect residents, including the resident at issue, investigate alleged

abuse, and report alleged abuse to the appropriate authority in a timely manner. Plaintiff cannot

demonstrate the KDADS Defendants have deprived him of his good name and reputation

without due process of law.

Third, Plaintiff cannot demonstrate that KDADS Defendants intentionally discriminated

against him as there are no facts in evidence which support this allegation in any manner.

Plaintiff alleges KDADS Defendants "intentionally discriminated against plaintiff based on his

race, national origin, and/or gender in violation of plaintiff's 14th Amended right to equal

protection of the laws" when KDADS Defendants failed to interview Plaintiff or give him an

KDADS Defendants Memorandum in Support of
Motion for Summary Judgment                                                    Page 18 of 30
15-1347-EFM-GEB

opportunity to respond to Resident 3's allegations. (Doc. 64, ¶ 90).  Plaintiff further alleges that KDADS Defendants discriminated against him by "concluding that he was a sexual abuser without credible evidence and by ignoring overwhelming exculpatory evidence." (Doc. 64, ¶ 90). Plaintiff states that "[s]imilarly situated white, American-born males accused of sexual abuse have not been treated the same way by these defendants or other KDADS employees in abuse investigation before or since which they have conducted." (Doc. 64., ¶ 90).  However, again, other than the fact that Plaintiff was not interviewed as part of the complaint survey process, all remaining allegations are false and constitute mere speculation on the part of Plaintiff.

Moreover, whether KDADS Defendants made the determination to interview Plaintiff was not relevant to the outcome of the complaint survey. Actual abuse need not occur for a Avita to violate 42 C.F.R. § 483.13(b) and (c)(1)(i). It is sufficient for KDADS and CMS to show that the Avita failed to protect residents from reasonably foreseeable risks of abuse. (Exhibit A, citing *Western Care Mgmt*., DAB No. 1921, at 15). The complaint survey investigated Avita's actions and/or failure to act, not whether Plaintiff committed the abuse. KDADS never took any action against Plaintiff. Avita chose to terminate Plaintiff to abate the immediate jeopardy. KDADS lacks authority to terminate a CNA's employment with an adult care home. Plaintiff fails to demonstrate KDADS Defendants discriminated against him for any reason. These claims are entirely unfounded.

False allegations and mere speculation are not enough to establish standing. Therefore, following the holding in *Habekcer,* Plaintiff's claims against KDADS Defendants should be dismissed for lack of standing.

KDADS Defendants Memorandum in Support of
Motion for Summary Judgment                                                    Page 19 of 30
15-1347-EFM-GEB

**B.** **All claims against KDADS Defendant Timothy Keck must be dismissed, as the Secretary for KDADS is entitled to Eleventh Amendment Immunity.**

Plaintiff's claims for declaratory and injunctive relief fail as a matter of law because Secretary Keck is entitled to Sovereign Immunity, and the exceptions do not apply in this instance.

The Eleventh Amendment grants immunity that "accord[s] states the respect owed them as joint sovereigns," and "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens." *Id.,* (citing *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007); *see also Patillo v. Larned State Hosp.*, 462 Fed. Appx. 780, 783 (10th Cir. 2012) (stating that Eleventh Amendment immunity applies to 42 U.S.C. §§ 1983, 1985, and 1986 actions). Eleventh Amendment immunity protects states and state-government officials sued in "[their] official character." *Id., citing Governor of Ga. v. Madrazo*, 26 U.S. 110, 123–24 (1828).

"A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989). As such, it is no different from a suit against the State itself. *Id.*; *See*, e.g., *Kentucky v. Graham*, 473 U.S. 159, 165–166, 105 S.Ct. 3099, 3104–3105, 87 L.Ed.2d 114 (1985). Neither a State nor its officials acting in their official capacities are "persons" under § 1983. *Will*, 491 U.S. 58, 71.

