**AGREEMENT Identifier Code:**    HCFA-85-<u>10/1/93 update</u>

AGREEMENT BETWEEN

The Secretary of Health and Human Services

and

The State of Kansas

To carry out the provisions of Sections 1864, 1874, and related provisions of the Social Security Act, as amended.

The Secretary of Health and Human Services, hereinafter referred to as the Secretary, and the State of Kansas, Department of Health and Environment, hereinafter referred to as the state, hereby agree to the following terms:

**EXHIBIT B**

**KDADS MSJ 018**

INDEX

| Article No. | Title | Page No. |
|---|---|---|
| I. | Definitions and Delegations | 1 |
| II. | Functions to be Performed by the State | 3 |
| III. | Compliance with Regulations and General Instructions | 5b |
| IV. | Organization and Personnel | 6 |
| V. | Evaluation | 7 |
| VI. | Term of Agreement | 9 |
| VII. | Modification of Agreement | 9 |
| VIII. | Termination of Agreement | 9 |
| IX. | Cost of Administration | 10 |
| X. | Subcontracting | 13 |
| XI. | Transfer of Funds Through Letter of Credit | 15 |
| XII. | Examination of Records | 15 |
| XIII. | Confidential Nature and Limitations on Use of Information and Records | 16 |
| XIV. | Disputes | 16 |
| XV. | Clauses Incorporated by Reference | 18 |

**KDADS MSJ 019**

## Article I
## DEFINITIONS AND DELEGATIONS

A. Definition of terms for the purpose of this Agreement:

1. "Secretary" means the Secretary of Health and Human Services or the Secretary's delegate, unless otherwise specified.

2. "Act" means Title XVIII of the Social Security Act, as amended.

3. "HCFA" means the Health Care Financing Administration.

4. "Provider" or "provider of services" means an institution, or distinct part of an institution, facility or agency defined in the Act and includes but is not limited to:

   a. Hospitals

   |   |   |   |   |
   |---|---|---|---|
   | (1) General | ( 8) Maternity or Obstetric |
   | (2) Short term | ( 9) Eye, Ear, Nose and Throat |
   | (3) Children's and Adolescent/Children's | (10) Cancer/Oncology |
   | (4) Christian Science Sanatoriums | (11) Psychiatric |
   | (5) Medical-surgical | (12) Rehabilitation |
   | (6) Orthopedic | (13) Long term |
   | (7) Gynecological | (14) Swing Bed (Hospital providers or extended care services) |

   b. Skilled nursing facilities

   c. Home health agencies

   d. Providers of outpatient physical therapy and/or speech pathology services

   e. Comprehensive outpatient rehabilitation facilities

   f. Hospices

5. "Supplier" or "supplier of services" means an individual or entity whose services are described in the Act and includes but is not limited to:

   a. Laboratories as defined in Section 1861(s) of the Act and in 42 CFR 493.2.

   b. Suppliers of portable x-ray services

   c. End-stage renal disease treatment facilities

1

KDADS MSJ 020

d.   <u>Chiropractors</u>

e.   <u>Rural health clinics</u>

f.   <u>Physical therapists and occupational therapists in independent practice</u>

g.   <u>Ambulatory surgical centers</u>

h.   <u>Screening mammography services</u>

6.   "Other entity" means an individual or unit whose health services are not described in the Act, but are described in a related Federal law and includes but is not limited to:

<u>Laboratories</u> as defined in CLIA (P.L. 100-578).   (N.B. this definition encompasses the provisions of Section 1861(s) of the Act as well as including many laboratories that do not participate in Medicare.)

7.   "General instructions" means operating manuals, related written instructions, and guidelines of general application issued by the Secretary pursuant to the Act and regulations in respect to matters covered by this Agreement.   A general instruction for purposes of this Agreement may not be issued below the level of the Secretary's designee (i.e., Director of the Office of Survey and Certification, Regional Administrator or Associate Regional Administrator).

8.   "Regulations" unless otherwise specified means those regulations promulgated by the Secretary pursuant to the Act and codified in the Code of Federal Regulations, Title 42, Chapter IV.

9.   "Federal Acquisition Regulation", as used in this contract, means those parts of the Federal Acquisition Regulation (FAR), as codified in Title 48, Chapter 1 of the Code of Federal Regulations, and includes the Department of Health and Human Services Acquisition Regulation.   The term FAR as reference is made hereinafter, applies as in effect on the effective date of this Agreement and as may be modified on or before each June 15 thereafter for any renewal period.

10.   "State" means the State which is a party to this Agreement and includes the State survey agency.

11.   "State survey agency" refers to that component within the State government which has the primary responsibility for the performance of the functions under this Agreement.

2

12.   "Subcontract" means any contract, agreement, purchase order, or lease (including leases of real property) to obtain space, supplies, equipment, or services under this Agreement; the term "subcontractor" means any holder of one or more subcontracts. "Subcontract" does not include an agreement between the State survey agency and other State or local government agencies.

13.   "Trust Fund" means either the Federal Hospital Insurance Trust Fund established by Section 1817(a) of the Act or the Federal Supplementary Medical Insurance Trust Fund established by Section 1841(a) of the Act, or both, as may be appropriate in the context of this Agreement.

B.   Federal delegations of authority for the purpose of this Agreement:

The Secretary of Health and Human Services has delegated the authority for the administration of this Agreement, except for the authority to terminate the Agreement under Section 1864 of the Act, to the Administrator of the Health Care Financing Administration.  This authority has been redelegated by the Administrator to the Deputy Administrator and to the Associate Administrator for Operations, and has been further redelegated to the Deputy Associate Administrator for Operations and the Regional Administrators.  The Regional Administrator may retain the authority or redelegate it further to an Associate Regional Administrator.

Certain responsibilities for the administration of the Act have been or may be delegated to the Inspector General of the Department of Health and Human Services or to other components of the Department.


Article II
FUNCTIONS TO BE PERFORMED BY THE STATE

A.   Under Section 1864(a) of the Act

1.   The State upon request of the Secretary shall certify whether or not providers/suppliers within the State that are participating or are asking to participate under the Act or under CLIA, comply with all applicable definitions and requirements in the Act and in implementing regulations.

In performing certification related duties, the functions of the State include, but are not limited to:

(a) identifying potential providers and suppliers of services within the State;

(b) explaining the requirements and conditions for qualifying as a provider or supplier of services;

3

     (c) surveying for the purpose of certifying to the Secretary compliance or non-compliance of providers and suppliers of services and resurveying such entities, at such times and manner as the Secretary may direct;

     (d) explaining requirements for an acceptable plan of correction for cited deficiencies; and

     (e) obtaining a completed Statement of Deficiencies and Plan of Correction, HCFA Form 2567, that is acceptable to the Secretary for each provider and supplier surveyed or resurveyed.

In making certifications the State shall apply the appropriate conditions of participation for providers and conditions for coverage for suppliers of services, including standards for life safety from fire, and other requirements incorporated by reference in the regulations. The application of such conditions, standards and requirements shall be in accordance with the nationally uniform survey procedures established in regulations and general instructions.

2.    The State shall maintain:

     (a) a toll-free hotline to:

         (1) collect, maintain, and update information on participating home health agencies; and
         (2) receive complaints and answer questions with respect to home health agencies.

     (b) a unit for investigating such complaints that possesses enforcement authority and has access to relevant information.

B.  **Under Sections 1864(c) and 1865(a) of the Act**

At the request of the Secretary, the State shall conduct validation surveys of institutions accredited by the Joint Commission on Accreditation of Health Care Organizations or the American Osteopathic Association on a selected sample basis, or because of substantial allegations of the existence of significant deficiencies. Complaints received by the State concerning accredited institutions shall be reported to the Secretary. To the extent that the Secretary finds it desirable, and in the interest of maintaining uniformity of results, representatives of the Secretary may join with the State in conducting validation surveys. The State shall assist the Secretary's representatives in investigating, documenting, and resolving differences between the findings reported by accrediting bodies and those obtained in validation surveys. The State shall similarly conduct validation surveys of providers and suppliers, accredited by other accrediting organizations on the same basis in accordance with regulations and general instructions of the Secretary.

**KDADS MSJ 023**

C.   **Under Section 1874 of the Act**

    1.    The State shall certify to the Secretary whether:

        (a)  Suppliers of portable x-ray services performing diagnostic x-ray tests described in Section 1861(s)(3) of the Act, meet the requirements of the Act and regulations;

        (b)  Chiropractors furnishing the services and supplies described in Sections 1861(s)(1) and 1861(s)(2)(A) of the Act, meet the requirements of Section 1861(r)(5), including whether such chiropractors are licensed or otherwise legally authorized to perform such services, and whether they meet the uniform minimum standards prescribed by the Secretary;

        (c)  End-stage renal disease treatment facilities meet the requirements of Section 1881 of the Act and implementing regulations prescribed by the Secretary;

        (d)  Physical and occupational therapists furnishing individuals with outpatient physical therapy or speech pathology services in such therapists' offices or in such individuals' homes meet the requirements of Section 1861(p) and (g) respectively, of the Act, and implementing regulations prescribed by the Secretary (including whether such physical therapists meet State licensure requirements);

        (e)  Laboratories performing diagnostic laboratory services described in Sections 1861(s)(3), (13), (14) and (15) of the Act, meet the requirements of the Act, and regulations; and

        (f)  Screening mammography services meet the requirements of Sections 1834 (c)(3) and 1861 (jj) of the Act and regulations prescribed by the Secretary.

    2.    The State shall assist the Secretary in collecting financial interest information that providers and suppliers are required to furnish pursuant to the Act and regulations.

D.   **Under Section 1819(e) and (g) of the Act**

The State shall perform the prescribed functions related to skilled nursing facilities and the survey and certification process as set forth in the Act, regulations and program issuances.

E.   **Under the Code of Federal Regulations, Title 42, Chapter IV**

    1.    The State shall perform the following functions related to the certification of laboratories:

5

    (a) performing at least biennial inspections of each laboratory
        (except those qualifying for certificates of waiver or
        inspected by accreditation bodies) to assess compliance,
        including:

        (1)   identifying and reporting of deficiencies;
        (2)   evaluating personnel qualifications;
        (3)   monitoring laboratory participation in an approved
               proficiency testing program; and
        (4)   evaluating plans of correction and conducting
               related follow-up surveys.

    (b) submitting recommendations to the Secretary concerning
        issuance of certificates, certificates of waiver and
        enforcement activity, as well as recommending sanctions;

    (c) conducting validation surveys of a representative sample
        (specified by the Secretary) of laboratories inspected by
        accreditation organizations; and

    (d) conducting surveys as required by the Secretary, such as
        complaint surveys or some surveys in certificate of waiver
        laboratories.

2.    Exception:  If the State operates an accreditation program
       approved by the Secretary, the Secretary will perform the
       validation surveys.

**F.**    **Under the Prospective Payment System (PPS)**

    The State shall conduct surveys of providers or parts of providers in
    connection with requests for exemption from PPS.

**G.**    **Effect of State and Local Licensing Requirements**

    The State shall certify whether or not a provider or supplier is
    eligible or continues to be eligible for participation in or coverage
    under the Medicare program.  Licensure of laboratories by those States
    whose licensure programs have been approved by the Secretary under
    Section 353 (p) of the Public Health Service Act will suffice as
    certification for CLIA purposes.

**H.**    **Real Party in Interest**

    In the performance of the functions described in this Agreement, the
    State acts on behalf of the Secretary as a Federal contractor,
    carrying on for the Secretary, the administrative responsibilities
    imposed pursuant to law by applying and enforcing Federal standards.
    The Secretary, however, is the real party in interest in administering
    the program through this Agreement.

KDADS MSJ 025

I.    <u>Records</u>

The State, or any local governmental agency performing any function of the State under this Agreement, shall maintain pertinent survey, certification, statistical, or other records for a period of at least four (4) years after the date of such record.

J.    <u>Reports</u>

The State shall make reports in the form and containing such information as the Secretary may require, and shall comply with such general instructions or regulations as the Secretary may issue regarding the accuracy of such reports.  Where feasible and practicable such reporting requests will provide lead time that will facilitate any necessary adjustments in workload planning.


Article III
COMPLIANCE WITH REGULATIONS AND GENERAL INSTRUCTIONS

The State shall comply with such regulations and general instructions as the Secretary may prescribe for the administration of this Agreement.  When feasible and practicable the State will be requested

5b

KDADS MSJ 026

to apply its program knowledge and experience to participate in the development of general instructions.

## Article IV
## ORGANIZATION AND PERSONNEL

A.  **Organization**

1.  The State shall organize most of the functions under this Agreement within a single State survey agency.

2.  The State shall provide facilities and employ qualified personnel necessary to carry out the functions under this Agreement. The placement of survey personnel within the State survey agency, or any other agency of the State dedicated to fulfilling the functions of this Agreement, shall be subject to the approval of HCFA.

