## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOHN PAUL ODHUNO,

                          Plaintiff,

      v.

Reed's Cove Health and Rehabilitation, LLC
d/b/a AVITA; *et al.*

                       Defendants.

Case No. 15-1347-EFM-GEB

## REPLY IN CONTINUED SUPPORT OF KDADS DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Defendants Audrey Sunderraj, Carol (Schiffelbein) Jackson, Timothy Keck, Christan Rose, Teresa Fortney, and Treva Banuelos (KDADS Defendants), through counsel, respectfully submit the following Reply and request the Court grant summary judgment in their favor and dismiss all claims against them pursuant to Fed. R. Civ. P. 56. In support, KDADS Defendants state:

All KDADS Defendants are entitled to summary judgment as a matter of law, as Plaintiff fails to establish their conduct violated clearly established statutory or constitutional rights which a reasonable person would have known. Additionally, as Plaintiff does not oppose summary judgment as to the federal claims against Defendants Jackson, Fortney, and Banuelos, this reply only addresses those claims related to Defendants Keck, Sunderraj, and Rose.[1] (Doc. 147, at 1-2). Further, the Court should decline to exercise supplemental jurisdiction over the state law claims as to all KDADS Defendants, as Plaintiff failed to address this issue in his response.

## I.   KDADS Defendants' Reply to Plaintiff's Response to Statement of Facts

    1.      KDADS Defendants fully incorporate herein their reply to Plaintiff's Response to

---

[1] As it relates to Defendant Rose, because a Reply (Doc. 124) has already been filed, this Reply only addresses those additional arguments or fact provided by Plaintiff's in his most recent response (Doc. 147). KDADS Defendants fully incorporate the Reply in Support of KDADS Motion for Summary Judgment (Doc. 124) into this Reply to the extent that additional arguments contained within Doc. 124 are not fully addressed within this Reply.

the Statement of Facts in the Reply in Support of KDADS Defendants' Motion for Summary Judgment. (Doc. 124, section I at Nos. 1-53).

## II.  KDADS Defendants Reply to Statement of Plaintiff's Additional Material Facts

1.  KDADS Defendants fully incorporate herein their reply to the statement of Plaintiff's additional uncontroverted material facts and recorded citations contained in the Reply in Support of KDADS Defendants' Motion for Summary Judgment. (Doc. 124, section II at Nos. 1-26).

2.  Uncontroverted.

3.  Uncontroverted.

4.  Controverted, but immaterial as to what is required in every investigation completed by a federal surveyor. This is only required when there is an allegation of abuse.

5.  Controverted, but immaterial. Controverted as to Defendant Sunderraj's precise training and certifications. Defendant Sunderraj was more than just "an elder-abuse investigator" as she was certified as a Health Facility Surveyor, Federal Quality Indicator Surveyor, in addition to numerous other trainings. (Exh. A: Sunderraj Depo., at 31:23-33:16, 34:2-35:4; Exh. G: Audrey Sunderraj Certifications). However, the controversy is immaterial.

6.  Unsupported fact. Plaintiff's fact is misleading and not supported by the evidence cited as it mischaracterizes Defendant Sunderraj's testimony in that she never testified she was "*not aware* of the federal CMS regulations which require that due process (notice and opportunity for hearing) be afforded to an alleged perpetrator (AP) who is a CNA *accused of abuse*." Specifically, as clearly cited by Plaintiff in this fact, and when asked if it was true that there are federal regulations which require due process to an alleged perpetrator once a finding of abuse has been substantiated against the alleged perpetrator, Defendant Sunderraj did not state

that she did not know about these regulations or that she was not aware of them. Rather, her response indicates there is another process, or set of federal requirements, one with which she does work from as a federal surveyor of facilities. Specifically, as clearly cited by Plaintiff, Defendant Sunderraj testified to her knowledge of the due process procedures afforded to CNAs. (Exh. A, at 37:22-38:10 (emphasis added)). Defendant Sunderraj further stated that her specific authority as a federal surveyor "is only for the facility, determining if they're in compliance with the regulations or not." (Exh. A, at 75:3-18). Defendant Sunderraj provided ample testimony on the process by which a CNA may appeal a substantiated finding of abuse, neglect, or exploitation, clearly demonstrating her knowledge of the due process procedures afforded to CNAs who have been found to have committed abuse, neglect, or exploitation of an adult care home resident. (Exh. A, at 41:20-43:5, 192:17-193:23).

7.      Uncontroverted, but the administrative review process is explained in further detail in Doc. 124, section I at No. 6.

8.      Controverted, but immaterial. Controverted as to the delineation that this information is "an *official* electronic record," but immaterial.

9.      Uncontroverted. As it relates to an administrative appeal provided to a CNA following a finding of abuse, neglect, or exploitation of an individual in an adult care home, this fact is explained in more detail in Doc. 124, section I at No. 6.

10.      Uncontroverted as to the fact that employers are required to review the CNA registry before hiring, however, Plaintiff mischaracterizes the testimony cited in support of this fact. An employment prohibition may be placed on the Kansas Nurse Aide Registry only after a substantiated finding of abuse, neglect, or exploitation is *upheld* by an administrative law judge. (Exh. A, at 41:20-43:5, 72:13-74:5, 192:17-193:23; *see* also Doc. 124, section I at No. 6 for

citations to the legal authority to support the administrative proceedings).

11.     Unsupported fact. This fact is not supported by the testimony cited. Rather, the testimony supports that if there is an allegation of abuse and Defendant Sunderraj believes "there's evidence to support the alleged perpetrator did commit abuse, [she] will check the box" that refers the CNA to the KDADS Legal Department. (Exh. A, at 45:9-22). Defendant Sunderraj also testified that the box would be checked and sent to the KDADS Legal Department if she had enough evidence to refer the CNA to the registry for an employment prohibition. (Exh. A, at 71:19-73:13 (discussing Doc. 147-12))

12.     Plaintiff's fact is misleading and not supported by the evidence cited as it mischaracterizes Defendant Sunderraj's testimony in that she never testified that she was "unsure how much evidence was enough to 'substantiate' a finding that abuse actually occurred and a specific AP committed it." Allegations of abuse do not fit within a "one size fits all" type of situation. Defendant Sunderraj testified that the amount of evidence which was required to substantiate that an alleged perpetrator committed abuse depended upon each specific instance of alleged abuse. (Exh. A, 43:13-14; 46:9).