However, there are two exceptions to Eleventh Amendment immunity: a request for injunctive relief or a request for declaratory judgment. Plaintiff seeks injunctive relief against Defendant Keck pursuant to the *Ex Parte Young* doctrine. "Under *Ex parte Young*, a plaintiff may avoid the Eleventh Amendment's prohibition on suits against states in federal court by seeking to enjoin a state official from enforcing *an unconstitutional statute*." *Cressman v.*

*Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)) (emphasis added). This is permitted because "certain suits for...injunctive relief against state officers must...be permitted if the Constitution is to remain the supreme law of the land." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (quoting *Alden*, 527 U.S. at 747).

However, in this case, Plaintiff is not asking the Court to enjoin the Secretary from enforcing an unconstitutional statute. Rather, Plaintiff seeks three separate injunctions, asking the Court to "(1) require that [Keck] institute polices, rules, and regulations which will put in place the constitutional standards mandated by the 14th Amendment during and after all KDADS investigations of abuse, (2) requiring the KDADS Secretary to remove and destroy all findings, files, ESI, and records regarding the Avita resident's allegations against plaintiff and KDADS' investigation of those allegations from all KDADS databases and hard-copy files, and (3) requiring that the KDADS Secretary place a statement on all KDADS databases indicating plaintiff has been totally exonerated from any alleged wrongdoing during his Avita employment, as well as for KDADS to cease disseminating false information regarding plaintiff to his potential employers and medical field educators." (SOF ¶ 43).

The only injunctive relief sought by Plaintiff that could possibly be an exception to Eleventh Amendment Immunity would be the first request, requiring that Defendant Keck institute polices, rules, and regulations which will put in place the constitutional standards mandated by the 14th Amendment. Plaintiff fails to demonstrate the policies, rules, and regulations at issue are unconstitutional. Even still, this is not a request that the Court order Keck to *refrain from* enforcing an unconstitutional statute, but rather, a request that the Court *require*

*the institution of* policies, rules, and regulations by Keck. This is not an established exception under *Ex Parte Young*.

The remaining two requests for injunctive relief do not meet the criteria for an exception under *Ex Parte Young* because the injunctions sought do not ask to restrain defendants from *enforcing* an unconstitutional statute or policy. *See Chubb v. Brownback*, No. 14-CV-03227-DDC-DJW, 2016 WL 5410615, at *6 (D. Kan. Sept. 28, 2016). They instead ask the Court to require Keck to destroy a CMS investigative file, which is not KDADS' property, and to cease disseminating false information regarding Plaintiff, without any evidence that KDADS has provided any information about Plaintiff and the Avita complaint survey investigation. This is not a contemplated exception to Eleventh Amendment immunity.

Further, the specific declaratory relief sought by Plaintiff is also not an exception to Eleventh Amendment immunity. The Chubb Court held:

> Under a second exception to Eleventh Amendment immunity, a plaintiff may seek a declaratory judgment against a state official in her official capacity so long as the putative declaration does not implicate past liability of that official or the state. *See Verizon*, 535 U.S. at 646 (allowing declaratory judgment action based on an official's past conduct to proceed in federal court only because the declaration did not affect "past liability of the State, or any of its [officials]"). To issue a judgment declaring that a state official is liable for past conduct would "impose *upon the State* 'a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.' " *Id.* (quoting *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). This is precisely what the Eleventh Amendment prohibits. The declaratory judgment sought here does not fit this declaratory-judgment exception. Plaintiff seeks a "declaration that [d]efendants have violated [his] constitutional right of due process."

> *Chubb*, 2016 WL 5410615, at *6

Similarly, here, Plaintiff seeks a declaration "in the form of a court order declaring KDADS' policies, rules, and regulations to be constitutionally defective and deficient on their face and as applied to plaintiff."

The Plaintiff is asking the Court to find that, as applied to him, "Defendant Keck (in his official capacity) has deprived and will continue to deprive plaintiff Odhuno of his 14th Amendment rights to due process and equal protection." (SOF ¶ 44). Plaintiff's requested relief stems from past conduct, and while Plaintiff alleges future harm, such allegations are wholly unfounded as described in detail throughout this motion.  Because this putative declaration would implicate alleged past liability of the Secretary or the State, it is therefore not an exception to Eleventh Amendment immunity. The claim is prohibited and cannot proceed against Defendant Keck. Defendant Keck is entitled to Eleventh Amendment immunity and the case should be dismissed against Defendant Keck.