3.  With the prior written authorization of the Secretary, the State, may utilize the services, facilities, and records of any other State agency or local governmental agency to assist the State survey agency in carrying out the functions authorized by this Agreement. Only the reasonable and necessary costs incurred by such agencies in furnishing to the State survey agency such services, facilities, or records, may be allowed under this Agreement, in accordance with Article IX.

B.  **Personnel**

1.  Personnel of the State performing functions under this Agreement shall meet the Federal surveyor qualification standards specified in general instructions.

2.  Upon request of the Secretary, personnel employed or utilized by the State in carrying out the functions under this Agreement will participate in programs designed to develop and maintain the proficiency of personnel directly involved in survey or certification activities. These programs include but are not limited to surveyor orientation, basic surveyor training, and specialty surveyor training. Survey personnel will attend meetings, conferences, or training programs within or outside the State as may be required by the Secretary.

3.  The State shall require any local governmental agency performing services pursuant to Paragraph A, section 2, of this Article to follow the general instructions applicable to surveyor qualifications and the merit system standards applicable to the State.

- 6 -

**KDADS MSJ 027**

4. Standards for a merit system of personnel administration consistent with the Federal regulation in 5 CFR, Chapter I, Subpart F - Standards for a Merit System of Personnel Administration, shall be maintained by the State and made applicable to personnel in any State or local agency involved in the performance of this Agreement.

## Article V
## EVALUATION

A. The Secretary has the right periodically to evaluate the State's performance under this Agreement. The Secretary may maintain onsite representatives with the State or a subcontractor for the duration of any such evaluation.

B. When an evaluation is made by the Secretary on the premises of the State or a subcontractor, the State shall provide, and shall require its subcontractor(s) to provide, all reasonable facilities and assistance for the safety and convenience of the Secretary's representatives in the performance of their functions. The State shall furnish to the Secretary such records and reports as the Secretary may require to evaluate the State's performance under this Agreement. All evaluations by the Secretary shall be performed in such a manner as will not unduly delay the State's functions under this Agreement.

C. The Secretary makes evaluations primarily through a planned program of Federal surveys of providers and suppliers previously surveyed by the State and through its national State Agency Evaluation Program (SAEP).

The SAEP is designed to evaluate the manner and extent to which the State meets performance standards. Major operational specifics for the performance standards are detailed in the State Operations Manual (HCFA Pub. 7).

The performance standards include, but are not limited to the following:

1. Organization and staffing of the State survey agency enables fulfillment of the functions required under this Agreement.

2. Surveys are planned, scheduled, conducted, and processed timely.

3. Survey findings are supportable.

4. Certifications are fully documented, and consistent with applicable law, regulations, and general instructions.

5. Current written internal operating procedures are consistent with program requirements.

- 7 -

KDADS MSJ 028

6.  A plan of correction is requested from a provider/supplier having deficiencies that do not pose an immediate and/or serious threat to patients, or do not limit the capacity to furnish care or services. The State follows up with providers and suppliers until deficiencies are corrected.

7.  When certifying noncompliance, adverse action procedures set forth in regulations and general instructions are adhered to.

8.  Supervisory reviews and evaluations of surveyor performance are made routinely.

9.  Required financial and budget reports are submitted on time and completed in accordance with general instructions.

10. All expenditures and charges to the program are substantiated to the Secretary's satisfaction.

11. Actual survey and certification activities are consistent with the annual activity plan and workload estimate approved by HCFA.

12. The performance of agencies utilized to perform specific functions under this Agreement are monitored.

13. Ongoing surveyor training programs develop and maintain surveyor proficiency.

14. Results of complaint investigations against providers and suppliers are considered in making certification decisions.

D.  If a formal evaluative report is prepared that reflects deficiencies in the State's performance under this Agreement or proposes corrective action to be taken by the State, the Secretary shall:

1.  furnish a copy to the State; and

2.  discuss any corrective actions proposed in the report with the State in order to establish reasonable and practicable time frames for implementation.

E.  When the Secretary determines that the State is not able or is not willing to perform part or all of the functions and responsibilities prescribed in this Agreement, the Secretary may terminate the Agreement in whole or in part, in accordance with Article VIII.

- 8 -

### Article VI
### TERM OF AGREEMENT

A.   This Agreement shall begin on October 1, 1985, and end on September 30, 1986.   The Agreement is automatically renewed for periods of one (1) year unless the Secretary or the State gives written notice of its intention not to renew the Agreement at least 90 days before the end of the current term.

B.   Any notice under Paragraph A of this Article shall be deemed to have been given upon the date such notice was mailed, as established by the postmark or other appropriate evidence of the date of transmittal. Whenever the State gives notice of its intention not to renew this Agreement it shall, prior to mailing such notice, notify the appropriate HCFA Regional Administrator, by telephone or other oral communication, of its intention not to renew the Agreement.

### Article VII
### MODIFICATION OF AGREEMENT

A.   This Agreement may be modified at any time by mutual written consent of the Secretary and the State.

B.   The Secretary may modify this Agreement to incorporate changes in the State's functions and responsibilities as a result of changes to the Act or regulations.

C.   Prior to any modification under Paragraph B of this Article, the Secretary shall consult with the State and participate in planning for adjustments which might be necessary.   Thereafter, the Secretary shall provide the State written notice that the modification is to be made not more than 90 days after the date specified in the notice (or such other date as may be required by statute).   If the State notifies the Secretary within 10 days of receipt of the Secretary's notification, the State may terminate this Agreement not less than 90 days after the date specified in the notice and shall not be required to implement any modification of this Agreement provided for in such notification during such 90 day period.

### Article VIII
### TERMINATION OF AGREEMENT

A.   This Agreement may be terminated at any time by mutual written consent of the parties to the Agreement.

B.   The State may terminate this Agreement at any time upon 180 days written notice to the Secretary.

KDADS MSJ 030

C.  If the Secretary determines that the State is not able or willing to carry out part or all of the functions under this Agreement (including a determination that the State has failed to meet a performance standard(s) as described in Article V and detailed in the State/Operations/Manual), the Secretary may terminate the Agreement in whole or in part to exclude specific classes of providers and/or suppliers identified in Article I from the State's survey and certification functions under this Agreement, or otherwise to limit or decrease its scope.

D.  If this Agreement is terminated pursuant to the terms of this Article, the State shall be paid the allowable costs incurred in terminating this Agreement in accordance with Article IX, Paragraph F.

E.  If this Agreement is terminated or nonrenewed by either the Secretary or the State, the State shall use its best efforts to accomplish an orderly transition of its functions under this Agreement to the successor survey entity.


## Article IX
## COST OF ADMINISTRATION

A.  The Secretary's fiscal obligation under this Agreement is contingent upon the apportionment to the Secretary of appropriated funds for the applicable fiscal year from which payment for the cost of performing the functions of this Agreement can be made.  No legal liability on the part of the Secretary for any payment, nor any legal obligation of the State to perform, may arise until the State receives notice from the Secretary that funds have been made available for this Agreement. Moreover, in no event shall the Secretary's obligation under this Agreement exceed the amount of funds which have been obligated to this Agreement.

B.  The State will be given sufficient opportunity prior to the beginning of every Federal fiscal year to prepare a State survey agency activity plan and budget estimate based on HCFA's activity plan and budget estimate for that forthcoming Federal fiscal year.  On this basis, the State will submit to the Secretary, at such time and in such form as the Secretary may prescribe, a budget request that provides an estimate of costs to be incurred by the State (through the State survey agency and other State and local agencies) for performing the functions under this Agreement for the period corresponding to the Federal fiscal year that begins on October 1 and ends on September 30.  The budget request will include cost estimates accompanied by such supporting documents as may be prescribed by the Secretary.

KDADS MSJ 031

C.  The Secretary will not reimburse the State for any costs attributable to the general expenses of the State in carrying out functions of State government which are not related to this Agreement.   The State budget request must equitably apportion the costs attributable to expenses incurred by the State for conducting activities related to, but distinguishable from, activities conducted under the Act and this Agreement.   The Secretary will reimburse the State for HCFA's fair share of the costs attributable to such planning and other efforts as the State may perform directed towards the coordination of activities in carrying out this Agreement and other activities related to the provision of services similar to those for which payment may be made under of the Act, or related to the facilities and personnel required for the provision of services, or related to improving the quality of such services.   The Secretary will determine the amount of such costs allocable to this Agreement on the basis of information submitted by the State, setting forth the plans proposed for coordinating its functions under this Agreement with such other activities.

D.  The Secretary and the State will negotiate the amount of the annual budget, and any revisions thereto, based on the budget request submitted by the State.   After the negotiations between the Secretary and the State on the amount of the annual budget, or any revisions thereto, the Secretary will issue a notice specifying such budget in an amount calculated to pay the costs of administering this Agreement.   Such budgeted amount for the purpose of obligation of funds by the Secretary shall be a ceiling which the State may not exceed without the prior written approval of the Secretary.

The State may, at any time during the fiscal year, submit appropriate revisions to the estimated amount of its budget as a result of any modification to this Agreement or functions thereunder.   The Secretary will determine if a revision to the amount of the estimated budget is appropriate and on that basis will make any adjustments to the budgeted amount.

E.  If at any time it appears to the State that the budgeted amount is not sufficient to cover costs incurred and estimated to be incurred in the fiscal year, the State shall so notify the Secretary promptly.   Such notification may be by telephone or telegraph with later confirmation by letter and will contain proposals as to how costs expected to be incurred may be reduced.   The Secretary and the State will promptly negotiate ways and means of resolving the matter for the purpose of ensuring that the State will not incur costs in excess of the budgeted amount.   Such resolution may include an increase in the budget, a reduction of functions to be performed by the State, a combination of both, or such other ways and means as may be agreeable to the parties.
If, after negotiating in good faith, the parties are unable to find a satisfactory solution to the matter, the Secretary will give the State written notice as to what measures to take in order to avoid incurring costs in excess of the budgeted amount.

- 11 -

Notwithstanding any other provisions of this Agreement, if the Secretary notifies the State to abate the performance of a function, there shall be no obligation on the part of the Secretary for costs incurred by the State in the performance of such function beyond the effective date of the notice to abate or the date such notice is received, whichever is later.

However, the allowability of any costs incurred by the State in the implementation of any such abatement directed by the Secretary will be governed by the provisions of the Federal Acquisition Regulation applicable to termination costs.

F.   The Secretary is not obligated to reimburse the State for costs incurred in excess of the budgeted amount. The State is not obligated to incur costs in excess of the budgeted amount until the Secretary notifies the State, in writing, that the budgeted amount has been increased.

G.   Subject to the foregoing provisions of this Article, the Secretary shall pay to the State the total amount of allowable costs incurred by the State in the performance of this Agreement. The costs allowable under this Agreement will be determined in accordance with Subpart 31.6 of the Federal Acquisition Regulation. The FAR provides that the allowability of costs under the Agreement will be determined in accordance with Office of Management and Budget, Circular No. A-87, "Cost Principles for State and Local Governments."

H.   The State shall comply with applicable regulations and general instructions for property purchased with funds provided under this Agreement. Funds provided by the Secretary under this Agreement will be used solely for the reasonable and necessary costs of the State in performing the functions authorized by this Agreement.

I.   If the State utilizes any service or material purchased or contracted for pursuant to this Agreement for purposes other than those authorized by the Agreement, the cost of such service or material will be pro-rated, pursuant to State Operations Manual procedures issued by the Secretary and applicable cost principles. Only that part that is attributable to the performance of functions authorized by this Agreement may be considered a reasonable and necessary cost for the performance of this Agreement.

J.   The State shall submit to the Secretary a report, including supporting data, of the allowable costs incurred by it during each quarter of the Federal fiscal year. This report is due to the Secretary no later than 30 days after the close of the quarter in which such costs were incurred.

Negotiations on the amount of administrative costs of the State to be allowed by the Secretary shall be undertaken by the Secretary and the State, based upon the State's quarterly statements.

KDADS MSJ 033

The State may appeal the final determination in accordance with the provisions of Article XIV of this Agreement, entitled "Disputes." Where a particular cost or type of cost is disallowed by final determination of the Secretary, and the State is not in agreement with the Secretary's disallowance, the State shall, for any subsequent claims, abide by the decision of the Secretary and agrees not to be reimbursed pending resolution of any amounts of such costs.  Until the issue is resolved, the State shall segregate such costs from all others, and specify the amounts of such costs on all subsequent claims.  Any funds withdrawn through the letter of credit in excess of the amount finally determined to be allowable must be returned promptly to the Secretary.

L.   The State shall furnish or make available such supplemental accounts, records, or other information as may be requested by the Secretary to substantiate any estimates, expenditures, or reports as may be necessary for auditing purposes, or to verify the allowability of the State's expenditures under this Agreement.

M.   All sections in this article are applicable for activities carried out by the State under the Clinical Laboratory Improvement Amendments of 1988 (CLIA '88) and the Code of Federal Regulations, Title 42, Chapter IV.  The State shall submit a separate budget request and cost report for CLIA '88 activities, and the Secretary will reimburse the State for those costs incurred in performing the functions referred to in Article II, Section E, which are allowable under the terms of this Agreement.