13.     Unsupported fact. Plaintiff's fact is not fully supported by the cited evidence. Plaintiff assumes there is a requirement that a due process hearing be provided to every single CNA who has ever been alleged to have committed abuse, regardless of whether a surveyor has substantiated that allegation as to that CNA or not.  Defendant Sunderraj's testimony supports the fact that if there is no action taken by the State against a CNA, there is nothing to appeal or receive due process on. *See also* Doc. 124, section I at No. 6 for citations to authority which provides for an administrative hearing once a CNA has been found to have committed abuse, neglect, or exploitation. This is more fully explained later in Defendant Sunderraj's testimony:

Q.   To the best of your knowledge, did KDADS take any action against John Paul Odhuno?

A.   No, they did not.

Q.   And, had they taken an action against John Paul Odhuno, would the references in this survey have been turned over to the legal department at KDADS?

A.   Yes, it would.

Q.   And, if that was the case, if and only then would John Paul Odhuno have been given a notice stating that this issue was being reviewed by KDADS legal?

A.   That's correct.

Q.   And, he would have had the opportunity to have a hearing if a finding had been made by KDADS legal?

A.   That is correct.

Q.   That hearing would occur in front of the Office of Administrative Hearings?

A.   That's correct.

Q.   And, it's the Office of Administrative Hearings that would decide if a finding is upheld or if it is not upheld?

A.   Yes.

Q.   If a finding is upheld, the individual would have a prohibition placed against them on the Nurse Aide Registry?

A.   That's correct.

Q.   To the best of your knowledge, has KDADS ever made a finding against John Paul Odhuno that would be on the Nurse Aide Registry?

A.   Not that I'm aware of.

(Exh. A, 192:17-193:23).

14.   The first two sentences are uncontroverted. The remainder consists of unsupported facts and a misunderstanding of the law. The last sentence is a legal conclusion which is not supported by the cited evidence as Plaintiff continues to either misstate the testimony or assume that an *allegation* alone, without a *substituted finding* that he abused G.C., triggers a right to notice and an administrative hearing. (*See* No. 13 above; Doc. 124, section I at No. 6).

15.   Uncontroverted.

16.   Controverted as to the meaning of an IJ, the term refers to "immediate jeopardy" which "means a situation in which the provider's noncompliance with one or more requirements of participation has caused, or is likely to cause, serious injury, harm, impairment, or death to a

resident." 42 C.F.R. 488.301. Also controverted as to the IJ being lifted by KDADS, it is lifted by CMS. However, the controversies are immaterial to this action.

17 – 19.  Uncontroverted.

20.     Controverted as written by Plaintiff, however, Plaintiff's fact is misleading as it misstates the testimony cited in that Defendants Sunderraj and Rose testified that did not have enough evidence to *substantiate that plaintiff committed abuse against G.C.* This is different from having evidence to support a finding that Plaintiff abused G.C.

21 – 25. Uncontroverted.

26.     Unsupported fact. Plaintiff's citations to the deposition testimony is misleading as it does not support the fact that Defendants Rose and Sunderraj testified they had *no evidence* to support G.C.'s allegation of abuse. Rather, the cited testimony supports there was not enough evidence to substantiate a finding that Plaintiff abused G.C. and there was concern with moving Plaintiff to another unit within the adult care home as he was the alleged perpetrator.

27.     Unsupported fact. The cited testimony does not support this fact. As testified to, G.C. "was still fearful and undergoing mental anguish at the time of our investigation;" "nothing had been done to assure her that she was safe;" and Defendant Sunderraj was "not assured at the time of the call that the facility had done everything they could to protected residents in this resident from abuse and keep her – them safe." (Exh. A, at 118:2-119:5).

28.     Unsupported fact. The cited evidence does not support this as being what was stated by Defendants Rose and Sunderraj.

When asked about this text, Defendant Rose indicated she recalled having a conversation with Wes Parsons, Kim Summers, and Vanessa Underwood with Defendant Sunderraj on the phone to discuss how Defendant Avita would abate the immediate jeopardy finding and to

determine if it had completed its investigation. (Exh. B: Rose Depo., at 109:18-110:21, 111:8-20). Defendant Rose indicated she stated her concern for the resident. (Exh. B, at 112:3-7). Defendant Rose recalled Defendant Sunderraj said something to the effect that she was not sure moving Plaintiff to another house was an effective intervention because that placed other residents as risk. (Exh. B, at 112:7-113:6). Defendant Rose recalls asking Ms. Underwood how she could be 100 percent certain this did not happen and Kim Summers replied to her, "how can you be 100 percent certain that it did." (Exh. B, at 113:16-114:3). As it relates to the quoted language by Plaintiff, "Audrey then said 'We are done. We have shared with you that we are very concerned. Your IJ (immediate jeopardy) status will be determined by the decisions you make regarding this employee (Odhuno)," Defendant Rose did not recall what was said, other than that Defendant Avita's immediate jeopardy status had not been abated as of that conversation. (Exh. B, at 114:4-24). As it relates to the quoted language by Plaintiff, "Christan said again '[w]e will let you know the status of your IJ when you let us know the status of his suspension. Actually, his employment.' Christan then left the room and the phone call with Audrey was ended," Defendant Rose stated that she did not recall what exact words were used. However, she recalls "[a]sking them to let me know what they decided about the employee so that I could let Audrey [Defendant Sunderraj] know what their decision was. An employee can't stay suspended forever." (Exh. B, at 115:10-116:7).

When defendant Sunderraj was asked about this text, she stated that they discussed abating the immediate jeopardy, but did not discuss Plaintiff's employment. (Exh. A, at 123:5-124:11). Defendant Sunderraj testified that she expressed that moving the alleged perpetrator to another unit was an unacceptable abatement plan and she did not believe that Defendant Rose stated "We will let you know the status of your IJ when you let us know the status of his

suspension. Actually, his employment." (Exh. A, at 86:22-87:2, 87:12-18). Defendant Sunderraj ended the conversation by telling Defendant Avita that the immediate jeopardy status had not been abated at the time because Defendants Sunderraj and Rose did not have an acceptable plan of abatement from Defendant Avita. (Exh. A, at 87:19-25, 86:14-21).

29.     Uncontroverted as it relates to the first sentence. The second sentence is not supported by the evidence cited in that plaintiff continues to misstate the testimony provided by Defendants Rose and Sunderraj in this case. Specifically, the testimony cited does not support the fact that Defendant Rose's "investigation had *not found any evidence* to support the abuse allegation against plaintiff." Rather, as clearly stated throughout, there was not enough evidence to substantiate a finding that Plaintiff actually abused G.C. *See* Doc. 124, at section I at No. 29 for a summary of Defendant Rose's deposition testimony at 109-116, 174-175, and 178-187.

30 – 31. Uncontroverted.