### C. KDADS Defendants Keck, Jackson, and Sunderraj are entitled to dismissal of all claims against them as Plaintiff fails to demonstrate these defendants personally participated in the alleged constitutional violations as required under 42 U.S.C. § 1983 and a Bivens claim.

Plaintiff's claims under 42 U.S.C. § 1983 against Defendants Keck, Jackson and Sunderraj and the *Bivens* claim against Defendants Jackson and Sunderraj fail to identify any personal participation by these Defendants. Plaintiff's only allegations involving these defendants relate to their role as administrators or supervisors.

The elements necessary to establish a § 1983 or *Bivens* violation "will vary with the constitutional provision at issue." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010). But common to all § 1983 and *Bivens* claims is the requirement that liability be predicated on a violation traceable to a defendant-official's "own individual actions." *Iqbal v. Ashcroft*, 556 U.S. 662, 676, 129 S. Ct. 1937 (2009). As relevant here, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 676). Public officials are entitled to qualified immunity from damages liability when performing

KDADS Defendants Memorandum in Support of
Motion for Summary Judgment                                                     Page 23 of 30
15-1347-EFM-GEB

discretionary functions. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). This means a public official is entitled to qualified immunity if sued for actions he took while functioning as an administrator. *See id.* at 275–76 (noting that a prosecutor is only entitled to qualified immunity when acting as an administrator). Qualified immunity is the norm for state officials, and it "serves to insulate from suit 'all but the plainly incompetent or those who knowingly violate the law.'" *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); see also *Chubb*, 2016 WL 5410615, at *7 (D. Kan. Sept. 28, 2016).

Defendant Keck, as Secretary of KDADS has acted in an administrator's role, which the Plaintiff concedes in his complaint:

> "Keck is in charge of all employees, policies, rules, regulations, and departmental operations of KDADS. By state law, he administers, promulgates, and enforces regulations regarding certified nurse aides (CNAs), the Kansas Nurse Aide Registry, the "unlicensed employee" registry, and the elder abuse Report Register. The KDADS Secretary also administers, promulgates, and enforces regulations relating to the investigations of elder abuse at adult care homes and the dissemination of that information to current and potential employers of Kansas CNAs."

(SOF ¶22). Plaintiff only mentions Defendants Jackson and Sunderraj in passing in his Complaint, noting they were the "employees of KDADS who supervised defendants Rose, Fortney, and Banuelos in their investigation." (SOF ¶7, ¶8).

Supervisory status alone does not create § 1983 liability. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Rather, there must be "an affirmative link ... between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir.1997) (quotation and brackets omitted). Under § 1983 and *Bivens*, a plaintiff must make it clear in his complaint "exactly who is alleged to have done what to whom" to state a claim sufficient to nullify a defendant's qualified immunity." *Brown v. Montoya*, 662 F.3d 1152, 1165

(10th Cir. 2011) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)); see also *Pauls*, 718 F.3d at 1225-26 (finding that "because § 1983 and *Bivens* are vehicles for imposing personal liability on government officials, the court stressed the need for careful attention to particulars especially in lawsuits involving multiple defendants. '[I]t is particularly important' that plaintiffs 'make clear exactly who is alleged to have done what to whom, ... as distinguished from collective allegations.'") (quoting *Kan. Penn. Gaming, LLC v. Collins*, 66 F.3d 1210, 1215 (10th Cir. 2011)). . "Lumping one defendant in with a group is not sufficient—the complaint must "isolate the allegedly unconstitutional acts" of each defendant. *Brown,* 662 F.3d, at 1165, (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)).

Plaintiff fails to do this in his Third Amended Complaint, or any previous complaint. Instead, Plaintiff's Complaint fails to identify specific actions or personal participation by Keck, Jackson, or Sunderraj in any alleged unconstitutional action against Plaintiff. Without alleging personal participation, a § 1983 or *Bivens* action for personal or supervisory liability cannot stand. As such, all claims against Keck, Jackson, and Sunderraj must be dismissed.