### Article X
### SUBCONTRACTING

A.   The State shall not enter into any subcontract to perform any of the functions set forth in Article II of this Agreement unless such subcontract receives the prior written approval of the Secretary.

B.   The State shall not enter into any subcontract under this Agreement not controlled by Paragraph A of this Article, if any part of the cost of the subcontract is allocable to this Agreement and if the subcontract provides for payment on a cost-plus-fixed-fee-basis, regardless of amount, or where the estimated cost of such subcontract exceeds, or is expected to exceed $25,000, without the prior written approval of the Secretary.

13

KDADS MSJ 034

C.  Any modification to a subcontract which required the prior written approval of the Secretary must be submitted to the Secretary for prior written approval.

D.  If the State enters into a subcontract, or modifies an existing subcontract without the prior written approval of the Secretary, where required, the Secretary is not obligated to reimburse the State for costs incurred with respect to such subcontract or modification.

E.  The requirement for prior written approval may be waived by the Secretary in writing, where requiring such approval is administratively impracticable and the State secures the waiver in advance of entering into or modifying a subcontract. In addition, the Secretary may ratify any subcontract in writing.    Such ratification shall constitute the approval of the Secretary.

F.  Prior written approval given by the Secretary with respect to a subcontract or modification hereto does not constitute a determination of the allowability of costs, unless so stipulated.

G.  The State shall select subcontractors on a competitive basis to the maximum practicable extent consistent with the objectives and requirements of this Agreement.

H.  For any subcontract or modification of a subcontract entered into or renewed under this Agreement, where the estimated cost to this Agreement under the subcontract exceeds $500,000 and is not based on adequate price competition, established catalog or market prices of commercial items sold in substantial quantities to the general public, or prices set by law or regulation, the State shall, in accordance with Subpart 15.8 of the Federal Acquisition Regulation, require the subcontractor to submit written cost or pricing data and certify that the cost or pricing data submitted were accurate, complete, and current prior to the entry into the subcontract or modification of a subcontract.    The State shall, through inclusion in all such subcontracts, require subcontractors to maintain full and complete accounting records, support costs or pricing data submitted as aforesaid, to require subcontractors to provide for full access by the State, the Secretary, and the Comptroller General of the United States for the purpose of examining the accuracy of cost or pricing data submitted as aforesaid, and in accordance with Subpart 15.8 of the Federal Acquisition Regulation, to agree to a reduction in price if the cost or pricing data submitted are found to be defective.

I.  No subcontract under this Agreement may provide for payment on a cost-plus-percentage-of-cost basis, and any fee payable under cost-reimbursement type subcontracts may not exceed the fee limitations in subsection 16.301-3 of the Federal Acquisition Regulation.

KDADS MSJ 035

## Article XI
### TRANSFER OF FUNDS THROUGH LETTER OF CREDIT

A.  The Secretary will provide for an advance of funds by a letter of credit to the State's designated commercial bank to authorize the withdrawal of funds from the United States Treasury in accordance with the governing Treasury instruction 31 CFR Part 205 (Circular No. 1075).
Each letter of credit will authorize the State's commercial bank to process payment vouchers drawing on funds made available through the Federal Reserve Bank or branch.   More specific Letter of Credit procedures are provided to each State via the Departmental Federal Assistance Financing System Users Guide.

B.  The letter of credit will specify a maximum monthly amount that may be withdrawn during each month by the State.   Such amounts will normally be 1/12 of the approved annual budget unless the Secretary and the State have agreed to other allotments of payment.   Amounts available for withdrawal but not withdrawn in any month may be carried over to the following months within the fiscal year.   The authorized official of the State may make withdrawals only to the extent that funds are currently needed to meet estimated expenditures.   Withdrawals may not be made to the extent that cash on hand or in banks renders further withdrawals unnecessary or premature.   If the amount specified in the letter of credit is not sufficient to meet estimated expenditures, the letter of credit may be modified by the Secretary.

## Article XII
### EXAMINATION OF RECORDS

A.  The Secretary and the Comptroller General of the United States or a duly authorized representative, until three (3) years after final payment under this Agreement or for any other period specified in Federal Acquisition Regulation (FAR) Subpart 4.7, "Contractor Records Retention," has access to and the right to examine any of the State's directly pertinent books, documents, papers, or other records involving transactions related to this Agreement.

B.  The State agrees to include in first-tier subcontracts under this Agreement a clause to the effect that the Secretary and the Comptroller General or a duly authorized representative, until three (3) years after final payment under the subcontract or for any other period specified in FAR Subpart 4.7, has access to and the right to examine any of the subcontractor's directly pertinent books, documents, papers, or other records involving transactions related to the subcontract.   "Subcontract," as used in this Article, excludes (1) purchase orders not exceeding $10,000; and (2) subcontracts or

- 15 -

purchase orders for public utility services at rates established to apply uniformly to the public, plus any applicable reasonable connection charge.

C.  The periods of access and examination in Paragraphs A and B above for records relating to (1) appeals under Article XIV; (2) litigation or settlement of claims arising from the performance of this Agreement or; (3) costs and expenses of this Agreement to which the Secretary or the Comptoller General or a duly authorized representative has taken exception, shall continue until such appeals, litigation, claims, or exceptions are finally disposed of.

## Article XIII
## CONFIDENTIAL NATURE AND LIMITATIONS ON USE OF INFORMATION AND RECORDS

A.  The State shall adopt policies and procedures to ensure that information contained in its records and obtained from the Secretary or from any provider or supplier of services will be disclosed only as provided in the Act or regulations.

B.  The Privacy Act of 1974, 5 U.S.C. 552a, is applicable to this Agreement in accordance with Paragraph A(11) of Article XV.

## Article XIV
## DISPUTES

A.  This Agreement is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601-613), referred to in this Article as the "CDA".

B.  Except as provided in the CDA, all disputes arising under or relating to this Agreement shall be resolved under this Article.

C.  "Claim," as used in this Article, means a written demand or written assertion by one of the parties to this Agreement seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this Agreement.  A claim arising under an Agreement, unlike a claim relating to that Agreement, is a claim that can be resolved under an Article of the Agreement that provides for the relief sought by the claimant.  However, a written demand or written assertion by the State seeking the payment of money exceeding $50,000 is not a claim under the CDA until certified as required by Paragraph D, section 2 of this Article.  A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the CDA. The submission may be converted to a claim under the CDA, by complying with the submission and certification require- ments of this Article, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

- 16 -

KDADS MSJ 037

D.  1.   A claim by the State shall be made in writing and submitted to the Secretary for a written decision. A claim by the Government against the State shall be subject to a written decision by the Secretary.

2.   For State claims exceeding $50,000, the State shall submit with the claim a certification that:

(a)  the claim is made in good faith;

(b)  supporting data are accurate and complete to the best of the State's knowledge and belief; and

(c)  the amount requested accurately reflects the contract adjustment for which the State believes the Government is liable.

3.   The certification shall be executed by:

(a)  the State official in charge of the State survey agency or the agency of which the State survey agency is a component; or

(b)  as appropriate, an official of the State having overall responsibility for the conduct of the State's affairs.

E.   For State claims of $50,000 or less the Secretary must, if requested in writing by the State, render a decision within 60 days of the request. For State certified claims over $50,000, the Secretary must, within 60 days, decide the claim or notify the State of the date by which the decision will be made.

F.   The Secretary's decision shall be final unless the State appeals or files a suit as provided in the CDA.

G.   The Government shall pay interest on the amount found due and unpaid from (1) the date the Secretary receives the claim (properly certified if required), or (2) the date payment otherwise would be due, if that day is later, until the date of payment. Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the CDA, which is applicable to the period during which the Secretary receives the claim and then at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim.

H.   The State shall proceed diligently with performance of this Agreement, pending final resolution of any request for relief, claim, appeal, or action arising under the Agreement, and comply with any decision of the Secretary.

KDADS MSJ 038

## Article XV
## CLAUSES INCORPORATED BY REFERENCE

The following clauses are hereby incorporated into and are made a part of this Agreement.  For purposes of these clauses, the term "Contractor" means the "State," and "Contracting Officer" or "Project Officer" means the "Secretary" or "Secretary's designee."

A.   Federal Acquisition Regulation (FAR) Clauses (48 CFR Chapter 1)

| Title | FAR Reference |
|---|---|
| 1. Officials Not To Benefit | 52.203-1 |
| 2. Gratuities | 52.203-3 |
| 3. Restrictions on Subcontractor Sales to the Government | 52.203-6 |
| 4. Anti-Kickback Procedures | 52.203-7 |
| 5. Requirement for Certificate of Procurement Integrity--Modification | 52.203-9 |
| 6. Limitation on Payments to Influence Certain Federal Transactions | 52.203-12 |
| 7. Price Reduction for Defective Cost or Pricing Data 52.215-22 | |
| 8. Price Reduction for Defective Cost or Pricing Data--Modifications | 52.215-23 |
| 9. Subcontractor Cost or Pricing Data | 52.215-24 |
| 10. Subcontractor Cost or Pricing Data--Modifications | 52.215-25 |
| 11. Utilization of Small Business Concerns and Small Disadvantaged Business Concerns | 52.219-8 |
| 12. Small Business and Small Disadvantaged Business Subcontracting Plan | 52.219-9 |
| 13. Utilization of Women-Owned Small Businesses | 52.219-13 |
| 14. Utilization of Labor Surplus Area Concerns | 52.220-3 |
| 15. Notice to the Government of Labor Disputes | 52.222-1 |
| 16. Convict Labor | 52.222-3 |
| 17. Equal Opportunity | 52.222-26 |
| 18. Affirmative Action for Special Disabled and Vietnam Era Veterans | 52.222-35 |
| 19. Affirmative Action for Handicapped Workers | 52.222-36 |
| 20. Employment Reports on Special Disabled and Vietnam Era Veterans | 52.222-37 |
| 21. Clean Air and Water | 52.223-2 |
| 22. Drug Free Workplace | 52.223-6 |
| 23. Privacy Act Notification | 52.224-1 |
| 24. Privacy Act | 52.224-2 |
| 25. Restrictions on Contracting with Sanctioned Persons | 52.225-13 |
| 26. Rights in Data - General | 52.227-14 |
| 27. Limitation on Withholding of Payment | 52.232-9 |

18

KDADS MSJ 039

|     |                                    |            |
|-----|------------------------------------|------------|
| 28. | Assignment of Claims               | 52.232-23  |
| 29. | Electronic Funds Transfer          | 52.232-28.2|
| 30. | Protest After Award                | 52.233-3   |
| 31. | Notice of Intent to Disallow Costs | 52.242-1   |
| 32. | Government Property                | 52.245-5   |
| 33. | Clauses Incorporated by Reference  | 52.252-2   |

B.   Department of Health and Human Services Acquisition
Regulation (HHSAR) Clauses (48 CFR Chapter 3)

| Title | HHSAR Reference |
|-------|-----------------|
| 1. Required Insurance | 352.228-70 |
| 2. Withholding of Contract Payments | 352.232-9 |
| 3. Litigation and Claims | 352.233-70 |
| 4. Final Decisions on Audit Findings | 352.242-71 |
| 5. Paperwork Reduction Act | 352.270-7 |

KDADS MSJ 040

AGREEMENT Identifier Code:  HCFA-85-_KS

IN WITNESS WHEREOF, the parties hereby execute this Agreement this
3ʳᵈ____ day of June, 1985.


State of _____Kansas_____
By: _____

___Barbara J. Sabol___
         (Name)

___Secretary___
      (Title)

Secretary of Health and Human
Services
By: _____

Edward M. Brennan
      (Name)
Associate Regional Administrator
   for Health Standards and Quality
      (Title)

- 19 -

KDADS MSJ 041

Clauses Incorporated by Reference into the Section 1864 Agreement, under Article XV

A.  Federal Acquisition Regulation (FAR) Clauses (48 CFR Chapter 1)

1.   OFFICIALS NOT TO BENEFIT, based on 48 CFR 52.203-1
No member of or delegate to Congress, or resident commissioner, shall be admitted to any share or part of this Agreement, or to any benefit arising from it.  However, this clause does not apply to this Agreement to the extent that this Agreement is made with a corporation for the corporation's general benefit.

2.   GRATUITIES, based on 48 CFR 52.203-3
(a)  The right of the State to proceed may be terminated by written notice if, after notice and hearing, the Secretary or a designee determines that the State, its agent, or another representative--
(1)  Offered or gave a gratuity (e.g., an entertainment or gift) to an officer, official, or employee of the Government; and
(2)  Intended, by the gratuity, to obtain a contract (Agreement) or favorable treatment under a contract (Agreement).
(b)  The facts supporting this determination may be reviewed by any court having lawful jurisdiction.
(c)  If this Agreement is terminated under paragraph (a) above, the Government is entitled to pursue the same remedies as in a breach of the contract (Agreement).
(d)  The rights and remedies of the Government provided in this clause shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Agreement.