32.     Unsupported fact. Plaintiff is merely speculating as to Ms. Underwood and Ms. Summers's impression or opinion of the statements made by Defendants Rose and Sunderraj during the meeting or that the immediate jeopardy status would not be lifted unless Plaintiff's employment was terminated. (Exh. E: Summers Depo., at 56:17-57:10 (Summers testified that she *felt* Defendants Rose and Sunderraj wanted Plaintiff's employment terminated); Exh. D: Underwood Depo., at 373:22-378:18 (testifying to her interpretation of Defendant Rose's statements during the meeting. Specifically, at lines 377:23-378:1, Ms. Underwood states: "I don't believe that this says that [Defendant Rose is] telling us to terminate [Plaintiff], but she's acknowledging that he needs to be -- that he's going to be terminated." Which she then agreed at lines 378:2-18 that it was Ms. Underwood's interpretation that Defendant Rose wanted Plaintiff's termination). To the extent that the Court may find that these to be material facts in

controversy, KDADS Defendants are entitled to qualified immunity.

33.     Controverted, but immaterial. Controverted as to KDADS being the entity that abates the immediate jeopardy finding; CMS abates the immediate jeopardy finding.

34.     Uncontroverted.

35.     Unsupported fact. Plaintiff's citations to the evidence are misleading and do not support the allegation that Defendants Rose and Sunderraj substantiated Plaintiff abused G.C. As testified to, and cited throughout, there was not enough evidence to substantiate abuse by Plaintiff.  Rather, there was evidence to substantiate mental abuse of G.C. by Defendant Avita. Specifically, when asked about this sentence and what was substantiated, Defendant Sunderraj clearly indicated the physical abuse was not substantiated:

> Q.   Okay. Let's look again at Exh. 23, and I'm almost done here, which was the ACTS complaint/incident investigation report and this would have been filled out by Christan Rose?
> A.   Yes.
> Q.   If we go back to the next to last page, which is Bates- numbered 000016, and, I believe, Mr. Rhodes had asked you some questions about that. The type is so small it's really hard to, to read, but in the, at the very bottom under in summary --
> A.   Uh-huh.
> Q.   -- that first sentence appears to me to read, based on observation, interview and record review, the allegation of abuse was substantiated. Is that your understanding that at the conclusion of this investigation by KDADS that the allegation that abuse had occurred was substantiated?
> A.   ***Abuse was substantiated because the resident was in mental anguish.***
> Q.   Explain that to me.
> A.   The resident during the investigation was undergoing mental anguish and that's why we substantiated abuse.
> Q.   Okay. Did, did you -- I guess Christan Rose and you, collectively KDADS, substantiate that the allegation of [G.C.] that someone took her out in the courtyard and rolled her on the ground?
> A.   ***We substantiated that she was in mental anguish and in fear.*** [...]
> Q.   Okay. So, you're saying what was substantiated was that she had mental anguish after, or at the time of or after making the allegations she did?

A.   ***And the facility did not do anything to protect her.***

(Exh. A, 151:14-153:16 (emphasis added)). This is also clarified in the public Statement of Deficiencies issued by CMS. (Doc. 106-9).

36.   Unsupported fact. Plaintiff continues to allude that abuse by Plaintiff was substantiated without providing support for the same. The evidence provided supports that certain findings, pertaining to Defendant Avita only, were made by KDADS Defendants in conducting the federal survey for CMS. (Doc. 106-9).

37.   Controverted as to what is considered the "official … investigation report." The official report is the published Statement of Deficiencies which does not name Plaintiff. (Doc. 106-9). The report cited by Plaintiff is not a public document. To the extent that the Court may find that these to be material facts in controversy, KDADS Defendants are entitled to qualified immunity.

38.   Unsupported fact. Plaintiff continues to allude that abuse by Plaintiff was substantiated without providing support for the same. *See* Response in No. 36 above. Also, controverted as to what is considered the "official … investigation report." *See* Response in No. 37 above. The official report is the published Statement of Deficiencies, which does not name Plaintiff. To the extent that the Court may find that these to be material facts in controversy, KDADS Defendants are entitled to qualified immunity.

39.   Unsupported fact. The cited evidence does not support Plaintiff's inference that the published Statement of Deficiencies identifies him as "direct care staff E" or identifies G.C. as "resident 3." This information is not available to the public and is not published. (Doc. 106-9).

40. Uncontroverted, however, misleading and immaterial to this issues in this case, as

Plaintiff lacks standing to litigate the findings in the Statement of Deficiencies which were appealed by Defendant Avita and upheld by CMS and DAB of HHS.  (Doc 106-1; Doc. 106-9.)

41.     Uncontroverted as to the affidavit produced by Bertelson. Controverted as to the affidavit being used to prove that G.C. told Bertelson "that the alleged abuse was just a dream and did not happen." Any controversy as to this fact is immaterial as Plaintiff lacks standing to litigate the findings in the Statement of Deficiencies and the survey process as a whole. Moreover, the findings were appealed by Defendant Avita and upheld by CMS and the DAB of HHS.  (Doc 106-1; Doc. 106-9.)

42.     Unsupported fact. Plaintiff's statement is not supported by the evidence, it is self-serving and amounts to a baseless conclusory allegation that misstates testimony and Exhibits. There has been no finding that Plaintiff abused an Avita resident. (*See* Doc. 124, at section I at No. 26). Further, Plaintiff's citations to his deposition testimony only provide support for the fact that he assumed he was not offered employment because of either KDADS Defendants, Defendant Avita, or Defendant Axiom.  The citations do not provide support that KDADS directly informed Plaintiff's potential employers that he committed abuse, found that he abused an Avita resident, or denied his CNA certification. There is absolutely no evidence to support any of Plaintiff's allegations in this paragraph.

### III. Arguments and Authorities

#### A. *Plaintiff lacks standing to bring this suit as he fails to demonstrate a case or controversy as to any actions taken by KDADS Defendants or that any actions taken by KDADS Defendants caused him actual harm.*

Plaintiff alleges that he has standing to bring this lawsuit by merely stating that he has "clearly established" an injury in fact, a causal connection, and the likelihood the injury will be redressed by a favorable decision based on the statement that Defendants Sunderraj and Rose

caused Plaintiff's termination from employment "in a manner which violated his 14th Amendment rights to procedural due process." (Doc. 147, at 28-29). However, Plaintiff fails to rebut the lack of standing argument as it relates to his specific claims against the KDADS Defendants.