### D. KDADS Defendants are entitled to Qualified Immunity as Plaintiff fails to establish their conduct violated clearly established statutory or constitutional rights which a reasonable person would have known.

All claims against KDADS Defendants brought under 42 U.S.C. § 1983 and the *Bivens* claim must be dismissed because KDADS Defendants are entitled to qualified immunity.

The qualified immunity rules apply equally in suits against state officers under § 1983 and suits against federal officers under *Bivens*. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996) (citing *Davis v. Scherer*, 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984)). Qualified immunity is immunity from suit rather than mere defense to liability.

*Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Qualified

immunity "protects government officials 'from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982)). This protection applies to "all but the plainly incompetent

or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

> In *Pearson*, the Supreme Court found:

> Qualified immunity balances two important interests—the need to hold public
> officials accountable when they exercise power irresponsibly and the need to shield
> officials from harassment, distraction, and liability when they perform their duties
> reasonably. The protection of qualified immunity applies regardless of whether the
> government official's error is "a mistake of law, a mistake of fact, or a mistake
> based on mixed questions of law and fact." *Groh v. Ramirez*, 540 U.S. 551, 567,
> 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (KENNEDY, J., dissenting) (quoting
> *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for
> the proposition that qualified immunity covers "mere mistakes in judgment,
> whether the mistake is one of fact or one of law").

> *Pearson*, 555 U.S. 223, 231–32

While actions for damages provide an important remedy for individuals injured by

governmental officials' abuse of authority, such actions sometimes subject officials to costly and

harassing litigation and potentially inhibit officials in performing their official duties. *Anderson*

*v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Supreme Court has

emphasized the broad protection qualified immunity affords, giving officials "a right, not merely

to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'"

*Behrens v. Pelletier*, 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (quoting

*Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). "Consequently,

courts should resolve the purely legal question raised by a qualified immunity defense "'at the

earliest possible stage in litigation.'" *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001)

(quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, the U.S. Supreme Court mandated a

two-step sequence for resolving government officials' qualified immunity claims. However, in

*Pearson,* the U.S. Supreme Court held the Court has discretion to decide which prong of the

qualified immunity analysis to address first. *Pearson*, 555 U.S. 223, 236.  The first prong of the

*Saucier* test is whether the facts that a plaintiff has alleged (*see* Fed. Rules Civ. Proc. 12(b)(6),

(c)) or shown (*see* Rules 50, 56) make out a violation of a constitutional right. *Saucier,* 533 U.S.,

at 201, 121 S.Ct. 2151. Second, the court must decide whether the right at issue was "clearly

established" at the time of defendant's alleged misconduct. *Id.* Qualified immunity is applicable

unless the official's conduct violated a clearly established constitutional right. *Anderson, supra,*

at 640, 107 S.Ct. 3034. To show that a right is clearly established, the plaintiff must point to "a

Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority

from other courts must have found the law to be as the plaintiff maintains." *Estate of Booker v.*

*Gomez*, 745 F.3d 405, 427 (10th Cir. 2014) (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1161

(10th Cir. 2008)).

Pursuant to K.S.A. 39-1404, KDADS has a duty to investigate reports of elder abuse at

adult care homes. Per subsection (a)(2) of that statute, KDADS is required to make a personal

visit with the involved resident within 24 hours of the reported abuse if there is imminent danger

to the resident's health or welfare. The complaint survey investigation conducted by KDADS

Defendants Rose, Fortney, and Banuelos did not violate clearly established law. As a result of

the surveys, KDADS and CMS determined Avita was not in substantial compliance with

Medicare participation requirements for long-term care facilities relating to the prevention of

KDADS Defendants Memorandum in Support of
Motion for Summary Judgment                                              Page 27 of 30
15-1347-EFM-GEB

resident abuse, thorough investigation, and timely reporting of abuse allegations to the appropriate authorities. All actions taken by KDADS Defendants related to the complaint survey of Avita, KDADS Defendants took no direct actions against Plaintiff. KDADS Defendants appropriate applied the laws and guidance related to the survey process. The surveyors reasonably believed that their conduct complied with the law. *See Pearson*, 555 U.S. at 244 (The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law). The surveyors were following the manual provided to them by CMS for federal surveyors and following Kansas case law for the investigation of elder abuse reports.