3.   UTILIZATION OF SMALL BUSINESS CONCERNS AND SMALL DISADVANTAGED BUSINESS CONCERNS, based on 48 CFR 52.219-8
(a)  It is the policy of the United States that small business concerns and small business concerns owned and controlled by socially and economically disadvantaged individuals shall have the maximum practicable opportunity to participate in performing contracts (Agreements) let by any Federal agency.
(b)  The contractor (State) hereby agrees to carry out this policy in the awarding of subcontracts to the fullest extent consistent with efficient contract (Agreement) performance.  The Contractor further agrees to cooperate in any studies or surveys as may be conducted by the United States Small Business Administration or the awarding agency of the United States as may be necessary to determine the extent of the Contractor's (State's) compliance with this clause.

-1-

**KDADS MSJ 042**

(c)  As used in this contract (Agreement), the term "small business concern" shall mean a small business as defined pursuant to section 3 of the Small Business Act and relevant regulations promulgated pursuant thereto.  The term "small business concern owned and controlled by socially and economically disadvantaged individuals" shall mean a small business concern--

(1)  Which is at least 51 percent owned by one or more socially and economically disadvantaged individuals; or, in the case of any publicly owned business, at least 51 per centum of the stock of which is owned by one or more socially and economically disadvantaged individuals; and

(2)  Whose management and daily business operations are controlled by one or more of such individuals.

The Contractor (State) shall presume that socially and economically disadvantaged individuals include Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, Asian-Indian Americans and other minorities, or any other individual found to be disadvantaged by the Administration pursuant to section 8(a) of the Small Business Act.

(d)  Contractors (States) acting in good faith may rely on written representations by their subcontractors regarding their status as either a small business concern or a small business concern owned and controlled by socially and economically disadvantaged individuals.

4.   UTILIZATION OF WOMEN-OWNED SMALL BUSINESSES, based on 48 CFR 52.219-13

(a)  Definitions.

"Women-owned small businesses," as used in this clause, means businesses that are at least 51 percent owned by women who are United States citizens and who also control and operate the business.

"Control," as used in this clause, means exercising the power to make policy decisions.

"Operate," as used in this clause, means being actively involved in the day-to-day management of the business.

(b)  It is the policy of the United States that women-owned small businesses shall have the maximum practicable opportunity to participate in performing contracts (Agreements) awarded by any Federal agency.

(c)  The State agrees to use its best efforts to give women-owned small businesses the maximum practicable opportunity to participate in the subcontracts it awards to the fullest extent consistent with the efficient performance of its contract (Agreement).

5.   UTILIZATION OF LABOR SURPLUS AREA CONCERNS, based on 48 CFR 52.220-3

(a)  Applicability.  This clause is applicable if this contract (Agreement) exceeds the appropriate small purchase limitation in Part 13 of the Federal Acquisition Regulation.

-2-

KDADS MSJ 043

(b)  Policy.  It is the policy of the Government to award contracts or Agreements to concerns that agree to perform substantially in labor surplus areas (LSAs) when this can be done consistent with the efficient performance of the contract (Agreement) and at prices no higher than are obtainable elsewhere.  The State agrees to use its best efforts to place subcontracts in accordance with this policy.

(c)  Order of preference.  In complying with paragraph (b) above and with paragraph (c) of the clause of this contract (Agreement) entitled Utilization of Small Business Concerns and Small Disadvantaged Business Concerns, the State shall observe the following order of preference in awarding subcontracts: (1) small business concerns that are LSA concerns, (2) other small business concerns, and (3) other LSA concerns.

(d)  Definitions.

"Labor surplus area," as used in this clause, means a geographical area identified by the Department of Labor in accordance with 20 CFR 654, Subpart A, as an area of concentrated unemployment or underemployment or an area of labor surplus.

"Labor surplus area concern," as used in this clause, means a concern that together with its first-tier subcontractors will perform substantially in labor surplus areas.  Performance is substantially in labor surplus areas if the costs incurred under the Agreement on account of manufacturing, production, or performance of appropriate services in labor surplus Agreement areas exceed 50 percent of the contract price.

6.  CONVICT LABOR, based on 48 CFR 52.222-3

The State agrees not to employ any person undergoing sentence of imprisonment in performing this Agreement except as provided by 18 U.S.C. 4082(c)(2) and Executive Order 11755, December 29, 1973.

7.  EQUAL OPPORTUNITY, based on 48 CFR 52.222-26

(a)  During the performance of this Agreement the State agrees as follows:

(1)  The State shall not discriminate against any employee or applicant for employment because of race, color, religion, sex or national origin.

(2)  The State shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin.  This shall include, but not be limited to:  employment, upgrading, demotion, transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship.

(3)  The State shall post in conspicuous places, available to employees and applicants for employment, the notice to be provided by the Secretary of Health and Human Services' designee that explains this clause.

(4)  The State shall, in all solicitations or advertisement for employees placed by or on behalf of the State, state that

-3-

KDADS MSJ 044

all qualified applicants will receive consideration for
employment without regard to race, color, religion, sex, or
national origin.

(5) The State shall send, to each labor union or representative
of workers with which it has a collective bargaining
agreement or other contract or understanding, the notice to
be provided by the Secretary advising the labor union or
workers' representative of the State's commitments under
this clause and post copies of the notice in conspicuous
places available to employees and applicants for employment.

(6) The State shall comply with Executive Order 11246, as
amended, and the rules, regulations, and orders of the
Secretary of Labor.

(7) The State shall furnish to HCFA all information required by
Executive Order 11246, as amended, and by the rules,
regulations, and orders of the Secretary of Labor.
Standard Form 100 (EEO-1), or any successor form, is the
prescribed form to be filed within 30 days following the
Agreement, unless filed within 12 months preceding the date
of the Agreement.

(8) The State shall permit access to its books, records, and
accounts by the contracting agency (HCFA) or the Office of
Federal Contract Compliance Programs (OFCCP) for the
purposes of investigation to ascertain the State's
compliance with the applicable rules, regulations, and
orders.

(9) If the OFCCP determines that the State is not in compliance
with this clause or any rule, regulation, or order of the
Secretary of Labor, this agreement may be canceled,
terminated, or suspended in whole or in part and the State
may be declared ineligible for further Government
contracts, under the procedures authorized in Executive
Order 11246, as amended.  In addition, sanctions may be
imposed and remedies invoked against the State as provided
in Executive Order 11246, amended, the rules, regulations,
and orders of the Secretary of Labor, or as otherwise
provided by law.

(10) The State shall include all the terms and conditions of
this paragraph (a) (1) through (11) of this Article in
every subcontract or purchase order that is not exempted by
the rules, regulations, or orders of the Secretary of Labor
issued under Executive Order 11246, as amended, so that
these terms and conditions with being binding upon each
subcontractor or vendor.

(11) The State shall take such action with respect to any
subcontract or purchase order as HCFA may direct as a means
of enforcing these terms and conditions, including

-4-

sanctions for noncompliance; provided, that if the State becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of any direction, the State may request the United States to enter into the litigation to protect the interests of the United States.

(b)  Notwithstanding any other Article in this Agreement, disputes relative to this clause will be governed by the procedures in 41 CFR 60-1.1.

8.   AFFIRMATIVE ACTION FOR SPECIAL DISABLED AND VIETNAM ERA VETERANS, based on 48 CFR 52.222-35

(a)  Definitions.

"Appropriate office of the State employment service system," as used in this clause, means the local office of the Federal State national system of public employment offices assigned to serve the area where the employment opening is to be filled, including the District of Columbia, Guam, Puerto Rico, Virgin Islands, American Samoa, and the Trust Territory of the Pacific Islands.

"Openings that the Contractor (State) proposes to fill from within its own organization," as used in this clause, means employment openings for which no one outside the State's organization (including any affiliates, subsidiaries, and the parent companies) will be considered and includes any openings that the Contractor (State) proposes to fill from regularly estabished "recall" lists.

"Openings that the Contractor (State) proposes to fill under a customary and traditional employer-union hiring arrangement," as used in this clause, means employment openings that the Contractor (State) proposes to fill from union halls, under their customary and traditional employer-union hiring relationship.

"Suitable employment openings," as used in this clause--
(1)  Includes, but is not limited to, openings that occur in jobs categorized as--

    (i)     Production and nonproduction;
    (ii)    Plant and office;
    (iii)   Laborers and mechanics;
    (iv)    Supervisory and nonsupervisory;
    (v)     Technical; and
    (vi)    Executive, administrative, and professional positions compensated on a salary basis of less than $25,000 a year; and

(2)  Includes full-time employment, temporary employment of over 3 days, and part-time employment, but not openings that the Contractor (State) proposes to fill from within its own organization or under a customary and traditional employer-union hiring arrangement, nor openings in an educational institution that are restricted to students of that institution.

-5-

(b) General.

   (1)  Regarding any position for which the employee or applicant for employment is qualified, the Contractor (State) shall not discriminate against the individual because the individual is a special disabled or Vietnam Era veteran. The Contractor (State) agrees to take affirmative action to employ, advance in employment, and otherwise treat qualified special disabled and Vietnam Era veterans without discrimination based upon their disability or veterans' status in all employment practices such as--

     (i)  Employment;

     (ii) Upgrading;

     (iii)    Demotion or transfer;

     (iv) Recruitment;

     (v)  Advertising;

     (vi) Layoff or termination;

     (vii)    Rates of pay or other forms of compensation; and

     (viii)    Selection for training, including apprenticeship

   (2)  The Contractor (State) agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor (Secretary) issued under the Vietnam Era Veterans' Readjustment Assistance Act of 1972 (the Readjustment Assistance Act), as amended.

(c) Listing openings.

   (1)  The Contractor (State) agrees to list all suitable employment openings existing at contract (Agreement) award or occurring during contract (Agreement) performance, at an appropriate office of the State employment service system in the locality where the opening occurs.  These openings include those occuring at any Contractor (State) facility, including one not connected with performing this contract (Agreement).  An independent corporate affiliate is exempt from this requirment.

   (2)  State and local goverment agencies holding Federal contracts of $10,000 or more shall also list all their suitable openings with the appropriate office of the State employment service.

   (3)  The listing of suitable employment openings with the State employment service system is required at least concurrently with using any other recruitment source or effort and involves the obligations of placing a bona fide job order, including accepting referrals of veterans and nonveterans. This listing does not require hiring any particular group of job applicants and is not intended to relieve the Contractor (State) from any requirements of Executive orders or regulations concerning nondiscrmination in employment.

-6-

KDADS MSJ 047

(4) Whenever the Contractor (State) becomes contractually bound to the listing terms of this clause, it shall advise the State employment service system, in each State where it has establishments, of the name and location of each hiring location in the State. As long as the Contractor (State) is contractually bound to these terms and has so advised the State system, it need not advise the State system of subsequent contracts. The Contractor may advise the State system when it is no longer bound by this contract (Agreement) clause.

(5) Under the most compelling circumstances, an employment opening may not be suitable for listing, including situations when

(i)   the Government's needs cannot reasonably be supplied,

(ii)  listing would be contrary to national security, or

(iii) the requirement of listing would not be in the Government's interest.

(d) Applicability.

(1) This clause does not apply to the listing of employment openings which occur and are filled outside the 50 states, the District of Columbia, Puerto Rico, Guam, Virgin Islands, American Samoa, and the Trust Territory of the Pacific Islands.

(2) The terms of paragraph (c) above of this clause do not apply to openings that the Contractor (State) proposes to fill from within its own organization or under a customary and traditional employer-union hiring arrangement. This exclusion does not apply to a particular opening once an employer decides to consider applicants outside of its own organization or employer-union arrangement for that opening.

(e) Postings.

(1) The Contractor (State) agrees to post employment notices stating

(i)   the Contractor's (State's) obligation under the law to take affirmative action to employ and advance in employment qualified special disabled veterans and veterans of the Vietnam era, and

(ii)  the rights of applicants and employees.

(2) These notices shall be posted in conspicuous places that are available to employees and applicants for employment. They shall be in a form prescribed by the Director, Office of Federal Contract Compliance Programs, Department of Labor (Director), and provided by or through the Secretary of Health and Human Services' designee.

-7-

(3)   The Contractor (State) shall notify each labor union or representative of workers with which it has a collective bargaining agreement or other contract understanding, that the Contractor (State) is bound by the terms of the Act, and is committed to take affirmative action to employ, and advance in employment, qualified special disabled and Vietnam Era veterans.

(f)   Noncompliance.   If the Contractor (State) does not comply with the requirements of this clause, appropriate actions may be taken under the rules, regulations, and relevant orders of the Secretary issued pursuant to the Readjustment Assistance Act.

(g)   Subcontracts.   The Contractor (State) shall include the terms of this clause in every subcontract or purchase order of $10,000 or more unless exempted by rules, regulations, or orders of the Secretary. The Contractor (State) shall act as specified by the Director to enforce the terms, including action for noncompliance.