Plaintiff's alleged injury must be "fairly traceable" to the actions of the KDADS Defendants. *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225 (10th Cir. 2008) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). More than "'speculative inferences are necessary to connect [a plaintiff's] injury to the challenged action'…" *Id.*, at 1225 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42). Here, there is absolutely no evidence that Defendants Sunderraj and Rose terminated Plaintiff in a manner which violated his 14th Amendment rights.  Plaintiff was terminated by Defendant Avita, not KDADS.  As a result, Plaintiff cannot establish that he has standing to bring this lawsuit against KDADS Defendants based on false allegations and mere speculation. (*See also* the arguments and authorities in Doc. 106, at section IV(A)).

### B. Defendants Keck, Sunderraj, and Rose are entitled to Qualified Immunity as Plaintiff fails to establish their conduct violated clearly established statutory or constitutional rights which a reasonable person would have known.

All claims against Defendants Sunderraj and Rose brought under 42 U.S.C. § 1983 and the *Bivens*[2] claim must be dismissed because KDADS Defendants are entitled to qualified immunity. Plaintiff has utterly failed to meet his heavy two-part burden in demonstrating KDADS Defendants violated any of his rights and that those rights were clearly established.

After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a "heavy two-part burden." *Gross v. Pirtle*, 245 F.3d 1151, 1155–56 (10th Cir. 2001)

---

[2] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). *See also* the arguments and authorities in Doc. 106, at section IV(C).

(quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir.1995)). The plaintiff must first establish "that the defendant's actions violated a constitutional or statutory right." *Id.* (quoting *Albright*, 51 F.3d at 1534). If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct. *Id.* In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. at 615, 119 S.Ct. 1692 (internal quotation marks omitted).

The non-moving party "may not rest upon the mere allegations or denials of his pleadings to avoid summary judgment." *Good v. Bd. of Cty. Comm'rs of Shawnee Cty.*, 209 F. Supp. 2d 1124, 1129 (D. Kan. 2002). "[T]hey must produce some specific factual support for their claim of unconstitutional motive." *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). "[T]here must be sufficient evidence on which a jury could reasonably find for the nonmoving party." *Good*, 209 F. Supp. 2d at 1129. While courts review the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity. *Gross v. Pirtle*, 245 F.3d 1151, 1155–56 (10th Cir. 2001).

Here, Plaintiff has failed to satisfy his heavy two-part burden. None of the KDADS Defendants violated Plaintiff's rights and there is no evidence to support such a claim. Defendants Sunderraj and Rose appropriately applied the federal regulations associated with federal complaint survey of an adult care home and reasonably believed their conduct complied with the law. Prior to the complaint survey, KDADS received a complaint that Defendant Avita failed to investigate

an allegation of abuse made by a resident of their facility. (Doc. 106-1, at MSJ 002). The resident, G.C., alleged that a non-Caucasian, nurse, of the opposite gender, who worked nights, touched her buttocks. *Id.* at MSJ 117. This individual told G.C. that he was checking to see if G.C.'s incontinence pad was dry. *Id.* This individual also worked on July 4, 2014 and July 20, 2014. *See id.* at MSJ 118. G.C.'s family member confirmed that Plaintiff worked on July 20, 2014, and came into G.C.'s room. *Id.* at MSJ 012. Plaintiff worked the night shift on G.C.'s house on July 4, 2014 and July 20, 2014. *Id.*

In his deposition, Plaintiff admitted that he provided personal care to G.C. while he was assigned to her unit including changing her incontinence pad, up "[u]ntil the time of [his] termination…" (Exh. C: Odhuno Depo., at 46:16-48:18, 48:19-49:5, 148:11-152:3l). It is clear that Plaintiff met the descriptors of the alleged perpetrator as Plaintiff is a black male member of the nursing staff who worked night shifts on July 4, 2014 and July 20, 2014. This coupled with the fact that he provided personal care to G.C. during the time of the allegations, including changing G.C.'s incontinence pad allowed KDADS Defendants to identify Plaintiff as the alleged perpetrator of abuse, which was upheld by CMS and the DAB of HHS. (Doc 106-1; Doc. 106-9)

Even if the Court was to believe Defendants Rose or Sunderraj somehow inferred that Defendant Avita should terminate the Plaintiff, Defendants Rose and Sunderraj are entitled to qualified immunity. Defendants Rose and Sunderraj at all times throughout the survey process acted in the best interest of the residents, especially resident G.C and in compliance with federal rules and regulations. Defendant Avita's decision to terminate the Plaintiff was an acceptable plan of correction. Defendants Rose and Sunderraj reasonably believed their actions complied with the law. A reasonable surveyor would have not have known that it was "sufficiently clear" that they were violating Plaintiff's rights in conducting the federal survey acting in the best interest of the

residents in compliance with federal law. *Wilson v. Layne*, 526 U.S. 603, 615, 119 S. Ct. 1692, 1699, 143 L. Ed. 2d 818 (1999).

Plaintiff has clearly failed his burden. Therefore, Defendants Keck, Sunderraj, and Rose are entitled to dismissal based on qualified immunity.

### 1. Plaintiff fails to demonstrate that Defendant Sunderraj deprived him of due process of law under federal regulations and statutes.

Plaintiff alleges that Defendant Sunderraj deprived him of due process of law under 42 U.S.C. 1396r(g)(1)(C), which provides that the State must have a process for the receipt and timely review of abuse, neglect, and misappropriation allegations and requires the State to provide notice to a nurse aide if it is found that such abuse, neglect, or misappropriation occurred by the nurse aide. Plaintiff also cites to 42 C.F.R. 488.335 to support the fact that Plaintiff was allegedly entitled to notice and a hearing following an allegation of abuse. Plaintiff cites to 42 C.F.R. 483.156(d) in support of a CNA's ability to correct any misstatements or inaccuracies placed on a CNA's specific registry. However, all of these procedures and opportunities are *only afforded* to a CNA who has been *found to have committed* abuse, neglect, or exploitation of an adult care home resident and the State determines to take action against the CNA's certification. Here, Defendants Keck, Sunderraj, and Rose took no action against Plaintiff as there has not been a *finding* of abuse made against him, therefore he is not entitled to a hearing in accordance with 42 U.S.C. 1396r(g)(1)(C) or 42 C.F.R. 488.335 and there is no inaccuracy or misstatements to correct in relation to his listing on the Kansas Nurse Aide Registry. (Doc. 106-13).

Additionally, Plaintiff either mistakenly or carelessly continues to disregard the published Statement of Deficiencies; testimony provided by Defendants Sunderraj and Rose; and other evidence presented which clearly demonstrates that absolutely no finding of abuse was

substantiated *against* Plaintiff. Rather, as repeatedly reiterated, a finding of abuse was substantiated against the facility for its failure to properly investigate the allegation of abuse, failure to report the allegation, and failure to protect residents. Defendant Avita's inactions caused mental abuse to the resident which was substantiated during the complaint survey. This continued persistence on alluding that such a finding was made against Plaintiff without any evidence to support the same is misleading and inappropriate.