Avita appealed the survey results to the HHS Department Appeals Board, which upheld KDADS and CMS decisions, including the issuance of CMPs in the amount of $5,650 for the 13 days Avita placed residents in immediate jeopardy and in the amount of $82, 750 for 31 days of substantial noncompliance with other Medicare participation requirements. Plaintiff has failed to demonstrate that Defendatnts Keck, as Secretary, Jackson and Sunderraj, as supervisors, or Rose, Fortney, and Banuelos, as employees, committed any acts of misconduct that violated constitutional or statutory law.

### E. *The court should decline to exercise supplemental jurisdiction over state law claims.*

In addition to Plaintiff's federal claims under 42 U.S.C. § 1983, Plaintiff presents a tort of outrage claim brought solely under state law. (Doc. 64, ¶ 101-106). This court has supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367.  However, a district court can decline to exercise jurisdiction over supplement claims for a number of valid reasons. *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172, 118 S.Ct. 523 (1997). District courts should "deal with cases involving pendent claims in the manner that best serves the principles of

economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine."

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357, 108 S.Ct. 614 (1988). These principles

are codified in 28 U.S.C. §1367. Under section (c), a district court may decline to exercise

supplemental jurisdiction over a claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which
> the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original
> jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for
> declining jurisdiction.

28 U.S.C. § 1367(c).

If the court dismisses all original jurisdiction claims brought against these KDADS

Defendants, it should decline to exercise supplemental jurisdiction over the state claims against

those defendants, as it is permitted to do under 28 U.S.C. § 1367(c)(3).

## V.   Conclusion

Plaintiff lacks standing to sue KDADS Defendants over the survey and resulting statement

of deficiencies issued to Avita. All actions taken by KDADS Defendants were regarding Avita,

not the Plaintiff. KDADS Defendants took no direct action against the Plaintiff. As such, Plaintiff

has not been harmed by the KDADS Defendants and lacks standing to bring this suit. Even if the

Court finds Plaintiff has standing, Defendant Keck is entitled to Eleventh Amendment sovereign

immunity and all KDADS Defendants are entitled qualified immunity for all federal claims

brought against them. In addition, because all federal claims are subject to dismissal, this Court

should not exercise supplemental jurisdiction over the state law claim. For these reasons, KDADS

Defendants respectfully request the Court dismiss all claims against them with prejudice and for

other such relief as the Court may deem just and equitable.

KDADS Defendants Memorandum in Support of
Motion for Summary Judgment                                                                          Page 29 of 30
15-1347-EFM-GEB

Respectfully submitted,

*/s/ Kimberly M.J. Lynch*
By:   Kimberly M. J. Lynch, #24225
      Chief Counsel
      Kansas Department for Aging and
            Disability Services
      503 S. Kansas Ave,
      Topeka, KS 66603
      P: (785) 296-0237
      F: (785) 296-0767
      E: kimberly.lynch@ks.gov

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 6th day of June, 2017, the above and foregoing *Memorandum in Support of KDADS Defendants' Motion for Summary Judgment* was electronically filed with the Clerk of the US District Court by using the electronic filing system which will send a notice of electronic filing to the following:

Edward L. Keeley                    ekeeley@mcdonaldtinker.com
Katy E. Tompkins                    ktompkins@mcdonaldtinker.com
MCDONALD, TINKER, SKAER,
QUINN & HERRINGTON, P.A.
300 West Douglas Avenue, Suite 500
Wichita, Kansas 67202
            *Attorneys for Plaintiff*

Forrest T. Rhodes, Jr.              frhodes@foulston.com
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS  67206-4466
            *Attorney for Defendants*
            *Reeds Cove and Axiom*

*/s/ Kimberly M.J. Lynch*
      Kimberly M.J. Lynch

KDADS Defendants Memorandum in Support of
Motion for Summary Judgment                              Page 30 of 30
15-1347-EFM-GEB