9.   AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS, based on 48 CFR 52.222-36

(a)   General.

(1)   Regarding any position for which the employee or applicant for employment is qualified, the Contractor (State) shall not discriminate against any employee or applicant because of physical or mental handicap.   The contractor (State) agrees to take affirmative action to employ, advance in employment, and otherwise treat qualified handicapped individuals without discrimination based upon their physical or mental handicap in all employment practices such as--

(i)     Employment;

(ii)    Upgrading;

(iii)   Demotion or transfer;

(iv)    Recruitment;

(v)     Advertising;

(vi)    Layoff or termination;

(vii)   Rates of pay or other forms of compensation; and

(viii)  Selection for training, including apprenticeship.

(2)   The Contractor (State) agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor (Secretary) issued under the Rehabilitation Act of 1973 (29 U.S.C. 793) (the Rehabilitation Act), as amended.

(b)   Postings.

(1)   The Contractor (State) agrees to post employment notices stating

(i)     the Contractor's (State's) obligation under the law to take affirmative action to employ and advance in employment qualified handicapped individuals and

(ii)    the rights of applicants and employees.

-8-

(2) These notices shall be posted in conspicuous places that are available to employees and applicants for employment. They shall be in a form prescribed by the Director, Office of Federal Contract Compliance Programs, Department of Labor (Director), and provided by or through the Secretary of Health and Human Services' designee.

(3) The Contractor (State) shall notify each labor union or representative of workers with which it has a collective bargaining agreement or other contract understanding that the Contractor (State) is bound by the terms of Section 503 of the Rehabilitation Act and is committed to take affirmative action to employ, and advance in employment, qualified physically and mentally handicapped individuals.

(c) Noncompliance. If the Contractor (State) does not comply with the requirements of this clause, appropriate actions may be taken under the rules, regulations, and relevant orders of the Secretary issued pursuant to the Rehabilitation Act.

(d) Subcontracts. The Contractor (State) shall include the terms of this clause in every subcontract or purchase order in excess of $2,500 unless exempted by rules, regulations, or orders of the Secretary. The Contractor (State) shall act as specified by the Director to enforce the terms, including action for noncompliance.

10. CLEAN AIR AND WATER, based on 48 CFR 52.223-2

(a) "Air Act" as used in this clause, means the Clean Air Act (42 U.S.C. 7401 et seq.). "Clean air standards," as used in this clause, means--

(1) Any enforceable rules, regulations, guidelines, standards, limitations, orders, controls, prohibitions, work practices, or other requirments contained in, issued under, or otherwise adopted under the Air Act or Executive Order 11738;

(2) An applicable implementation plan as described in section 110(d) of the Air Act (42 U.S.C. 7410(d));

(3) An approved implementation procedure or plan under section 111(c) or section 111(d) of the Air Act (42 U.S.C. 7411(c) or (d)); or

(4) An approved implementation procedure under section 112(d) of the Air Act (42 U.S.C. 7412(d)).

-9-

KDADS MSJ 050

"Clean water standards," as used in this clause, means any enforceable limitation, control, condition, prohibition, standard, or other requirement promulgated under the Water Act or contained in a permit issued to a discharger by the Evnironmental Protection Agency or by a State under an approved program, as authorized by section 402 of the Water Act (33 U.S.C. 1342), or by local government to ensure compliance with pretreatment regulations as required by section 307 of the Water Act (33 U.S.C. 1317).

"Compliance," as used in this clause, means compliance with--
(1)   Clean air or water standards; or
(2)   A schedule or plan ordered or approved by a court of competent jurisdiction, the Evironmental Protection Agency, or an air or water pollution control agency under the requirements of the Air Act or Water Act and related regulations.

"Facility," as used in this clause, means any building, plant, installation, structure, mine, vessel or other floating craft, location, or site of operations, owned, leased, or supervised by a Contractor (State) or subcontractor, used in the performance of a contract (Agreement) or subcontract.  When a location or site of operations includes more than one building, plant, installation, or structure, the entire location or site shall be deemed a facility except when the Administrator, or a designee, of the Environmental Protection Agency, determines that independent facilities are collocated in one geographical area.

"Water Act," as used in this clause, means Clean Water Act (33 U.S.C. 1251 et seq.).

(b)   the Contractor (State) agrees--
(1)   To comply with all the requirements of section 114 of the Clean Air Act (42 U.S.C. 7414) and section 308 of the Clean Water Act (33 U.S.C. 1318) relating to inspection, monitoring, entry, reports, and information, as well as other requirements specified in section 114 and section 308 of the Air Act and the Water Act, and all regulations and guidelines issued to implement those acts before the award of this contract (Agreement);
(2)   That no portion of the work required by this prime contract (Agreement) will be performed in a facility listed on the Environmental Protection Agency List of Violating Facilities on the date when this contract (Agreement) was awarded unless and until the EPA eliminates the name of the facility from the listing;
(3)   To use best efforts to comply with clean air standards and clean water standards at the facility in which the contract (Agreement) is being performed; and
(4)   To insert the substance of this clause into any nonexempt subcontract, including this subparagraph (b)(4).

-10-

11.  PRIVACY ACT, based on 48 CFR 52.224-2
     (a)  The State agrees to--
          (1)  Comply with the Privacy Act of 1974 (the Privacy Act) and
               the agency rules and regulations issued under the Privacy
               Act in the design, development, or operation of any system
               of records on individuals to accomplish an agency function
               when the Agreement specifically identifies--
               (i)    The systems of records; and
               (ii)   The design, development, or operation work that the
                      State is to perform;
          (2)  Include the Privacy Act notification contained in this
               Agreement in every solicitation and resulting subcontract
               and in every subcontract awarded without a solicitation,
               when the work statement in the proposed subcontract
               requires the design, development, or operation of a system
               of records on individuals that is subject to the Privacy
               Act; and
          (3)  Include this clause, including this subparagraph(3), in all
               subcontracts awarded under this Agreement which requires
               the design, development, or operation of such a system of
               records.
     (b)  In the event of violations of the Privacy Act, a civil action
     may be brought against the agency involved when the violation
     concerns the design, development, or operation of a system of records
     on individuals to accomplish an agency function, and criminal
     penalties may be imposed upon the officers or employees
     of the agency when the violation concerns the operation of a system
     of records on individuals to accomplish an agency function.  For
     purposes of the Privacy Act, when the Ageement is for the operation
     of a system of records on individuals to accomplish an agency
     function, the State and any employee of the State is considered to be
     an employee of the agency.
     (c)  (1)  "Operation of a system of records," as used in this clause,
               means performance of any of the activities associate with
               maintaining the system of records, including the
               collection, use, and dissemination of records.
          (2)  "Record," as used in this clause, means any item,
               collection, or grouping of information about an individual
               that is maintained by an agency, including, but not limited
               to, education, financial transactions, medical history and
               criminal or employment history and that contains the
               person's name, or the identifying number, symbol, or other
               identifying particular assigned to the individual, such as
               a fingerprint or voiceprint or a photograph.
          (3)  "System of records on individuals," as used in this clause
               means a group of any records under the control of any
               agency from which information is retrieved by the name of

-11-

KDADS MSJ 052

the individual or by some identifying number, symbol, or
other identifying particular assigned to the individual.

12.   INTEREST, based on 48 CFR 52.232-17
(a)   Notwithstanding any other clause of this Agreement, all amounts
that become payable by the State to the Government under this
Agreement (net of any applicable tax credit under the Internal
Revenue Code (26 U.S.C. 1481)) shall bear simple interest from the
date due until paid, unless paid, within 30 days of becoming due.
The interest rate shall be the interest rate established by the
Secretary of the Treasury as provided in Section 12 of the Contract
Disputes Act of 1978 (Public Law 95-563), which is applicable to the
period in which the amount becomes due, as provided in Paragraph B of
this Article, and then at the rate applicable for each six-month
period as fixed by the Secretary until the amount is paid.
(b)   Amounts shall be due at the earliest of the following dates:
   (1)   The date fixed under this Agreement.
   (2)   The date of the first written demand for payment consistent
         with this Agreement, including any demand resulting from a
         default termination.
   (3)   The date the Government transmits to the State a proposed
         supplemental Agreement to confirm completed negotiations
         establishing the amount of debt.
   (4)   The date of written notice to the State stating the amount
         of refund payable in connection with a negotiated pricing
         agreement not confirmed by Agreement modification.
(c)   The interest charge made under this clause may be reduced under
the procedures prescribed in 32.614-2 of the Federal Acquisition
Regulation in effect on the date of this Agreement.

13.   ASSIGNMENT OF CLAIMS, based on 48 CFR 52.232-23
(a)   The State, under the Assignment of Claims Act, as amended, 31
U.S.C. 203, 41 U.S.C. 15 (hereafter referred to as the "the
Assignment Act"), may assign its rights to be paid amounts due or to
become due as a result of the performance of this contract
(Agreement) to a bank, trust company, or other financing institution,
including any Federal lending agency.  The assignee under such an
assignment may thereafter further assign or reassign its right under
the original assignment to any type of financing institution
described in the preceding sentence.
(b)   Any assignment or reassignment authorized under the Agreement
Act and this clause shall cover all upaid amounts payable under this
Agreement, and shall not be made to more than one party, except that
an assignment or reassignment may be made to one party as agent or
trustee for two or more parties participating in the financing of
this Agreement.

-12-

(c)  The State shall not furnish or disclose to any assignee under this Agreement any classified document (including this Agreement) or information related to work under this Agreement until the Secretary of Health and Human Services' designee authorizes such action in writing.

B.  Department of Health and Human Services Acquisition Regulation (HHSAR) Clauses (48 CFR Chapter 3)

    1.  PRINTING, based on 48 CFR 352.208-70
        Unless otherwise specified in this Agreement the State shall not engage in, nor subcontract for any printing (as that term is defined in Title I of the Government Printing and Binding Regulations in effect on the effective date of this Agreement) in connection with the performance of work under this Agreement; except that performance of a requirement under this Agreement involving the reproduction of less than 5,000 production units of any one page or less than 25,000 production units in the aggregate of multiple pages will not be deemed to be printing.  A production unit is defined as one sheet size 8 1/2 by 11 inches one side only, one color.

    2.  RIGHTS IN DATA, based on 48 CFR 352.227-1
        (a)  Subject Data.
        As used in this clause, the term "Subject Data" means writings, sound recordings, pictorial reproductions, drawings, designs, or other graphic representations, procedural manuals, forms, diagrams, workflow charts, equipment descriptions, data files and data processing or computer programs, and works of any similar nature (whether or not copyrighted or copyrightable) which are specified to be delivered under this Agreement.  The term does not include financial reports, cost analyses, and similar information incidental to Agreement administration.
        (b)  Government rights.
        Subject only to the provision of (c) below, the Government may use duplicate or disclose in any manner, and for any purpose whatsover, and have or permit others to do so, all Subject Data delivered under the Agreement.
        (c)  License to copyright data.
        In addition to the Government rights as provided in (b) above with respect to any Subject Data which may be coprighted, the Contractor (State) agrees to and does hereby grant to the Government a royalty-free, nonexclusive, and irrevocable license throughout the world to use duplicate or dispose of such data in any manner and for

-13-

KDADS MSJ 054

any purpose whatsoever, and to have or permit others to do so;
Provided, however, that such licenses shall be only to the extent
that the Contractor (State) now has, or prior to completion or final
settlement of this Agreement may require, the right to grant such
license without becoming liable to pay compensation to others solely
because of such grant.

(d)  Relation to patents.

Nothing contained in this clause shall imply a license to the
Government under any patent or be construed as affecting the scope of
any license or other right otherwise granted to the Government under
any patent.

(e)  Marking and identification.

The Contractor (State) shall mark all Subject Data with the
identifier code of this Agreement and the name and address of the
contractor or subcontractor who generated the data.  The Contractor
(State) shall not affix any restrictive markings upon any Subject
Data, and if such markings are affixed, the Government shall have the
right at any time to modify, remove, obliterate, or ignore any such
markings.

(f)  Subcontractor data.

Whenever any Subject Data is to  be obtained from a subcontractor
under this Agreement, the Contractor (State) shall use this same
clause in the subcontract, without alteration, and no other clause
shall be used to enlarge or diminish the Government's rights in that
subcontractor Subject Data.

(g)  Deferred ordering and delivery of data.

The Government shall have the right to order, at any time during the
performance of this Agreement, or within two years from either
acceptance of all items (other than data) to be delivered under this
Agreement or termination of this contract, whichever is later, any
Subject Data and any data not called for in the schedule of this
Agreement but generated in performance of the Agreement, and the
Contractor (State) shall promptly prepare and deliver such data as is
ordered.  If the principal investigator is no longer associated with
the Contractor (State) , the Contractor (State) shall exercise its
best efforts to prepare and deliver such data as is ordered.  The
Government's right to use data delivered pursuant to this paragraph
(g) shall be the same as the right in Subject Data as provided in (b)
above.  The Contractor (State) shall be relieved of the obligation to
furnish data pertaining to an item obtained from a subcontractor upon
the expiration of two years from the date it accepts such items.
When data, other than Subject Data, is delivered pursuant to this
paragraph (g) payment shall be made, by equitable adjustment or
otherwise, for converting the data into the prescribed form,
reproducing it or preparing it for delivery.