As there was not a substantiated finding that Plaintiff abused G.C. and there was absolutely no action by Defendants Keck, Sunderraj, and Rose taken against Plaintiff or his CNA licensure, the due process procedures set forth in federal statute and regulations are not applicable. As such, Defendant Keck, Sunderraj, and Rose are entitled to dismissal.

**2.   Plaintiff fails to demonstrate Defendants Keck, Sunderraj, and Rose have deprived him of his property right in his CNA certification without due process of law.**

Plaintiff alleges that Defendants Sunderraj and Rose "effectively revoked" Plaintiff's CNA certification without due process of law when they allegedly "conveyed their purported belief to [Defendant Avita] on August 5, 2014, that plaintiff was guilty of abusing the resident despite absolutely no evidence to support that allegation." (Doc. 147, at 29). This finding was allegedly "made and published" to Defendant Avita without any notice to Plaintiff or an opportunity for him to be heard. *Id.* However, Plaintiff misstates the facts and fails to identify specific evidence that demonstrates Defendants Rose and Sunderraj's actions with regard to the facility survey violated Plaintiff's constitutional rights.

First, the Tenth Circuit decision provided by plaintiff, *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144 (10th Cir. 2001), does not provide support that Plaintiff's property right to his CNA certification was violated without due process through KDADS Defendants'

actions of conducting a federal complaint survey. *See* Doc. 124, section III(B)(1) for an overview of the *Stidham* case.

The *Stidham* case can clearly be distinguished from the facts in this case. First, the procedural posture differs: Plaintiff has a heavier burden here, where the defense of qualified immunity is asserted as grounds for summary judgment, than Stidham had for the dismissal of his claims generally for a failure to state a claim under F.R.C.P. 12(b)(6). Second, Plaintiff fails to provide any specific evidence which demonstrates that KDADS Defendants disseminated false information that Plaintiff actually committed abuse to any individual, much less a potential employer. Plaintiff further cannot provide any evidence which demonstrates any KDADS Defendant revoked his CNA certification, effectively, or otherwise.

The KDADS Defendants remained concerned about the safety of the residents due to Defendant Avita's failure to adequately investigate the matter to determine whether Plaintiff or any other employee committed the allegations of abuse. (Exh. A, at 83:25-84:1; Exh. B at 47:1-48:8; Doc. 106-9 at MSJ 131-33). Defendant Avita failed to alleviate G.C.'s fears or to ensure she felt safe in her residence. (Exh. A at 116:3-118: Exh. B at 100:20-24, 174:19-175:5, 178:8-16; Doc. 106-9, at MSJ 112-131). Defendant Avita's investigations focused on G.C.'s mental acuity and whether she was able to understand whether she was abused. (Doc. 106-1, at MSJ 006-007, 013). It did not focus on the facts alleged, or G.C.'s request that she not have any male caregivers provide perineal care. (*See* Doc. 106-1, at MSJ 009-011). Defendant Avita did not interview residents or staff until after the KDADS Defendants arrived on July 31, 2014. *Id.* at MSJ 011-012. Defendant Avita's investigation did not focus on whether staff properly provided perineal care to G.C. or whether they could have been too rough with her. (*See* Doc. 106-1, at MSJ 009-011).

In Plaintiff's deposition he acknowledges that he provided perineal care to G.C. up to the time of his termination. (Exh. C, at 46:16-48:18, 48:19-49:5, 148:11-152:3l). Plaintiff worked the night shift on the nights when the allegations were made. (*See* Doc. 106-1 at MSJ 006; Doc. 106-9 at MSJ 136 (noting when Direct Care Staff E worked the night shift from June 29, 2014 to August 2, 2014, which included July 4, 2014, July 20, 2014, and July 23, 2014)). Even though G.C. informed Defendant Avita of her preference for female caregivers, Defendant Avita staffed male caregivers for 31 of the 35 night shifts and five out of the 35 day shifts in G.C.'s house from June 29, 2014 – August 2, 2014. (Doc. 106-9 at MSJ 147). Defendant Avita failed to discuss G.C.'s wishes with G.C. during its investigation. (*See* 106-1 at MSJ 009-010). While there was insufficient evidence to determine whether Plaintiff actually committed abuse toward G.C., it is clear Defendant Avita failed to adequately investigate the matter, failed to report the matter, and failed to keep G.C. safe. (Doc. 106-1 at MSJ 001). G.C. suffered emotional and mental abuse due to the inaction of Defendant Avita and that is why Defendant Avita was given a deficiency citing of immediate jeopardy. *Id.* at MSJ 005-007, 014-015. These cited deficiencies by the KDADS Defendants were upheld at every stage of appeal.

In *Stidham*, the plaintiff was advised that the reason for his rejection from employment was directly due to the information provided by the state agency to Stidham's potential employers.  The information disclosed included statements that Stidham raped a young girl, assaulted a citizen, and was forced to resign.  Here, Plaintiff alleges generally that "Sedgwick County nursing home operators … will not hire him as a CNA" based on his termination from Defendant Avita for committing elder abuse. (Doc. 147, at 34). However, Plaintiff has not provided any specific evidence that he has been told or informed by *any* future employer that he was not hired *due to the specific words or actions of any KDADS Defendant*.  Further, there is not even an allegation that

Plaintiff was directly told that any future employment was denied due to *any KDADS Defendant disseminating a finding* that Plaintiff *committed* abuse.

Plaintiff provides only allegations that he has been unable to obtain employment as a CNA and concludes without any evidence that his inability results from the false information that he committed abuse spread by KDADS Defendants.  However, there is absolutely no evidentiary support for this allegation. Moreover, Plaintiff admits that his CNA certification is still "active" on the public KDADS database, therefore, Plaintiff may still obtain employment as a CNA today. (Doc. 147, at 7-8, ¶ 49).