-14-

KDADS MSJ 055

3.   REQUIRED INSURANCE, based on 48 CFR 352.228-70

(a)   The Contractor (State) shall procure and maintain such insurance as is required by law or regulation, including but not limited to the requirements of Subpart 28.3 of the Federal Acquisition Regulation or by the written direction of Secretary of Health and Human Services' designee.  Prior written approval of the Secretary of Health and Human Services' designee shall be required with respect to any insurance policy the premiums for which the State proposes to treat as a direct cost under this Agreement and with respect to any proposed qualified program of self-insurance.  The terms of any other insurance policy shall be submitted to the Secretary of Health and Human Services' designee for approval upon request.

(b)   Unless otherwise authorized in writing by the Secretary of Health and Human Services' designee, the Contractor (State) shall not procure or maintain for its own protection any insurance covering loss or destruction of or damage to Government property.

4.   WITHHOLDING OF AGREEMENT PAYMENTS, based on 48 CFR 352.232-9

Notwithstanding any other payment provisions of this Agreement.  Failure of the State to submit required reports when due or failure to perform or deliver required work, supplies, or services, will result in the withholding of payments under this Agreement unless such failure arises out of causes beyond the control, and without the fault or negligence of the State as defined by the clause entitled "Excusable Delays" or "Default", as applicable.  The Government shall promptly notify the State of its intention to withhold payment of any invoice or voucher submitted.

5.   PROHIBITION AGAINST USE OF HEALTH AND HUMAN SERVICES (HHS) FUNDS TO INFLUENCE LEGISLATION OR APPROPRIATIONS, based on 48 CFR 352.232-72

No part of any funds under this Agreement shall be used to pay the salary or expenses of any State, or agent acting for the State, to engage in any activity designed to influence legislation or appropriations pending before the Congress.

6.   LITIGATION AND CLAIMS, based on 48 CFR 352.233-70

The Contractor (State) shall give the Secretary of Health and Human Services' designee immediate notice in writing of (a) any action, including any proceeding before an administrative agency, filed against the State arising out of the performance of this Agreement, including, but not limited to the performance of any subcontract hereunder and (b) any claim against the State the cost and expense of which is allowable under the clause entitled "Allowable Cost and Payment."  Except as otherwise directed by the Secretary of Health and Human Services' designee, the State shall furnish immediately to the State copies of all pertinent papers received by the State with respect to such action or claim.  To the extent not in conflict with any applicable policy of insurance, the State may, with the Secretary Health and Human Services' designee

-15-

approval, settle any such action or claim.  If required by the
Secretary of Health and Human Services' designee, the State shall
(a) effect an assignment and subrogation in favor of the Government
of all the State's rights and claims (except those against the
Government) arising out of any such action or claim against the
State: and (b) authorize representatives of the Governement to settle
or defend any such action or claim and to represent the State in, or
to take charge of any action.  If the settlement or defense of an
action or claim is undertaken by the Government, the State shall
furnish all reasonable assistance in effecting a settlement or
asserting a defense.  Where an action against the State is not
covered by a policy of insurance, the State shall, with the approval
of the Secretary of Health and Human Services' designee, proceed with
the defense of the action in good faith.  The Government shall not be
liable for the expense of defending any action or for any costs
resulting from the loss thereof to the extent that the State would
have been compensated by insurance which was required by law or
regulation or by written direction of Secretary of Health and Human
Services' designee, but which the State failed to secure through its
own fault or negligence.

   In any event, unless otherwise expressly provided in this
Agreement the State shall not be reimbursed or indemnified by the
Government for any liability loss, cost or expense, which the State
may incur or be subject to by reason of any loss, injury, or damage
to the person or the real or personal property of any third parties
as may accure during or arise from the performance of this Agreement.

7.   SERVICES OF CONSULTANTS, based on 48 CFR 352.237-71
   Except as otherwise expressly provided elsewhere in this
Agreement, and notwithstanding the provisions of the clause of this
Agreement entitled "Subcontracts" the prior written approval of the
Secretary of Health and Human Services' designee shall be required:
(a)  Whenever any employee of the State is to be reimbursed as a
"consultant" under this Agreement ; and
(b)  For the utilization of the services of any consultant under this
Agreement exceeding the daily rate set forth elsewhere in this
Agreement or if no amount is set forth, $150, exclusive of travel
costs, or where the services of any consultant under this Agreement
will exceed 10 days in any calendar year.

   Whenever Secretary of Health and Human Services' designee
approval is required, the State will obtain and furnish to the
Secretary of Health and Human Services' designee information
concerning the need for such consultant services and the
reasonableness of the fees to be paid including, but not limited to
whether fees to be paid to any consultant exceed the lowest fee
charged by such consultant to others for performing consultant
services of a similar nature.

-16-

KDADS MSJ 057

8.   NOTICE TO THE GOVERNMENT OF DELAYS, based on 48 CFR 352.242-70
     Whenever the State has knowledge that any actual or potential situation, including but not limited to labor disputes is delaying or threatens to delay the timely performance of work under this Agreement, the State shall immediately give written notice thereof, including all relevant information with respect thereto to the Secretary of Health and Human Services' designee.

9.   FINAL DECISIONS ON AUDIT FINDINGS, based on 48 CFR 352.242-71
     For the purpose of issuing final decisions under the Disputes clause of this Agreement concerning monetary audit findings, the Secertary of Health and Human Services' designee shall be that person with ultimate responsibility for making that decision in accordance with Chapter 1-105, Resolution of Audit Findings of the Department's Grants Administration Manual.

10.  FOREIGN TRAVEL, based on 48 CFR 352.247-70
     Foreign travel shall not be performed without the prior written approval of the Secretary of Health and Human Services' designee.  As used in this clause "Foreign Travel" means travel outside the United States, its Territories and Possessions, and Canada.

11.  EXCUSABLE DELAYS, based on 48 CFR 352.249-14
     (a)  Except with respect to failures of subcontractors, the State shall not be considered to have failed in performance of this Agreement if such failure arises out of causes beyond the control and without the fault or negligence of the State.
     (b)  Such causes may include, but are not restricted to acts of God or of the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually servere weather, but in every case the failure to perform must be beyond the control and without the fault or negligence of the State. If the failure to perform is caused by the failure of a subcontractor to perform, and if such failure arises out of causes beyond the control of both the State and subcontractor, without the fault or negligence of either of them, the State shall not be deemed to have failed in performance of the Agreement, unless:
          (1)  The supplies or services to be furnished by the subcontractor were obtainable from other sources,
          (2)  The Secretary of Health and Human Services' designee shall have ordered the State in writing to procure such supplies or services from such other sources, and

-17-

KDADS MSJ 058

(3)  The State shall have failed to comply reasonably with such order.  Upon request of the State, the Secretary of Health and Human Services' designee shall ascertain the facts and extent of such failure and, if he/she shall determine that any failure to perform was occasioned by any one or more of the said causes, the delivery schedule shall be revised accordingly, subject to the rights of the Government under the termination clause hereof.  (As used in this clause, the terms "subcontractor" and "subcontractors" mean subcontractor(s) at any tier.)

12.  PAPERWORK REDUCTION ACT

(a)  In the event that it subsequently becomes a contractual requirement to collect or record information calling either for answers to identical questions from 10 or more persons other than Federal employees, or information from Federal employees which is outside the scope of their employment for use by the Federal government or disclosure to third parties, the Paperwork Reduction Act of 1980 (Pub. L 96-511) shall apply to this Agreement.  No plan, questionnaire, interview guide or other similar device for collecting information (whether repetitive or singletime) may be used without first obtaining clearance from the Assistant Secretary for Management and Budget (ASMB) within the Department of Health and Human Services (HHS) and the Office of Management and Budget (OMB).  Contractors and Project Officers should be guided by the provisions of 5 CFR Part 1320, Controlling Paperwork Burdens on the Public, and seek the advice on the HHS operating division or Office of the Secretary Reports Clearance Officer to determine the procedures for acquiring ASM and OMB clearance.

(b)  The Contractor (State) shall obtain the required ASMB and OMB clearance through the Secretary of Health and Human Services' designee before expending any funds or making public contacts for the collection of data.  The authority to expend funds and proceed with the collection of information shall be in writing by the Secretary of Health and Human Services' designee.  The State must plan at least 120 days for ASMB and OMB clearance.  Excessive delay caused by the Government which arises out of causes beyond the control and without the fault or negligence of the State will be considered in accordance with the Excusable Delays or Default clause of this Agreement.

-18-

KDADS MSJ 059

AGREEMENT Identifier Code:  HCFA-85-KS

AGREEMENT BETWEEN

The Secretary of Health and Human Services

and

The State of Kansas

To carry out the provisions of Sections 1864, 1874, and related provisions
of the Social Security Act, as amended.

The Secretary of Health and Human Services, hereinafter referred to as

the Secretary, and the State of Kansas, Kansas State Department of Health

and Environment, hereinafter referred to as the State, hereby agree to

the following terms:

*Pages replaced by 10/1/93 Update*
*Per letter dated 2/17/94*

KDADS MSJ 060

# INDEX

| Article No. | Title | Page No. |
|---|---|---|
| I. | Definitions and Delegations | 1 |
| II. | Functions to be Performed by the State | 3 |
| III. | Compliance with Regulations and General Instructions | 5 |
| IV. | Organization and Personnel | 6 |
| V. | Evaluation | 7 |
| VI. | Term of Agreement | 9 |
| VII. | Modification of Agreement | 9 |
| VIII. | Termination of Agreement | 9 |
| IX. | Cost of Administration | 10 |
| X. | Subcontracting | 13 |
| XI. | Transfer of Funds Through Letter of Credit | 15 |
| XII. | Examination of Records | 15 |
| XIII. | Confidential Nature and Limitations on Use of Information and Records | 16 |
| XIV. | Disputes | 16 |
| XV. | Clauses Incorporated by Reference | 18 |

**KDADS MSJ 061**

## Article I
## DEFINITIONS AND DELEGATIONS

A.  Definition of terms for the purpose of this Agreement:

1.  "Secretary" means the Secretary of Health and Human Services or the Secretary's delegate, unless otherwise specified.

2.  "Act" means Title XVIII of the Social Security Act, as amended.

3.  "HCFA" means the Health Care Financing Administration.

4.  "Provider" or "provider of services" means an institution, or distinct part of an institution, facility or agency defined in the Act and includes but is not limited to:

    a.  Hospitals

| | | | |
|---|---|---|---|
| (1) | General | (8) | Maternity or Obstetric |
| (2) | Short term | (9) | Eye, Ear, Nose and Throat |
| (3) | Children's and Adolescent/Children's | (10) | Cancer/Oncology |
| (4) | Christian Science Sanatoriums | (11) | Psychiatric |
| (5) | Medical-surgical | (12) | Rehabilitation |
| (6) | Orthopedic | (13) | Long term |
| (7) | Gynecological | (14) | Swing Bed (Hospital providers of extended care services) |

    b.  Skilled nursing facilities

    c.  Home health agencies

    d.  Providers of outpatient physical therapy and/or speech pathology services

    e.  Comprehensive outpatient rehabilitation facilities

    f.  Hospices

5.  "Supplier" or "supplier of services" means an individual or entity whose services are described in the Act and includes but is not limited to:

    a.  Independent laboratories

    b.  Suppliers of portable X-ray services

- 1 -

KDADS MSJ 062

    c.   <u>End-stage renal disease treatment facilities</u>

    d.   <u>Chiropractors</u>

    e.   <u>Rural health clinics</u>

    f.   <u>Physical therapists in independent practice</u>

    g.   <u>Ambulatory surgical centers</u>

6.   "General instructions" means operating manuals, related written instructions, and guidelines of general application issued by the Secretary pursuant to the Act and regulations in respect to matters covered by this Agreement. A general instruction for purposes of this Agreement may not be issued below the level of the Secretary's designee (i.e. Director of the Office of Survey and Certification, Regional Administrator or Associate Regional Administrator).

7.   "Regulations" unless otherwise specified, means those regulations promulgated by the Secretary pursuant to the Act and codified in the Code of Federal Regulations, Title 42, Chapter IV.

8.   "Federal Acquisition Regulation" means those parts of the Federal Acquisition Regulation (FAR) to which reference is made hereinafter, as in effect on April 1, 1984, codified in Title 48 of the Code of Federal Regulations, and includes the Department of Health and Human Services Acquisition Regulation.

9.   "State" means the State which is a party to this Agreement and includes the State survey agency.

10.   "State survey agency" refers to that component within the State government which has the primary responsibility for the performance of the functions under this Agreement.