Plaintiff's allegation that KDADS Defendants provided a "finding" that Plaintiff was guilty of abusing an Avita resident is wholly inaccurate and without merit; such a finding was never made.  Further, Plaintiff's allegation that he was deprived of his CNA certification when KDADS Defendants informed Defendant Avita that Plaintiff committed abuse of G.C. is also without merit. No KDADS Defendant explicitly stated that Plaintiff committed abuse against G.C. during the investigation. Rather, the statement which was read to Defendant Avita refers only to Plaintiff as the *alleged* perpetrator and states, in pertinent part, that, based on the federal complaint investigation "there may be a risk to the resident as a result of (alleged perpetrator's name)'s presence in your facility…" (Doc. 147-13). Plaintiff's allegation that Defendants Sunderraj and Rose told Defendant Avita that there was strong evidence that Plaintiff had *committed* abuse is not supported by the evidence and testimony. Even assuming this fact has been supported by evidence, such a finding without more cannot revoke Plaintiff's CNA certification. *See* K.S.A. 39-1401 *et seq.* Contrary to Plaintiff's conclusory allegations, his CNA certification has neither been revoked, nor "effectively" revoked by any KDADS Defendant. There is absolutely no evidence to support this allegation. Therefore, *Stidham* does not apply and Plaintiff fails to provide specific evidence

that demonstrates Defendants Keck, Sunderraj, and Rose violated his constitutional rights which were clearly established at the time of the violation.

Second, the additional cases cited by Plaintiff in support of this allegation do not provide authority to support Plaintiff's claims that Defendants Sunderraj and Rose's actions violated his constitutional rights. Rather, the factual scenarios of these cases differ greatly from the facts in this case.  *See* Doc. 124, section III(B)(1) for legal analysis of *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 108 S. Ct. 1780, 100 L. Ed. 2d 265 (1988), *Bell v. Burson, 402 U.S. 535*, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971), and *Jones v. Wildgen*, 428 F.Supp. 2d 1178, 1182-1183 (D. Kan. 2006).

Here, Plaintiff has failed his heavy two-part burden to provide specific evidence which demonstrates that the actions of Defendants Keck, Sunderraj, and Rose violated a constitutional or statutory right and that right was clearly established at the time of the alleged conduct. Defendants Keck, Sunderraj, and Rose are entitled to dismissal.

### 3. Plaintiff fails to demonstrate he has been deprived of a liberty interest in his good name and reputation without due process.

Plaintiff alleges that KDADS Defendants have deprived him of a liberty interest in his good name and reputation without due process of law. (Doc. 147, at 34-40). However, once again, neither the facts in this case, nor the cases cited by Plaintiff support these conclusory allegations.

Plaintiff cites to *Brown v. Montoya*, 662 F.3d 1152, 1167-1171 (10th Cir. 2011) to support his allegations that his good name and reputation were unlawfully deprived by the actions of KDADS Defendants. *See* Doc. 124, section III(B)(2) for legal analysis of the *Brown* case. In addition to the arguments previously made, the facts do not support that Defendants Sunderraj and Rose "knowingly, falsely, and maliciously asserted to [Defendant Avita] that there was 'strong evidence' plaintiff had abused resident G.C." (Doc. 147, at 36). There are also no facts supporting

the allegation of abuse by Plaintiff was substantiated by the KDADS Defendants. (Doc. 147, at 38). Moreover, and most importantly to satisfy the stigma-plus test, Plaintiff cannot demonstrate that his legal status has changed due to any action by KDADS Defendants. Plaintiff's CNA certification was not revoked or "effectively revoked" and there were no criminal or civil penalties assessed to Plaintiff because of the survey. Plaintiff offers no facts to support a change in his legal status. The only penalties assessed in this case were against Defendant Avita for its failure to comply with federal law and protect vulnerable adult care home residents. There is absolutely no evidence which demonstrates Defendants Keck, Sunderraj, and Rose deprived Plaintiff of a liberty interest in his good name and reputation without due process.

Next, Plaintiff's use of the unpublished case, *Bjorklund v. Miller*, 467 F. App'x 758 (10th Cir. 2012) (unpublished opinion attached hereto as Exh. H), also does not provide support to establish that Defendants Keck, Sunderraj, Rose's "…actions violated a constitutional or statutory right" which was clearly established at the time of the alleged unlawful conduct. *Gross v. Pirtle*, 245 F.3d 1151, 1155–56 (10th Cir. 2001) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir.1995)).

In *Bjorklund*, the "stigma plus" elements were satisfied to overcome the defendant's qualified immunity defense where the plaintiff, a former chief executive officer of a county public facilities authority was terminated from employment following the defendant's vote and statements published in news articles that stated plaintiff lied. 467 F. App'x at 760-763. During the course of his employment, plaintiff acting as CEO managed an account with a tenant who could not make rent. *Id.*, at 760-61. Plaintiff consulted the defendant, a member of the board for the county public facilities authority, regarding the nonpayment of rent issue. *Id.* at 761. Defendant told the plaintiff that they needed to keep the nonpayment of the tenant "off the radar." *Id.*

Following this direction, the plaintiff removed the nonpayment from the monthly financial statements provided to the board. *Id.* Following a failure to make rent, the board held a meeting to discuss the plaintiff's employment as CEO based on the plaintiff's failure to disclose the nonpayment in the monthly financial information provided to the board. *Id.* at 761-762. The defendant later moved to terminate the plaintiff's employment. *Id.* The board unanimously voted to terminate the plaintiff's employment for causing false financial information to be reported to the Board, among others. *Id.*

Following the plaintiff's termination, four newspaper articles were published regarding the tenant's financial difficulties and the plaintiff's termination. *Id.* at 762-763. In the articles, the plaintiff stated that the defendant told him to ease up on the tenant and get it off the radar. *Id.* This statement was specifically denied by the defendant as a lie in the published articles. *Id.* The plaintiff alleged he was unable to obtain employment due to the statements made by the defendant in the articles and the negative media attention. *Id.* at 762. On defendant's appeal from summary judgment, the court found that the plaintiff had a protected property and liberty interest and was entitled to a name clearing hearing with an unbiased decision-maker. *Id.* at 763-768. The court also found that the defendant was not entitled to summary judgment based on qualified immunity finding that the defendant's actions violated the plaintiff's clearly established constitutional rights. *Id.* at 763 and 770.