11.   "Subcontract" means any contract, agreement, purchase order, or lease (including leases of real property) to obtain space, supplies, equipment, or services under this Agreement; the term "subcontractor" means any holder of one or more subcontracts. "Subcontract" does not include an agreement between the State survey agency and other State or local government agencies.

12.   "Trust Fund" means either the Federal Hospital Insurance Trust Fund established by Section 1817(a) of the Act or the Federal Supplementary Medical Insurance Trust Fund established by Section 1841(a) of the Act, or both, as may be appropriate in the context of this Agreement.

B.   Federal delegations of authority for the purpose of this Agreement:

    The Secretary of Health and Human Services has delegated the authority for the administration of this Agreement, except for the authority to terminate the Agreement under Section 1864 of the Act, to the Administrator of the Health Care Financing Administration. This authority has been

- 2 -

KDADS MSJ 063

redelegated by the Administrator to the Deputy Administrator and to the Associate Administrator for Operations, and has been further redelegated to the Deputy Associate Administrator for Operations and the Regional Administrators. The Regional Administrator may retain the authority or redelegate it further to an Associate Regional Administrator.

Certain responsibilities for the administration of the Act have been or may be delegated to the Inspector General of the Department of Health and Human Services or to other components of the Department.

Article II
FUNCTIONS TO BE PERFORMED BY THE STATE

A.  <u>Under Section 1864(a) of the Act</u>

1.  The State upon request of the Secretary shall certify whether or not providers/suppliers within the State that are participating or are asking to participate under the Act, comply with all applicable definitions and requirements in the Act and in implementing regulations.

In performing certification related duties, the functions of the State include, but are not limited to:

   (a)  identifying potential providers and suppliers of services within the State;

   (b)  explaining the requirements and conditions for qualifying as a provider or supplier of services;

   (c)  surveying for the purpose of certifying to the Secretary compliance or non-compliance of providers and suppliers of services and resurveying such entities, at such times and manner as the Secretary may direct;

   (d)  explaining requirements for an acceptable plan of correction for cited deficiencies; and

   (e)  forwarding to the Secretary a completed Statement of Deficiencies and Plan of Correction, HCFA Form 2567, that is acceptable to the Secretary for each provider and supplier surveyed or resurveyed.

In making certifications the State shall apply the appropriate conditions of participation for providers and conditions for coverage for suppliers of services, including standards for life safety from fire, and other requirements incorporated by reference in the regulations. The application of such conditions, standards and requirements shall be in accordance with the nationally uniform survey procedures established in regulations and general instructions.

- 3 -

B.  **Under Sections 1864(c) and 1865(a) of the Act**

1.  At the request of the Secretary, the State shall conduct validation surveys of institutions accredited by the Joint Commission -on Accreditation of Hospitals or the American Osteopathic Association on a selected sample basis, or because of substantial allegations of the existence of significant deficiencies. Complaints concerning accredited institutions received by the State shall be reported to the Secretary. To the extent that the Secretary finds it desirable and in the interest of maintaining uniformity of results, representatives of the Secretary may join with the State in conducting validation surveys. The State shall assist the Secretary's representatives in investigating, documenting, and resolving differences between the findings reported by accrediting bodies and those obtained in validation surveys. The State shall similarly conduct validation surveys of providers and suppliers, accredited by other accrediting organizations on the same basis in accordance with regulations and general instructions of the Secretary.

2.  Exception. Validation surveys on a selective sample basis of clinical laboratories in accredited hospitals are not covered by this Agreement.

C.  **Under Section 1874 of the Act**

1.  The State shall certify to the Secretary whether:

    (a)  Suppliers of portable X-ray services performing diagnostic X-ray tests described in Section 1861(s)(3) of the Act, meet the requirements of the Act and regulations;

    (b)  Chiropractors furnishing the services and supplies described in Sections 1861(s)(1) and 1861(s)(2)(A) of the Act, meet the requirements of Section 1861(r)(5), including whether such chiropractors are licensed or otherwise legally authorized to perform such services, and whether they meet the uniform minimum standards prescribed by the Secretary;

    (c)  End-stage renal disease treatment facilities meet the requirements of Section 1881 of the Act and implementing regulations prescribed by the Secretary;

    (d)  Physical therapists furnishing individuals with outpatient physical therapy or speech pathology services in such therapists' offices or in such individuals' homes meet the requirements of Section 1861(p) of the Act, and implementing regulations prescribed by the Secretary (including whether such physical therapists meet State licensure requirements).

    (e)  Independent clinical laboratories performing diagnostic laboratory services described in Sections 1861(s)(3),(11) and (12) of the Act, meet the requirements of the Act and regulations.

    (f)  Clinical laboratories performing tests (diagnostic laboratory services) or procedures in interstate commerce meet the

– 4 –

KDADS MSJ 065

requirements of the Clinical Laboratory Improvement Act (Section 353 of the Public Health Service Act, 42 USC 263a) and regulations (42 CFR Part 74).

2. The State shall assist the Secretary in collecting financial interest information that providers and suppliers are required to furnish pursuant to the Act and regulations.

D. Under the Prospective Payment System (PPS)

The State shall conduct surveys of providers or parts of providers in connection with requests for exemption from PPS.

E. Effect of State and Local Licensing Requirements

The State shall certify whether or not a provider or supplier is eligible or continues to be eligible for participation in or coverage under the Medicare program whether or not that State's licensure program provides for the licensing of that provider or supplier.

F. Real Party in Interest

In the performance of the functions described in this Agreement, the State acts on behalf of the Secretary as a Federal contractor, carrying on for the Secretary, the administrative responsibilities imposed pursuant to law by applying and enforcing Federal standards. The Secretary, however, is the real party in interest in administering the program established by the Act.

G. Records

The State, or any local governmental agency performing any function of the State under this Agreement, shall maintain pertinent survey, certification, statistical, or other records for a period of at least four (4) years after the date of such record.

H. Reports

The State shall make reports in the form and containing such information as the Secretary may require, and shall comply with such general instructions or regulations as the Secretary may issue regarding the accuracy of such reports. Where feasible and practicable such reporting requests will provide lead time that will facilitate any necessary adjustments in workload planning.

Article III
COMPLIANCE WITH REGULATIONS AND GENERAL INSTRUCTIONS

The State shall comply with such regulations and general instructions as the Secretary may prescribe for the administration of this Agreement. When feasible and practicable the State will be requested

- 5 -

KDADS MSJ 066

Such items of costs on which the Secretary and the State are unable to agree will continue to be negotiated and, if not resolved, are subject to a subsequent determination by the Secretary in accordance with Paragraph K of this Article.   To the extent unpaid, such amounts which are agreed upon shall be paid promptly by the Secretary.

K.   If the Secretary and the State are unable to agree upon a final amount of the administrative costs of the State for a particular quarter or other period, the Secretary shall issue a final determination of the amount of such administrative costs for such period and inform the State of such costs, with a full explanation of the exceptions taken to the State's report of its allowable costs.

The State may appeal the final determination in accordance with the provisions of Article XIV of this Agreement, entitled "Disputes." Where a particular cost or type of cost is disallowed by final determination of the Secretary and the State is not in agreement with the Secretary's disallowance, the State shall, for any subsequent claims, abide by the decision of the Secretary and agrees not to be reimbursed pending resolution of any amounts of such costs.   Until the issue is resolved, the State shall segregate such costs from all others, and specify the amounts of such costs on all subsequent claims.   Any funds withdrawn through the letter of credit in excess of the amount finally determined to be allowable must be returned promptly to the Secretary.

L.   The State shall furnish or make available such supplemental accounts, records, or other information as may be requested by the Secretary to substantiate any estimates, expenditures, or reports as may be necessary for auditing purposes, or to verify the allowability of the State's expenditures under this Agreement.


### Article X
### SUBCONTRACTING

A.   The State shall not enter into any subcontract to perform any of the functions set forth in Article II of this Agreement unless such subcontract received the prior written approval of the Secretary.

B.   The State shall not enter into any subcontract under this Agreement not controlled by Paragraph A of this Article, if any part the cost of the subcontract is allocable to this Agreement and if the subcontract provides for payment on a cost-plus-fixed-fee-basis, regardless of amount, or where the estimated cost of such subcontract exceeds, or is expected to exceed $25,000, without the prior written approval of the Secretary.

– 13 –

- 7 -

that additional funding and staffing might be necessary to implement the provisions of the bill. In addition, SRS has indicated that the provisions of the bill could result in a shortfall of $4,904,775 in its long-term care budget during FY 1995.

The other legislation, H.B. 3070, would increase the amount of funds transferred from the State Highway Fund to the Elderly and Handicapped Coordinated Public Transportation Assistance Fund. Currently, the amount designated in statute for expenditure from this fund for this purpose is $390,000. As introduced, H.B. 3070 would increase this amount to $600,000. Amendments in the House Transportation Committee increased the amount of the transfer to $1,000,000.

Should either of these bills be enacted, the impact on KDOA and SRS should be considered during the Omnibus session.

Representative Bob J. Mead
Subcommittee Chair

Representative Barbara Allen

Representative Kent Glasscock

Representative Gilbert Gregory

Representative Henry M. Helgerson, Jr.

8578.01   03/22/94   9:02am

KDADS MSJ 068

…

- 5 -

because of an increase in federal funding, the amount needed to hold the affected PSAs harmless for one year has been reduced to $22,161. Because this expenditure would represent a one-time expenditure, the Subcommittee recommends the expenditure from the BSF.

5. Delete $20,000 from the State General Fund recommended by the Senate for the RSVP program.

6. The Subcommittee reviewed the progress of the Senior Care Act (SCA) and its implementation statewide. The Senior Care Act authorizes the Secretary of Aging to establish a program of in-home services for older Kansans who are unable to perform activities of daily living. The goal of SCA is to prevent inappropriate or premature institutionalization of persons who were facing difficulty with self care and independent living. The SCA calls for the in-home services to be administered by Area Agencies on Aging (AAAs) in their respective Planning and Service Areas (PSAs).

In 1992, the Legislature expanded the Senior Care Act to include the entire state during FY 1993. Instead of only the three pilot PSAs that had been part of the program during the first three years, all eleven PSAs are now included. Although all eleven PSAs are included in the SCA program, not all counties are able to fully participate. There are currently 90 counties with an SCA program, and six additional counties, while having no SCA program, are partially served by neighboring providers.

The Subcommittee believes that the programs provided by the SCA program are obviously good for the people served and advantageous to the state budget. There is a definite need for expansion of the program. The Subcommittee believes that KDOA and SRS should work to secure a federal HCBS waiver for use in the program. The request should include waiver of the 300 percent cap to allow for the continuation of services to all based on a graduated payment schedule. Testimony from the agency indicated that the state was saving an estimated $1.40 for every $1.00 spent on the SCA program. Given the fact that the SCA services are directed at those most at risk of institutionalization, and therefore, at risk of becoming Medicaid eligible, there would be equal or greater savings of federal Medicaid funds. As noted in the FY 1993 evaluation of the Senior Care Act submitted by Kansas State University, SRS is charged $51.24 per day for nursing home admissions. The average Medicaid payment is $38.04 after the patient's payment share is deducted from the initial charge. Under the federal Medicaid match rate, the state pays $15.91 of the $38.04 daily cost, while the federal share would be $22.13. Based on the evaluation's finding that the state was saving an estimated $1.40 for every $1.00 spent on the Senior Care Act, federal Medicaid savings would amount to $1.95 for every $1.00 spent. The Clinton Administration has indicated a willingness to provide waivers for programs of this type. The Subcommittee encourages the agencies to submit this waiver request prior to the Omnibus session, and to seek the assistance of the Kansas Congressional delegation. The Subcommittee intends to review the progress of the plan for submission of the waiver request with SRS and KDOA during the Omnibus session.

KDADS MSJ 069

- 3 -

shifting funding or programs from the Department of Social and Rehabilitation Services (SRS) to the Department on Aging were addressed. The Subcommittee urges the Secretaries of Aging and SRS and staffs to take active roles in the direction the study takes, as those agencies will ultimately be responsible for implementing the recommendations of the study.

## Senate Committee Recommendation

Concur.

## Senate Committee of the Whole Recommendation

The Senate Committee of the Whole concurs with the recommendation of the Senate Committee.

| Expenditure Summary | Senate Adj. FY 95 | Senate Rec. FY 95 | House Sub. Adjustments |
|---|---|---|---|
| **All Funds:** | | | |
| State Operations | $ (15,000) | $ 1,791,546 | $ (33,863) |
| Aid and Other Assistance | 41,716 | 16,282,986 | 13,863 |
| TOTAL | $ 26,716 | $ 18,074,442 | $ (20,000) |
| **State General Fund:** | | | |
| State Operations | $ (15,000) | $ 950,349 | $ (33,863) |
| Aid and Other Assistance | 41,716 | 4,582,584 | (8,298) |
| TOTAL | $ 26,716 | $ 5,532,933 | $ (42,161) |
| FTE Positions | (1.0) | 31.0 | -- |

## House Subcommittee Recommendation

The House Subcommittee concurs with the recommendations of the Senate, with the following adjustments and observations:

1.    The Subcommittee recommends that the long term care funding removed from the budget of the Department of Social and Rehabilitation Services (SRS) be restored to the SRS budget through a new section in S.B. 633. The Subcommittee deleted that funding pending consideration of the Department on Aging budget and review of the consultant's study on long-term care which was funded by the 1993 Legislature. The preliminary findings and recommendations of the study, prepared by the National Long Term Care Resource Center, was submitted to the Secretaries of Aging and SRS on March 8, 1994. The preliminary recommendations of that study support a gradual consolidation and shift of long-term care services from SRS to KDOA. Pending development and implementation of that plan, the Subcommittee recommends the restoration of funding to the SRS budget.