*Bjorklund*, is clearly distinguishable from the facts of this case. First, and foremost, the action in *Bjorklund* case was directly against the plaintiff who was a public employee terminated by the defendant. Here, Plaintiff was not working as a public employee and no KDADS Defendant had the authority, as his employer, to terminate him. Second and even more striking, the alleged defamatory statements stating the plaintiff in *Bjorklund* was a liar used to satisfy the "stigma plus"

test were published in four newspaper articles which the plaintiff alleged foreclosed future employment opportunities. Plaintiff Odhuno fails to bring forward absolutely any evidence to establish that any KDADS Defendant published any statement using Plaintiff's name whatsoever or that any future employment opportunities were foreclosed because of such alleged published statement. As continually argued, and supported by the evidence in this case, other than the public documents not filed under seal associated with the filing of this lawsuit and filed by the Plaintiff himself, the only published document which is available to the public is the Statement of Deficiencies which does not use any identifiers, much less Plaintiff's name. (Doc. 106-9). Rather, the Statement of Deficiencies specifically identifies Defendant Avita as failing to follow federal law. *Id.*

Even applying the stigma-plus test to the facts of this case, Plaintiff fails to demonstrate that any action by Defendants Keck, Sunderraj, or Rose violated his constitutional rights. *See* Doc. 124, section III(B)(2), at 35-37 for application of the stigma-plus test. To the extent that Plaintiff makes a new argument alleging that Defendants Sunderraj and Rose "knowingly falsely, and maliciously asserted to [Defendant Avita] that there was 'strong evidence' plaintiff *had abused* resident G.C." this allegation is not supported by the evidence. (Doc. 147, at 36 (emphasis added)). Therefore, Plaintiff fails his burden even applying the stigma-plus test.

Plaintiff also cites to *Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990) to generally support his argument that qualified immunity should be rejected by the Court. However, *Snell* fails to provide any support that provides clearly established authority which "found the law to be as plaintiff maintains." *Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014) (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008)). In *Snell*, the Tenth Circuit, in part, affirmed denial of a qualified immunity defense as to three defendant child abuse investigators for

a county child welfare agency who knowingly falsified allegations of child pornography and prostitution against the plaintiffs, operators of a children's shelter/home, to obtain a court order which removed seven children from the plaintiffs' home. 920 F.2d at 675 and 677-686. The Tenth Circuit only reviewed the qualified immunity defense from a Fourth Amendment claim. *Id.*, at 697.  The court affirmed the denial of qualified immunity, holding that, as it related to a child abuse investigation, "a reasonable public official would have known that *using known false information* to secure an order to justify *entry and search of a private home* would violate the fourth amendment's proscription on unreasonable searches and seizures." *Id.* at 700 (emphasis added).

Plaintiff argues to the Court that *Snell* provides "clearly established law since 1990 in the Tenth Circuit and elsewhere" that "no reasonable official in the position of defendants Sunderraj and Rose could believe that knowingly and deliberately conveying false information to plaintiff Odhuno's employer to force his termination was not a violation of his Fourteenth Amendment rights." (Doc. 147, at 39). However, this allegation and argument is more than just a stretch, even for Plaintiff. There has been absolutely no claim by Plaintiff that any KDADS Defendant actually fabricated facts regarding the allegation against Plaintiff, and any such claim would be highly unfounded and inappropriate. The only information relayed to Defendant Avita was that Plaintiff was the *alleged* perpetrator as he met all the identifiers. Plaintiff has not come forward with any evidence that he did not meet those identifiers to demonstrate that KDADS Defendants' disseminated false information. There is also no allegation that Plaintiff's Fourteenth Amendment rights have been violated by any KDADS Defendant using known fabricated facts.

Moreover, the additional cases outside of the Supreme Court and Tenth Circuit cited by Plaintiff do not provide clearly established authority from another court which "found the law to

be as plaintiff maintains." *Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014) (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008)). Rather, some of these cases upheld constitutional violations where a state agency *placed a plaintiff on a child abuse registry*, which indicated the plaintiff had *committed* the abuse based on a credible evidence standard prior to providing notice and opportunity to contest the finding, and where the state agency disseminated such finding to potential employers. *See Burns v. Alexander,* 776 F. Supp. 2d 57 (W.D. Pa. 2011)*; Dupuy v. Samuels*, 397 F.3d 493, 503-512 (7th Cir. 2005); *Valmonte v. Bane*, 18 F.3d 992, 999-1005 (2nd Cir. 1994); *Hughes v. Jones*, 40 F. Supp. 3d 969 (N.D. Ill. 2014). Here, there has been no finding that Plaintiff committed abuse or had a prohibition against employment placed on the Kansas Nurse Aide Registry, much less dissemination by KDADS Defendants of such finding to any of Plaintiff's potential employers. Plaintiff provides no specific evidence which demonstrates such a finding was made and disseminated. These cases do not apply to support Plaintiff's position or demonstrate a violation of his constitutional rights by Defendants Keck, Sunderraj, or Rose.

Second, Plaintiff's citation to *Morris v. Dearborne*, 181 F.3d 657 (5th Cir. 1999), is also misguided and does not provide support that Defendants Keck, Sunderraj, and Rose are not entitled to qualified immunity. In *Morris*, the Fifth Circuit held that a defendant teacher who fabricated sexual abuse charge and evidence against the plaintiff who was a student's father was not entitled to qualified immunity from a substantive due process claim. *Id.* at 662-665. However, the facts in *Morris* are not even remotely similar to the facts in this case as there has been no allegation that any evidence has been fabricated by KDADS Defendants, the allegation of abuse was reported to a KDADS complaint hotline by a contractor of Defendant Avita. Plaintiff clearly met the identifiers as set for the in the complaint. It was reasonable for the KDADS surveyors to determine Plaintiff was the alleged perpetrator. It was reasonable for the KDADS surveyors to require

Defendant Avita to adequately investigate the matter and to ensure resident safety. However, there is no evidence that KDADS Defendants made a finding that Plaintiff committed abuse against G.C.

Ultimately, all cases cited by Plaintiff above involve some direct government action taken against the plaintiff. However, here, the only government action taken was against Defendant Avita. Therefore, Plaintiff has failed his heavy two-part burden to demonstrate that the actions taken by Defendants Keck, Sunderraj, and Rose violated Plaintiff's clearly established rights.

### 4. Plaintiff fails to rebut the defense of qualified immunity from the alleged violation of his right to equal protection by KDADS Defendants.

In his Response Opposing Summary Judgment Motion of Defendants Sunderraj and Keck (Official Capacity), Plaintiff provides absolutely no argument to support his claims or rebut the defense of qualified immunity from the alleged violation of his right to equal protection being deprived by KDADS Defendants or that KDADS Defendants' actions were actually motivated by animus against Plaintiff. Such arguments are therefore waived as to Defendants Keck and Sunderraj. As argued in KDADS Defendants' Memorandum in Support of Motion for Summary Judgment, Plaintiff cannot demonstrate that KDADS Defendants intentionally discriminated against him and violated his right to equal protection as there are no facts in evidence which support this allegation in any manner. (Doc. 106, at 18-19). At this stage in the proceedings, Plaintiff's mere allegations alone, without specific evidence, cannot fulfill his burden. As such, Defendants Keck, Sunderraj, and Rose are entitled to dismissal of this claim.

### C.   Plaintiff's official capacity claims against defendant Keck are barred by Eleventh Amendment immunity as the Ex parte Young doctrine does not apply to Plaintiff's claims of relief.