## SUBCOMMITTEE REPORT

**Agency:** Department on Aging      **Bill No.** 633      **Bill Sec.** 6

**Analyst:** Robinson      **Analysis Pg. No.** 803      **Budget Page No.** 50

| Expenditure Summary | Agency Req. FY 95 | Gov. Rec. FY 95 | Subcommittee Adjustments |
|---|---|---|---|
| **All Funds:** | | | |
| State Operations | $ 2,097,715 | $ 1,806,456 | $ (15,000) |
| Aid and Other Assistance | 17,590,477 | 16,241,270 | 41,716 |
| TOTAL | $ 19,688,192 | $ 18,047,726 | $ 26,716 |
| **State General Fund:** | | | |
| State Operations | $ 1,255,756 | $ 965,349 | $ (15,000) |
| Aid and Other Assistance | 5,930,373 | 4,540,868 | 41,716 |
| TOTAL | $ 7,186,129 | $ 5,506,217 | $ 26,716 |
| FTE Positions | 34.5 | 32.0 | (1.0) |

### Agency Request/Governor's Recommendation

The agency requests total FY 1995 expenditures of $19,688,192, an increase of $1,386,629 from the revised FY 1994 estimate. The request includes $2,097,715 for state operations and $17,590,477 for local aid and other assistance. The agency's state operations request includes funding for 3.5 new FTE positions: 1.0 Computer Systems Analyst II; 1.0 Social Service Administrator II; 1.0 Office Specialist; and a 0.5 FTE Secretary I. The agency's FY 1995 request for local aid and other assistance includes funding of $5,930,373 from the State General Fund and $11,660,104 from other funds.

The Governor recommends FY 1995 expenditures of $18,047,726, a reduction of $1,640,466 from the amount requested by the agency. The Governor recommends FY 1995 state operations expenditures of $1,806,456, a reduction of $291,259 from the agency's request. The recommendation includes funding for the addition of 1.0 FTE Computer Systems Analyst II position. The Governor's FY 1995 recommendation for local aid and other assistance totals $16,241,270, a reduction of $1,349,207 from the amount requested by the agency. The recommendation includes funding of $4,540,868 from the State General Fund and $11,700,402 from other funds.

### Senate Subcommittee Recommendation

The Senate Subcommittee concurs with the recommendations of the Governor, with the following adjustments and observations:

1. Reduce the agency's FTE position limitation by 1.0 FTE. The agency indicated that the Computer Systems Analyst II position, requested by the agency and recommended by the Governor, would assist the agency in developing an integrated management information services plan. The goal of the plan would be to allow the



JOAN FINNEY, GOVERNOR OF THE STATE OF KANSAS

# KANSAS DEPARTMENT OF SOCIAL
# AND REHABILITATION SERVICES

### DONNA WHITEMAN, SECRETARY

April 21, 1994

Mr. Gene Hyde
Regional Administrator
Kansas City Regional Office
New Federal Office Building
601 East 12th Street, Room 235
Kansas City, Missouri 64106

Dear Mr. Hyde:

I look forward to a meeting on the Medicare Recovery Methodology issue.

I have enclosed a copy of the Sub-Committee Report on the Kansas Department
of Aging that directs KDOA, SRS and KDHE to develop a strategic plan for
the consolidation of all long-term care services within KDOA (see page 4).
Any information from the federal perspective that points to the basic folly
of such reorganization would be appreciated.

Sincerely,

Robert L. Epps
Commissioner
Income Support/Medical Services
(913) 296-6750

RLE/pc
encl.
cc:  Joyce Sugrue

915 SW HARRISON STREET, TOPEKA, KANSAS 66612

KDADS MSJ 072

<u>TRANSMITTAL OF REVISED PAGES OF THE SECTION 1864 AGREEMENT</u>

The Section 1864 Agreement has been updated to reflect legislative changes as a result of PL100-360 and PL100-485 (home health agency toll-free hotline and complaint investigation),
PL100-578 (Clinical Laboratory Improvement Amendments of 1988) and,
PL101-508 (screening mammography).

The attached revised pages should be added or substituted for designated pages in the current Agreement, as indicated in the following instruction.

| REVISED MATERIAL | REVISED PAGES | REPLACED PAGES |
|---|---|---|
| Cover Sheet and Index | i-ii (2 pages) | first 2 unnumbered pages |
| Articles I-II | 1-5b (7 pages) | 1-5 (5 pages) |
| Article IX | 13 (1 page) | 13 (1 page) |
| Article XV | 18-19 (2 pages) | 18 (1 page) |

<u>SUMMARY OF REVISIONS</u>

<u>Article I, Definitions and Delegations</u>:
(1) updates the supplier category by changing "independent laboratory" to "laboratory" (PL100-578) and adding screening mammography (PL101-508).
(2) adds a definition for "other entity" to include laboratory (PL100-578), and
(3) updates the definitions for "general instructions" and "regulations" to encompass legislative changes (PL100-578).

<u>Article II, Functions to be Performed by the State</u>, is updated to include:
A.   <u>Under Section 1864 of the Act</u>
(1) requirements of the Clinical Laboratory Improvement Amendments of 1988 (PL100-578) and the Code of Federal Regulations, Title 42, Chapter IV, and
(2) home health agency toll-free hotline and complaint investigation maintained by the State (PL100-360 and PL100-485).

G.   <u>Effect of State and Local Licensing Requirements</u>, provides for licensure of laboratories by States whose licensure programs have been approved by the Secretary under Section 353 of the Public Health Service Act.

<u>Article IX, Cost of Administration</u>, is updated to include Section M, which addresses the applicability to activities carried out in meeting the requirements of the Clinical Laboratory Improvement Amendments of 1988 (PL100-578) and the Code of Federal Regulations, Title 42, Chapter IV.

<u>Article XV, Clauses Incorporated by Reference</u>, is updated to include the Federal Acquisition Regulations (FAR) Clause entitled Electronic Funds Transfer, 52.232-28.2

KDADS MSJ 073

Page 2

While we recognize that States have already implemented these provisions, this subsection was added to reflect these activities. Article I, Section A.5.h of the Agreement is also updated to include screening mammography services, in accordance with Public Law 101-508.

Finally, one additional clause from the Federal Acquisition Regulations has been added to the list of clauses incorporated by reference in Article XV of the Agreement. This is Clause 52.232-28, which addresses Electronic Funds Transfer.

Sincerely yours,

(Regional Administrator)
Swetnam

Enclosures

A: 1864mod.ltr Nanda Devi 9/8/92 DF
revised 9/22/93 DF/11-04-93

KDADS MSJ 074

Model Letter to State Health Officer

Dear (State Health Officer):

The enclosed transmittal will serve as notice of the intention of the Health Care Financing Administration to update the 1864 Agreement to reflect changes as a result of legislation.  These modifications are effective beginning October 1, 1993.

This notice is ~~made~~ in accordance with Article VII(B) of the current Agreement, which permits the Secretary to modify the Agreement to incorporate changes in the State's functions and responsibilities as a result of changes to the Act or regulations.  These modifications merely update the Agreement to reflect changes as a result of the Omnibus Budget Reconciliation Act of 1990 (OBRA 90) and the Clinical Laboratory Improvement Amendments of 1988 (CLIA 88).

Under Section 1864(a) of the Social Security Act (the Act), as amended by Section 4154(d) of OBRA 90 (PL 101-508), States having Section 1864 Agreements with the Secretary are now obligated to perform inspections of laboratories, and other related activities, to determine compliance with the requirements of the Clinical Laboratory Improvement Amendments of 1988 (CLIA 88) whether or not the laboratories also participate in Medicare.

Accordingly, a transmittal containing the updated sections of the 1864 Agreement is enclosed.  The transmittal cover sheet specifies and summarizes all changes and lists the changed pages for incorporation into the Agreement.

Several Articles of the Agreement have been updated to reference the Code of Federal Regulations (CFR) Title 42, Chapter IV, in addition to the references to Sections 1864, 1874, and related provisions of the Act.  These updates to the current agreement are necessary to maintain consistency with the law and to reflect the increased State agency responsibilities accruing as a result of changes in the law.

The updating of the 1864 Agreement to accomodate CLIA 88 also provided the opportunity to make three additional updates in content.  A subsection was added to Article II, Section A.2. of the Agreement to address the maintenance of home health agency (HHA) toll-free hotlines and a unit to investigate HHA complaints.

KDADS MSJ 075



Health Care
Financing Administration

DEPARTMENT OF HEALTH & HUMAN SERVICES

**Memorandum**

Date JAN 1 4 1994

From **Director**
**Health Standards and Quality Bureau**

Subject **Revisions to the 1864 Agreement with State Agencies**

To **Regional Administrator**
**Health Care Financing Administration**
**Regions I - X**

The Omnibus Budget Reconciliation Act of 1990 (OBRA 90) requires revisions to the 1864 Agreement with the States to accommodate expanded activities occasioned by the Clinical Laboratory Improvement Amendments of 1988 (CLIA) and other technical changes.  Such revisions to the 1864 Agreement are permitted under Article VII B. of the Agreement, which states that "The Secretary may modify this Agreement to incorporate changes in the States' functions and responsibilities as a result of changes to the Act or regulations."

Due to substantial additional State responsibilities resulting from this legislation, as well as revisions to the Federal Acquisition Regulations (FAR), updates to the current 1864 Agreement are necessary at this time.  The Agreement as revised reflects any pertinent changes to the Health and Human Services Acquisition Regulations (HHSAR).

The revisions to the Agreement include home health agency hotlines, mammography screening, CLIA, etc.  Attached is a model letter to the State Health Officer, which transmits the changed pages incorporating the revisions to the current Agreement.  Copies of the changed pages are also attached.

These revisions to the 1864 Agreement merely reflect functions already being performed by the States and bring the Agreement up to date.

If you have any questions, please have your staff contact Mark Bernsohn at (410) 597-5858.

Barbara J. Gagel

Attachments

KDADS MSJ 076

Article XV
CLAUSES INCORPORATED BY REFERENCE

The following clauses are hereby incorporated into and are made a part of this Agreement.   For purposes of these clauses, the term "Contractor" means the "State", and "Contracting Officer" or "Project Officer" means the "Secretary" or "Secretary's designee."

A.   Federal Acquisition Regulation (FAR) Clauses (48 CFR Chapter 1)

| Title | | FAR Reference |
|---|---|---|
| 1. | Officials Not To Benefit | 52.203-1 |
| 2. | Gratuities | 52.203-3 |
| 3. | Utilization of Small Business Concerns and Small Disadvantaged Business Concerns | 52.219-8 |
| 4. | Utilization of Women-Owned Small Businesses | 52.219-13 |
| 5. | Utilization of Labor Surplus Area Concerns | 52.220-3 |
| 6. | Convict Labor | 52.222-3 |
| 7. | Equal Opportunity | 52.222-26 |
| 8. | Affirmative Action for Special Disabled and Vietnam Era Veterans | 52.222-35 |
| 9. | Affirmative Action for Handicapped Workers | 52.222-36 |
| 10. | Clean Air and Water | 52.223-2 |
| 11. | Privacy Act | 52.224-2 |
| 12. | Interest | 52.232-17 |
| 13. | Assignment of Claims | 52.232-23 |

B. Department of Health and Human Services Acquisition
      Regulation (HHSAR) Clauses (48 CFR Chapter 3)

| Title | | HHSAR Reference |
|---|---|---|
| 1. | Printing | 352.208-70 |
| 2. | Rights in Data | 352.227-1 |
| 3. | Required Insurance | 352.228-70 |
| 4. | Withholding of Contract Payments | 352.232-9 |
| 5. | Prohibition Against Use of HHS Funds to Influence Legislation or Appropriations | 352.232-72 |
| 6. | Litigation and Claims | 352.233-70 |
| 7. | Services of Consultants | 352.237-71 |
| 8. | Notice to the Government of Delays | 352.242-70 |
| 9. | Final Decisions on Audit Findings | 352.242-71 |
| 10. | Foreign Travel | 352.247-70 |
| 11. | Excusable Delays | 352.249-14 |
| 12. | Paperwork Reduction Act | 352.270-7 |

- 18 -

KDADS MSJ 077