Plaintiff continues to misstate the evidence provided in the case at bar. Specifically, there is no evidence to support Plaintiff's allegation that KDADS *substantiated that he abused a resident of Defendant Avita*. There is no "sworn testimony of defendants Sunderraj and Rose [which] establishes that KDADS has kept and maintained official KDADS records indicating that plaintiff Odhuno abused elderly nursing home resident G.C. in July 2014." (Doc. 147, at 40). Equally, there is also no evidence to support that KDADS substantiated a finding that Plaintiff abused G.C. *See id.* While there was evidence to support Plaintiff met the *alleged* perpetrator descriptors, no finding was ever made against Plaintiff. The findings made involved Defendant Avita's actions or failures to act, the findings were not directed at the Plaintiff. As a result, the KDADS Defendants took no actions against the Plaintiff's CNA certification. The only document available to the public regarding the complaint survey of Defendant Avita is the Statement of Deficiencies which does not include Plaintiff's name. (Doc. 106-9). The Statement of Deficiencies also does not provide a finding that abuse was committed by a CNA, much less Plaintiff. *See id*. Rather a finding of mental abuse was substantiated against Defendant Avita for its failure properly and timely investigate and report an allegation of resident abuse and failure to honor a resident's caregiver wishes. (*Id.* at MSJ 112-131).

In support of applying the *Ex parte Young* exception to Defendant Keck's Eleventh Amendment immunity defense, Plaintiff cites to several cases, which can be distinguished from the facts of this case. (Doc. 147, at 42-43).  Plaintiff cites to *Donalds M. v. Matavia*, 668 F. Supp. 714 (D. Mass 1987), "a case [Plaintiff believes is] directly on point," in addition to others regarding expunging findings located in a plaintiff's record in a defendant's files. (Doc. 147, at 42). However,

*Donalds M.*, and the other cases cited by Plaintiff supports applying the *Ex parte Young* doctrine where there have been *findings* made against a plaintiff, not findings made against another party to the litigation. *See Donalds M.*, (injunctive relief sought to require a state official to expunge records which found that an allegation of child abuse against plaintiff had been substantiated); *see also Martin Marietta Materials, Inc. v. Kansas Dep't of Transp.*, 953 F. Supp. 2d 1176 (D. Kan. 2013), *aff'd*, 810 F.3d 1161 (10th Cir. 2016) (*Ex parte Young* doctrine applied to plaintiffs' request for relief to provide notice and hearing to restore plaintiffs' name to a state agency's approved list of suppliers); *Flint v. Dennison*, 488 F.3d 816 (9th Cir. 2007) (*Ex parte Young* doctrine applied to student's relief seeking to expunge university records of student's censure and denial of political seat); *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992) (*Ex parte Young* doctrine applied to expunge an inmate's records which include discipline imposed on the inmate); *Elliott v. Hinds*, 786 F.2d 298, 299 (7th Cir. 1986) (*Ex parte Young* doctrine applied to plaintiff's relief to expunge personnel records of reasons why the plaintiff was terminated).

Here, however, KDADS has no file or record on Plaintiff which includes any "findings, files, ESI, and records regarding the Avita resident's allegations against plaintiff and KDADS' investigation of those allegations." (Doc. 64, at 26). The only file or database which is related to Plaintiff is his Kansas Nurse Aide Registry entry, a database which was inspected by Plaintiff that does not include a finding that Plaintiff abused a resident of Defendant Avita. (Exh. F: Affidavit of Brenda K. Dreher; Doc. 106-13). The complaint survey file, which Plaintiff continually refers to as "an official KDADS record," is related to Defendant Avita's deficiencies and is a federal CMS file; it does not belong to KDADS. The public Statement of Deficiencies, which Plaintiff continually refers to as "an official KDADS record" is also only related to Defendant Avita and is

a federal file belonging to CMS. KDADS does not have the authority to alter, modify, or destroy such records to which it does not own.

As a result, Plaintiff seeks relief which is not available to him. The only party which can seek this specific relief is Defendant Avita, as the complaint investigation named, and applied to, its facility. Even assuming the Eleventh Amendment defense does not bar the injunctive relief sought by Plaintiff, KDADS Defendants are clearly entitled to dismissal of all claims based on qualified immunity and for the other reasons set forth above and in KDADS Defendants' Motion and Memorandum for Summary Judgment.

### D. The Court should decline to exercise supplemental jurisdiction over state law claims as Plaintiff failed to address this issue in his response.

Plaintiff provided no response to the request that the Court decline to exercise supplemental jurisdiction other than to simply demand in the inverse. (Doc. 147, at 1-2). Plaintiff is thereby conceding this issue. *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir.1992) (quoting *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir.1990), "[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.") KDADS Defendants are entitled to their request that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. (*See also* the arguments and authorities in section IV(E) in Doc. 106).

### IV. CONCLUSION

Defendants Keck, Sunderraj, and Rose are entitled qualified immunity as Plaintiff fails his heavy two-part burden to establish their conduct violated clearly established statutory or constitutional rights which a reasonable person would have known. The Court should also decline

to exercise supplemental jurisdiction over state law claims against all KDADS Defendants as

Plaintiff failed to address this issue in his response. For these reasons, all KDADS Defendants

respectfully request the Court dismiss all claims against them with prejudice and for other such

relief as the Court may deem just and equitable.


Respectfully submitted:


*/s/ Kimberly M.J. Lynch*

By:   Kimberly M. J. Lynch, #24225
Jessica F. Conrow, #27073
Kansas Department for Aging and Disability Services
503 S. Kansas Ave.
Topeka, KS 66603
Phone: (785) 296-0237
Fax: (785) 296-0767
Email: kimberly.lynch@ks.gov
Email: jessica.conrow@ks.gov

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 1st day of June, 2018, the above and foregoing ***Reply in Continued Support of KDADS Defendants' Motion for Summary Judgment*** was electronically filed with the Clerk of the US District Court by using the electronic filing system which will send a notice of electronic filing to the following:

Edward L. Keeley                          ekeeley@mcdonaldtinker.com
Katy E. Tompkins                         ktompkins@mcdonaldtinker.com
McDonald, Tinker, Skaer,
Quinn & Herrington, P.A.
300 West Douglas Avenue, Suite 500
Wichita, Kansas 67202
        *Attorneys for Plaintiff*

Forrest T. Rhodes, Jr.                    frhodes@foulston.com
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS  67206-4466
        *Attorney for Defendants Reeds Cove and Axiom*

                                            */s/ Kimberly M.J. Lynch*
                                        _____
                                            Kimberly M.J. Lynch